**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LIQUID HOLDINGS GROUP, INC., <u>et al.</u>,[1] | Case No. 16-10202 (KG) |
| Debtors. | Jointly Administered |
| | **Objection Deadline: 2/22/2016 at 4:00 p.m. (ET)**<br>**Hearing Date: 2/29/2016 at 11:00 a.m. (ET)** |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I)**
**AUTHORIZING THE RETENTION AND EMPLOYMENT OF CARL**
**MARKS ADVISORY GROUP LLC, *NUNC PRO TUNC* TO THE PETITION DATE,**
**AS FINANCIAL ADVISOR TO THE DEBTORS; AND (II) WAIVING CERTAIN**
<u>**REPORTING REQUIREMENTS PURSUANT TO LOCAL RULE 2016-2(D)**</u>

Liquid Holdings Group, Inc. and Liquid Prime Holdings, LLC, as debtors and debtors in possession (together, the "<u>Debtors</u>") respectfully submits this application (the "<u>Application</u>"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") for entry of an order (the "<u>Order</u>"), substantially in the form attached hereto as **<u>Exhibit A</u>**, (i) authorizing the Debtors to retain and employ Carl Marks Advisory Group LLC ("<u>CMAG</u>") as the Debtors' financial advisor, *nunc pro tunc* to the Petition Date (as defined herein); (ii) approving the terms of CMAG's retention, including the fee and expense structure and the indemnification, contribution, reimbursement and related provisions set forth in the Financial Advisory Agreement attached hereto as **<u>Exhibit B</u>** (as amended, the "<u>Financial Advisory Agreement</u>"); (iii) waiving certain information requirements of Rule 2016-2(d) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

---

[1] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Liquid Holdings Group, Inc. (2142) and Liquid Prime Holdings, LLC (2135). The address of the Debtors' corporate headquarters is 111 River Street, Ste. 1204, Hoboken, New Jersey 07030.

Delaware (the "Local Rules"); and (iv) granting such other and further relief as is just and proper. In support of this Application, the Debtors submit the *Declaration of Christopher K. Wu in Support of Application for Order Authorizing Retention and Employment of Carl Marks Advisory Group LLC as Financial Advisor to the Debtors* (the "Wu Declaration"), attached hereto as **Exhibit C**. In further support of this Application, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference ("Amended Standing Order") dated February 29, 2012, from the United States District Court for the District of Delaware. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Application if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

3.      The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a), 2016 and 5002, and Local Rule 2016-2(d).

## BACKGROUND

4.      On January 27, 2016 (the "Petition Date"), the Debtors commenced these bankruptcy cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.      No trustee, examiner or official committee of unsecured creditors has been appointed in these Chapter 11 Cases.

6.      The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading up to the filing of these Chapter 11 Cases is set forth in detail in the *Declaration of Peter R. Kent in Support of Chapter 11 Petitions and Various First Day Applications and Motions* [D.I. 7], incorporated herein by reference.

7.      On February 8, 2016, the Debtors filed the *Motion of Debtors and Debtors in Possession to Convert Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code* [D.I. 28], which is scheduled to be heard at the February 29, 2016 hearing.

## RELIEF REQUESTED

8.      By this Application, the Debtors seek to employ and retain CMAG as its financial advisor, *nunc pro tunc* to the Petition Date, in connection with the Chapter 11 Cases, as more fully described below and in the Wu Declaration.   The terms and conditions of CMAG's proposed retention by the Debtors are set forth in the Financial Advisory Agreement between the Debtors and CMAG, attached hereto as **Exhibit B**.

## BASIS FOR RELIEF REQUESTED

### A.      Services To Be Rendered

9.      The Debtors respectfully submit that it is necessary and appropriate for it to employ and retain CMAG to provide, among other things, the following services:

(a)     Assist management and work with the Debtors' advisors in structuring a value maximizing transaction, auction and bidding procedures as appropriate;

(b)     Identify additional prospective acquirers and provide such contact information to the Debtors' advisors for the advisors to approach them in ascertaining their level of interest in a transaction;

(c)     Participate in discussions with acquirers in coordination with the advisors as necessary;

(d)     Evaluate the Debtors' liquidity by analyzing the business plan and 13-week cash flow forecasts to assist in liquidity planning alternatives including

-3-

identifying and budgeting potential administrative expenses pursuant to a restructuring;

(e)    Identify financing needs of the Debtors in contemplation of a transaction and assist in developing a timeline for the realization of a transaction;

(f)    Assist the Debtors and its professionals in the review of and implementation of any proposed transaction or other transaction, in responding thereto and, if directed, evaluating potential alternatives for a transaction;

(g)    Review and analyze any proposed third party transactions or other transactions, including, without limitation, any proposals for debtor-in-possession financing;

(h)    Assist the Debtors in identifying alternative financing sources for debtor-in-possession financing including from acquirers if necessary;

(i)    Assist the Debtors in review of risks and benefits of considering a transaction;

(j)    Participate in negotiations with parties in interest and/or their respective representatives in connection with a transaction with advisors and management as necessary and appropriate;

