## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 7 |
|  | ) |
| LIQUID HOLDINGS GROUP, INC., *et al.*, | ) Case No. 16-10202 (KG) |
|  | ) |
| Debtors.[1] | ) Jointly Administered |
|  | ) |
|  | ) **Response Deadline: May 2, 2016** |
|  | ) **Hearing Date: May 9, 2016 at 2:00 p.m.** |

## MOTION OF HUB PROPERTIES TRUST FOR AN ORDER (I) RECOGNIZING ITS RECOUPMENT RIGHTS OR (II) GRANTING, TO THE EXTENT REQUIRED, RELIEF FROM THE AUTOMATIC STAY TO ENFORCE SETOFF RIGHTS AGAINST, OR POSSESSORY SECURITY INTEREST IN, SECURITY DEPOSIT, PURSUANT TO SECTIONS 362(d) AND 553(a) OF THE BANKRUPTCY CODE, AND (III) ALLOWING REJECTION DAMAGES CLAIM PURSUANT TO SECTIONS 502(a) AND (g)(1) AND 365(g)(1) OF THE BANKRUPTCY CODE

Hub Properties Trust ("*Hub*"), by and through its counsel, moves this Court (the "*Motion*") for an order (i) recognizing that the automatic stay does not apply to Hub's right of recoupment, (ii) granting, to the extent required, relief from the automatic stay so that Hub may exercise its setoff rights against, or enforce its possessory security interest in, a cash security deposit, pursuant to sections 553(a) and 362(d)(1) or (d)(2) of Title 11 of the United States Code (the "*Bankruptcy Code*"), and (iii) allowing Hub's rejection damages claim pursuant to sections 502(a) and (g)(1) and 365(g)(1) of the Bankruptcy Code for all purposes in the above-captioned cases (the "*Cases*"). In support of the Motion, Hub respectfully represents as follows:

### RELEVANT FACTS AND BACKGROUND

1.      On January 27, 2016 (the "*Petition Date*"), the above-captioned debtors (the "*Debtors*") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the

---

[1]      The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Liquid Holdings Group, Inc. (2142) and Liquid Prime Holdings, LLC (2135).

United States Bankruptcy Court for the District of Delaware (the "*Court*").  The Cases are currently being jointly administered as case number 16-10202 (KG).

2.      On February 8, 2016, the Debtors filed their *Motion of Debtors and Debtors in Possession to Convert Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code* [Docket No. 28] (the "*Conversion Motion*").  This Court granted the Conversion Motion on February 25. 2016 [Docket No. 56].  On March 1, 2016, Alfred T. Giuliano was appointed the chapter 7 trustee of the Debtors' bankruptcy estates.

3.      On or about February 1, 2014, Hub, as landlord, and Liquid Holdings Group, Inc. (the "*Debtor*"), as tenant, entered into that certain Lease (the "*Lease*") for 521,410 rentable square feet of space in the building commonly known as Waterfront Corporate Center I, located at 111 River Street, Hoboken, New Jersey (the "*Premises*").  A true and correct copy of the Lease is attached hereto and incorporated herein as *Exhibit A*.

4.      The Lease provides, *inter alia*, that the Debtor was obligated to pay annual fixed rent in the amount of (i) $282,594.00 for the period from February 1, 2014 through July 31, 2016, equal to monthly installments of $23,549.50, and (ii) $289,840.00 for the period from August 1, 2016 through January 31, 2019 (the expiration date of the Lease), equal to monthly installments of $24,153.33.  The Debtor was also responsible for the payment of certain additional obligations under the Lease, including its proportional share of taxes and operating costs, which are categorized as Additional Rent under the Lease.

5.      To secure satisfaction of its obligations under the Lease, the Lease required the Debtor to tender a security deposit in the amount of $23,851.41 (the "*Security Deposit*"). Section 4.7 of the Lease provides that:

> [i]f the Annual Fixed Rent or Additional Rent payable hereunder
> shall be overdue and unpaid for more than ten (10) business days

> or should Landlord make any payment on behalf of the Tenant, or
> Tenant shall fail to perform any of the terms of the Lease, then
> Landlord may, at its option and without notice or prejudice to any
> other remedy which Landlord may have on account thereof,
> appropriate and apply the entire Security Deposit or so much
> thereof as may be necessary to compensate Landlord toward the
> payment of Annual Fixed Rent, Additional Rent or other sums or
> loss or damage sustained by Landlord due to such breach by
> Tenant.