(k)    Advise the Debtors on and attend meetings of the board of directors, creditor groups, official constituencies and other interested parties;

(l)    Participate in hearings before the Bankruptcy Court and provide relevant testimony with respect to matters defined herein and issues arising in connection with any proposed plan including bid protections and procedures;

(m)    Assist the Debtors with the coordination, data collection, preparation, and filing of the necessary schedules, administrative claims, and appropriate documentation, both pre-and post-petition, with regard to bankruptcy protection, including, but not limited to, statement of financial affairs, schedule of assets and liabilities, debtor-in-possession cash flow statements, monthly operating reports, preliminary claims administration; and monthly court reporting requirements; and

(n)    Perform other such services as are directed by the Debtors and reasonably acceptable to CMAG.

## B.    <u>Qualifications of Professionals</u>

10.    CMAG is a firm offering financial advisory services to financially distressed and troubled companies.

144713.01600/101953897v.1

11.    The Debtors have selected CMAG as its financial advisors because of the firm's diverse experience and extensive knowledge in the field of bankruptcy.

12.    The Debtors need assistance in collecting and analyzing financial and other information in relation to these Chapter 11 Cases. The professionals of CMAG have considerable experience with rendering such services to committees and other parties in a number of chapter 11 cases. As such, CMAG is qualified to perform the work required in these cases.

13.    Based on its experience, CMAG has been retained to provide financial advice with the authorization of Bankruptcy Courts in many different cases throughout the United States and CMAG has extensive experience in representing parties in sophisticated chapter 11 proceedings including: In re Northern Berkshire Healthcare, Inc., 11-31114-HJB (Bankr. W.D. Mass. 2011); In re Holley Performance Products Inc., 09–13333-PJW (Bankr. D. Del 2009); In re VeraSun Energy Corporation, 08-12606-BLS (Bankr. D. Del 2008); In re Otter Tail AG Enterprises LLC, 09-61250-DDO (Bankr. D. Minn. 2009); In re Elite Model Management Corp., 04-10845 (Bankr. S.D.N.Y. 2004); In re Alexander Gallo Holdings, LLC, 11-14220-ALG (Bankr. S.D.N.Y. 2011); In re Inkeepers USA Trust, 10-13800-SCC (Bankr. S.D.N.Y. 2010); In re General Growth Properties Inc., 09-11977-AG (Bankr. D. S.D.N.Y. 2009); In re Sun-Times Media Group, Inc., 09-11092-CSS (Bankr. D. Del. 2009); In re White Energy, Inc., 09-11601-CSS (Bankr. D. Del. 2009); In re Linens 'n Things, Inc., No. 08-10832-CSS (Bankr. D. Del. 2008); In re PJ Finance Company, LLC, 11-10688-BLS (Bankr. D. Del. 2011); In re Appleseed's Intermediate Holdings, LLC, 11-10160-KG (Bankr. D. Del 2011); In re Trans National Communications International, Inc., 11-19595-WCH (Bankr. D. Mass 2011); In re Velo Holdings, Inc., 12-11384-MG (Bankr. S.D.N.Y. 2012); In re Rogers Bancshares, Inc., (Bankr. E.D. Ark. 2013); and In re North Texas Bancshares of Delaware, Inc., No. 13-12699-KG (Bankr. D. Del. 2013).

**C.**    **Disinterestedness of Professionals**

14.    To the best of the Debtors' knowledge, CMAG does not represent and does not hold any interest adverse to the Debtors' estates or their creditors in the matters upon which CMAG is to be engaged, except to the extent set forth in the Wu Declaration.  The Debtors are informed by CMAG that it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

15.    CMAG has in the past been retained by, and presently and likely in the future will provide services for, certain creditors of the Debtors, other parties-in-interest, and their respective attorneys and accountants in matters unrelated to such parties' claims or interests in these Chapter 11 Cases.

16.    As part of its practice, CMAG appears in many cases, proceedings, and transactions involving many different law firms, financial consultants, and investment bankers in matters unrelated to this bankruptcy.  CMAG has not identified any material relationships or connections with any law firm, financial consultant or investment banker involved in these Chapter 11 Cases that would cause it to be adverse to the Debtors, the Debtors' estates, any creditor or any other party-in-interest, or that would otherwise affect CMAG's judgment or ability to perform services for the Debtors.

**D.**    **Professional Compensation**

17.    The Debtors seek the employment of CMAG as their financial advisors pursuant to Bankruptcy Code section 327(a), which provides that a debtor, subject to Court approval —

> may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

18.     The Debtors submit that for all of the reasons stated above, and in the Wu Declaration, the employment of CMAG as financial advisors to the Debtors under Bankruptcy Code section 327(a) is warranted.   Further, as stated in the Wu Declaration, CMAG is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as required by Bankruptcy Code section 327(a), and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors or their related parties, except as may otherwise be disclosed in the Wu Declaration.   Accordingly, the retention of CMAG as financial advisors to the Debtors should be approved.