Lease, Section 4.7.  As of the Petition Date, Hub held Security Deposit funds in the full amount of $23,851.41.

6.      On February 25, 2016, the Court entered that certain *Order Granting Second Omnibus Motion of the Debtors Pursuant to 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006 (I) To Reject Certain Executory Contracts and Unexpired Leases and (II) Granting Certain Related Relief* (Docket No. 52, the "*Rejection Order*").  The Rejection Order provided for the rejection of the Lease, effective as of February 12, 2016.  The Debtor timely paid post-Petition Rent under the Lease for the period between the Petition Date and the effective date of rejection of the Lease.

7.      On March 16, 2016, Hub timely filed a proof of claim (Claim No. 13-1), asserting a general unsecured claim for damages caused by the rejection of the Lease, including for pre-Petition Date Annual Fixed Rent and Additional Rent, and for rent reserved under the Lease following the effective date of Rejection, in the aggregate amount of $325,058.97 (the "*Claim*").  On April 12, 2016, Hub timely filed an amended proof of claim (Claim No. 13-2), amending the Claim to reflect that its claim is partially secured in the amount of $23,851.41 by virtue of the Security Deposit.

8.      As set forth more fully below, by this Motion, Hub seeks to exercise its recoupment or setoff rights against, or to enforce its possessory security interest in, the Security

Deposit. Hub also seeks allowance of its Claim (after application of the Security Deposit) in the amount of $301,207.56.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 1334(b) and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (G).

10.      Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

11.      Pursuant to Rule 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Hub consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## RELIEF REQUESTED

12.      Hub seeks an order providing that the automatic stay is inapplicable to Hub's exercise of its recoupment rights with respect to the Security Deposit.

13.      Alternatively, to the extent necessary, pursuant to sections 362(d)(1) and (d)(2) and 553(a) of the Bankruptcy Code, Hub requests that the Court grant relief from the automatic stay so that Hub may exercise its setoff rights against, or enforce its possessory security interest in, the Security Deposit.

14.      In addition, Hub requests that the Court allow its Claim (after application of the Security Deposit) in the amount of $301,207.56, and provide that such allowed Claim shall not be subject to objection, challenge or reduction for any reason, except to the extent that Hub mitigates its rejection damages by reletting the Premises.

4

**BASIS FOR RELIEF**

A.    **Hub's Right of Recoupment.**

15.    Recoupment is an equitable doctrine that "permits the offset of mutual debts when the respective obligations are based on the same transaction or occurrence." *In re HQ Glob. Holdings, Inc.*, 290 B.R. 78, 80 (Bankr. D. Del. 2003) (citing *Anes v. Dehart (In re Anes)*, 195 F.3d 177, 182 (3d Cir.1999); *University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065, 1081 (3d Cir.1992)).

16.    In the Third Circuit, recoupment has been defined as follows: "the setting up of a demand *arising from the same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1079 (3d Cir. 1992).  Recoupment requires that both debts "arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without meeting its obligations. *In re HQ Glob. Holdings, Inc.*, 290 B.R. 78, 81 (Bankr. D. Del. 2003) (internal citation omitted).

17.    The doctrine of recoupment permits the offset of debts even if one arose pre-petition and the other arose post-petition, so long as both arose from the same transaction. *In re HQ Glob. Holdings, Inc.*, 290 B.R. 78, 81 (Bankr. D. Del. 2003)

18.    Therefore, courts permit recoupment "[w]hen the circumstances that gave rise to the credit and those giving rise to the creditor's obligation to the debtor . . . result from a set of reciprocal contractual obligations or from the same set of facts." *See Malinowski*, 156 F.3d 131, 134 (2nd Cir. 1998); *see also In re Univ. Med. Ctr.*, 973 F.2d 1065, 1079-80 (3d Cir. 1992).

19.    "Mutuality" is not required for recoupment. In other words, recoupment may apply to pre *and* postpetition claims so long as the claims arise out of the same transaction or set

of transactions. *See In re Anes*, 195 F.3d 177, 182 (3d Cir. 1999) ("The right of recoupment is not subject to the § 553 requirement that both debts arise prior to the debtor's entry into bankruptcy").