19.     Pursuant to Bankruptcy Code section 328, the Debtors may further employ CMAG on any reasonable terms and conditions.   Subject to this Court's approval, CMAG is willing to serve as the Debtors' financial advisor and to perform the services described above.   CMAG will seek compensation, as set forth more fully in the Financial Advisory Agreement, in the form of monthly fees (the "Monthly Advisory Fees") at the rate of $95,000 ($60,000 with respect to the services listed in the Financial Advisory Agreement and $35,000 with respect to the services listed in the First Amendment to the Financial Advisory Agreement) for each monthly period in which financial advisory services are provided.   CMAG shall also be due a success fee, in the amount of $350,000 (the "Success Fee"), which shall be earned in full and due in the event the Debtors close one or more Transactions (as defined in the Financial Advisory Agreement).

20.     The fee structure set forth in the Financial Advisory Agreement is consistent with CMAG's typical fee for work of this nature.   The fees are set at a level designed to fairly compensate CMAG for the work of its professionals and assistants and to cover fixed and routine overhead expenses.   It is CMAG's policy to charge its clients for all disbursements and expenses incurred in the rendition of services.

144713.01600/101953897v.1

21.     The fee structure is comparable to those generally charged by financial advisory and investment banking firms of similar stature to CMAG and for comparable engagements, both in and out of court, and reflect a balance between a fixed, monthly fees, and a contingent amount which are tied to the consummation and closing of the transactions contemplated in the Financial Advisory Agreement.

22.     CMAG will also seek reimbursement for necessary expenses incurred in connection with its representation of the Debtors, which shall include, but not be limited to, travel, photocopying, delivery service, postage, research, vendor charges and other out-of-pocket expenses incurred in providing professional services.

23.     CMAG currently holds a retainer balance in the amount of $120,000.00.  CMAG will apply the remaining balance of the retainer as a credit towards allowed postpetition fees and expenses until the retainer is fully exhausted before seeking further payment from the Debtors on account of any allowed postpetition fees and expenses.[2]

24.     In light of the foregoing, the Debtors believe that CMAG's compensation is both fair and reasonable under the circumstances of this engagement.

**E.     <u>Waiver of Certain Information Requirements of Local Rule 2016-2(d)</u>**

25.     It is not general practice of financial advisory firms, including CMAG, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d).  Because CMAG does not ordinarily maintain contemporaneous time records in one-tenth hour (.10) increments or provide or conform to a schedule of hourly rates for its professionals, pursuant to Local Rule 2016-2(h), CMAG should be excused from compliance with

---

[2] To the extent these Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, CMAG will return to the Debtors (or chapter 7 trustee) any retainer balance that is not applied as a credit towards CMAG's allowed but unpaid fees and expenses in connection with its services provided to the Debtors after the Petition Date but prior to or on the conversion date.

144713.01600/101953897v.1

such information requirements pursuant to Local Rule 2016-2(d) with respect to the professional fees sought for which CMAG is to be compensated by the Monthly Advisory Fees.  During such time, CMAG should only be required to record, in summary format, a description of the services rendered on behalf of the Debtors by each CMAG professional.

26.    CMAG will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.  CMAG's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Financial Advisory Agreement, in accordance with Local Rule 2016-2(e) and any procedures established or orders entered by the Court.

**F.**    **Indemnification Provisions**

27.    Pursuant to CMAG's Financial Advisory Agreement, CMAG will be indemnified by the Debtors from all liabilities, losses, judgments, costs and expenses based upon or arising in respect of acts and omissions and decisions made by CMAG in the performance of the services described herein subject to the provisions of the Financial Advisory Agreement.

28.    Unlike the market for other professionals that a debtor or committee may retain, indemnification is a standard term of the market for financial advisors and is comparable to those generally obtained by financial advisory firms similar to CMAG and for comparable engagements, both in and out of court.  Accordingly, the indemnification provisions of the Financial Advisory Agreement should be approved.

**NOTICE**

29.    Notice of this Application has been provided to the following parties or, in lieu thereof, their counsel:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the parties included on the Debtors' lists of twenty (20) largest unsecured creditors filed pursuant to Bankruptcy Rule 1007(d); and (iii) those persons who have requested notice pursuant to Rule

2002 of the Federal Rules of Bankruptcy Procedure.  In light of the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Application is required.

## **NO PRIOR REQUEST**

30.    No prior application for the relief requested herein as it relates to CMAG has been made to this or any other court.

WHEREFORE, the Debtors respectfully requests that the Court enter an Order, substantially in the form attached hereto as **Exhibit A**, (i) granting this Application; (ii) authorizing the Debtors to employ CMAG as its financial advisor in these chapter 11 cases, *nunc pro tunc* to the Petition; (iii) waiving certain information requirements of Local Rule 2016-2(d); and (iv) granting such other and further relief as this Court may deem just and proper.

Executed on February 9, 2016           */s/  Peter R. Kent*
Hoboken, New Jersey

                                                   Peter R. Kent
                                                   Chief Executive Officer
                                                   Liquid Holdings Group, Inc.

144713.01600/101953897v.1