20.     The Third Circuit has recognized that "recoupment is an equitable exception to the automatic stay." *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1079 (3d Cir. 1992). Thus, the automatic stay does not apply to the exercise of a right of recoupment.

21.     "'Recoupment . . . rights are determined by non-bankruptcy law, which ordinarily is state law.'" *In re McMahon*, 129 F.3d at 96 (quoting *In re Village Craftsman, Inc.*, 160 B.R. 740, 746 (Bankr. D.N.J. 1993)). New Jersey law governs the Lease and this court must look to New Jersey law to determine Hub's recoupment rights.

22.     New Jersey law recognizes a right of recoupment. *See, e.g., Beneficial Finance Co. of Atl. City v. Swaggerty*, 86 N.J. 602 at 609 ("Inherent in the concept of recoupment is the notion of fundamental fairness"); *Midlantic Nat. Bank v. Georgian, Ltd.*, 233 N.J. Super. 621, 626.

23.     Additionally, courts have held that a creditor can recoup a security deposit against a claim relating to the same transaction or agreement. *In re Flagstaff Realty Assocs.,* 60 F.3d 1031, 1035 (3d Cir. 1995) ("Postpetition funds owing to the landlord may be recouped against prepetition claims owed by the landlord despite the usually inflexible automatic stay provision of the Code").

24.     The amounts owing to Hub from the Debtor and the Security Deposit pledged to Hub from the Debtor arose from the same "transaction" because they relate to the Lease and the Debtor's right to use and occupancy of the Premises.

25.     For the foregoing reasons, Hub requests that this Court enter an order recognizing Hub's right to recoup the Security Deposit against its Claim in the amount of $23,851.41, leaving a $301,207.56 balance due to Hub on the Claim.

**B.      Relief from the Automatic Stay to Effectuate a Setoff.**

26.     Section 362(a)(7) of the Bankruptcy Code provides that the filing of the Debtors' voluntary petitions operates as an automatic stay, applicable to all parties, against "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor."  11 U.S.C. § 362(a)(7).

27.     The automatic stay, however, does not defeat the right of setoff under the Bankruptcy Code.   Section 553(a) of the Bankruptcy Code provides that "[e]xcept as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. § 553(a). Section 553(a) does not create a right of setoff, but rather preserves whatever right exists under applicable non-bankruptcy law. *See Matter of Peter J. Schmill Co. Inc.,* 150 B.R. 556 (Bankr. D. Del. 1993).

28.     "The reason that the Bankruptcy Code favors the right of setoff is the anomalous unfairness, where debts are owed both ways between the debtor and the creditor, of permitting the bankrupt to collect all the debt owed to him while disallowing recognition of the bankrupt's debt to the creditor." *In re Gribben*, 158 B.R. 920, 924-25 (S.D.N.Y 1993).

29.     A party may exercise its right to setoff in a bankruptcy proceeding but must first obtain relief from the automatic stay or obtain an order allowing setoff prior to exercising any

right to setoff.  *See In re NTG Industries, Inc.,* 103 B.R. 195, 197 (Bankr. N.D. Ill. 1989).  By requiring a motion for relief from the stay to effect a setoff, section 362 creates a mechanism pursuant to which setoff can be subject to an orderly examination by the Court and the creditors of the estate.  *See Matter of Carland Corp.,* 967 F.2d 1069, 1076 (5th Cir. 1992).

> i.    **Hub Has Setoff Rights Under New Jersey Law and the Lease**.

30.    "The right to setoff is a widely recognized common law right which allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995).

31.    Hub has a right of setoff against the Debtor under each of (a) New Jersey common law; and (b) the Lease.

> a.    **New Jersey Common Law Right of Setoff**

32.    Hub has a right of setoff under New Jersey common law.  New Jersey law has "long recognized" a common law right of setoff.  *See, e.g., Keegan v. Estate of Keegan*, 179 N.J. 242, 244 (Ch. Div. 1981) (recognizing a common law right of setoff); *Guarantee Co. of N.A. v. Tandy & Allen Constr. Co.*, 66 N.J. Super. 285, 290 (L. Div. 1961).

> b.    **Contractual Right of Setoff**

33.    As indicated above, Section 4.7 of the Lease provides a right of setoff of the Security Deposit against unpaid Annual Fixed Rent and Additional Rent obligations of the Debtor.  Specifically, once the Debtor fails to timely make payments of Annual Fixed Rent and/or Additional Rent, and such payment obligation shall be overdue for more than ten (10) business days, Hub may apply the Security Deposit, up to the full amount thereof, against the overdue obligations.

### iii.    Each of the Section 553(a) Elements for Setoff Are Met.

34.    Section 553(a) of the Bankruptcy Code preserves non-bankruptcy setoff rights when three conditions are met: (1) the creditor must hold a claim against the debtor that arose before the commencement of the bankruptcy case; (2) the creditor must owe a debt to the debtor that also arose before commencement of the bankruptcy case; (3) the claim and debt must be mutual. *See* 11 U.S.C. § 553(a); *In re SemCrude, L.P.*, 399 B.R. at 393.

### a.    Hub Holds a Prepetition Claim Against the Debtor

35.    The Debtor's obligations to Hub for the entirety of the Claim are pre-petition debts, as the rejection of the Lease constitutes a breach of such contract immediately before the Petition Date. *See* 11 U.S.C. §§ 365(g)(1) and 502(g)(1).

### b.    The Security Deposit (to the Extent Unapplied) Constitutes a Prepetition Obligation of Hub to the Debtor

36.    Hub's obligations with respect to the Security Deposit also constitute a pre-petition obligation, as the Security Deposit was pledged to Hub before the Petition Date.

### c.    The Claim and the Security Deposit are Mutual

37.    Debts are mutual "when they are due to and from the same persons in the same capacity." *Westchester Structures*, 181 B.R. at 740; *see also In re Whimsy, Inc.*, 221 B.R. 69, 72 (S.D.N.Y. 1998) ("By definition . . . setoff requires mutuality of parties; that is, the same creditor must hold both a debt to and a claim against the same debtor."); *Enron*, 376 B.R. at 465 ("The debts are considered mutual when the debtor and creditor each incurred its debt to the other in the same right or capacity.").

38.    The Security Deposit and the Claim are mutual debts, as they are owed, respectively, by Hub and the Debtor to each other through a debtor-creditor relationship.

        **d.**      **Setoff of a Security Deposit Against Rejection Damages Is Permissible**

39.     Bankruptcy courts have consistently allowed setoff of a security deposit against a debtor's obligations under a related lease agreement. *See, e.g., Sweet N Sour 7th Ave. Corp.,* 431 B.R. at 71; *In re Northeastern International Airways, Inc.,* 99 B.R. 487, 488 (Bankr. S.D.N.Y. 1989); *In re Aspen Data Graphics., Inc.* 109 B.R. 677, 683-84 (Bankr. E.D. Pa. 1990); *In re Inslaw, Inc.,* 81 B.R. 169, 170 (Bankr. D.D.C. 1987).

40.     The Claim, which constitutes a pre-petition claim under sections 365(g)(1) and 502(g)(1), may be set off against Hub's obligations with respect to the Security Deposit. *See In re Public Service Company of New Hampshire,* 884 F.2d 11, 15 (1st Cir. 1989) ("[W]hen triggered by a timely post-petition rejection, the relation-back rule serves to transform a future action for breach of an executory contract into a prepetition claim subject to setoff."); *In re Communication Dynamics, Inc.*, 382 B.R. 219, 232 (Bankr. D. Del. 2008) ("a rejection damages claim is a prepetition claim subject to setoff against any pre-petition debt owed by the creditor to the debtor.")

        **e.**      **Hub Holds a Security Interest in the Security Deposit**

41.     In addition to rights of recoupment or setoff, Hub also holds a security interest in the Security Deposit. Specifically, pursuant to section 9-313(a) of the Uniform Commercial Code, Hub has a security interest, perfected by possession, in the Collateral. *See* N.J. REV. STAT. § 12A:9-313(a) (2013) (security interest in money perfected by possession).

42.     Therefore, in addition to rights of recoupment or setoff, Hub has a perfected security interest in the Security Deposit. *See In re ITXS, Inc.*, 318 B.R. 85, 89 (Bankr. W.D. Pa. 2004) ("[t]he Court also holds, as a matter of law, that the Security Deposit is subject to some sort of encumbrance that amounts, or that is at least akin, to a perfected security interest or lien").

iv.    **"Cause" Exists for Stay Relief Under Section 362(d)(1) of the Bankruptcy Code.**

43.    Absent "compelling circumstances," once a party establishes a right of setoff, that party has demonstrated "cause" for lifting the automatic stay. *In re Szymanski*, 413 B.R. 232, 243 (Bankr. E.D. Pa. 2009); *see also In re WL Homes LLC*, 471 B.R. 349, 352 (Bankr. D. Del. 2012) ("Showing cause requires the creditor to first establish its right to setoff by finding an independent right of setoff under non-bankruptcy law"). .

44.    Hub has established *prima facie* "cause" for stay relief by demonstrating its statutory, common law, and contractual rights of setoff and by satisfying the section 553(a) requirements for effectuating a setoff right against the Debtor.

45.    There is no "compelling reason" to deny Hub's request for stay relief. Accordingly, this Court should grant relief from the automatic stay to allow Hub to exercise its setoff rights with respect to the Security Deposit.

v.    **Stay Relief is Also Appropriate Under Section 362(d)(2) of the Bankruptcy Code.**

46.    Stay relief also is appropriate under section 362(d)(2) of the Bankruptcy Code. "For relief to be granted under section 362(d)(2), a debtor must both (i) lack equity in the property, and (ii) the property must not be necessary to an effective reorganization." *Sweet N Sour 7th Ave. Corp.,* 431 B.R. at 69-70. As the Supreme Court explained in *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365 (1988), once lack of equity is shown, the debtor must establish that the collateral is necessary for an effective reorganization by proving "the property is essential for an effective reorganization that is in prospect." Id. at 375–376 (emphasis deleted).

47.    Here, the Debtor has no equity in the Security Deposit because the Claim greatly exceeds the amount of the Security Deposit.  Moreover, the Security Deposit is not "essential" to the Debtors' reorganization; indeed, the Debtors are not reorganizing, given their conversion to chapter 7.

48.    For the foregoing reasons, this Court should grant Hub stay relief to enforce its possessory security interest in the Security Deposit.

**C.    Allowance of Hub's Claim.**

49.    Lastly, this Court should allow the Claim in the amount (after deduction of the Security Deposit) of at least $301,207.56.

## NO PREVIOUS REQUEST

50.    No previous motion for the relief sought herein has been made to this or any other Court.

## NOTICE

51.    Hub served notice of this Motion upon (i) the Office of the United States Trustee; (ii) counsel to the Chapter 7 Trustee; and (iii) all other parties entitled to receive notices in these bankruptcy cases under Fed. R. Bankr. P. 2002.  In light of the nature of the relief requested herein, Hub submits that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, Hub respectfully requests that the Court enter an order (i) recognizing Hub's recoupment rights with respect to the Collateral, (ii) granting, to the extent required, relief from the automatic stay so that Hub may enforce its setoff rights or security interest against the Security Deposit pursuant to sections 553(a) and 362(d)(1) or (d)(2) of the Bankruptcy Code, and (iii) allowing the Claim, and providing that such allowed Claim shall not be subject to objection,

challenge or reduction for any reason, except to the extent that Hub successfully mitigates its damages through reletting of the Premises; and (iv) granting such further relief to Hub Properties Trust as is appropriate.

Dated: April 19, 2016                              Respectfully submitted,

                                                  **HUB PROPERTIES TRUST**


                                                  By:_____/s/ *Maria Aprile Sawczuk*_____
                                                          One of Its Attorneys

                                                  Maria Aprile Sawczuk (No. 3320)
                                                  Goldstein & McClintock LLLP
                                                  1201 North Orange Street, Suite 7380
                                                  Wilmington, DE 19801
                                                  Telephone: (302) 444-6710
                                                  Facsimile: (302) 444-6709
                                                  Email: marias@restructuringshop.com

                                                          - and -

                                                  Thomas R. Fawkes
                                                  Goldstein & McClintock LLLP
                                                  208 S. LaSalle St., Suite 1750
                                                  Chicago, Illinois 60604
                                                  Telephone:  (312) 219-6702
                                                  Facsimile:  (312) 277-2305
                                                  Email:  tomf@goldmclaw.com