## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) Case No. 16-10202-KG |
| Liquid Holdings Group, Inc., | ) |
| | ) **Objection Deadline: August 22, 2016 at 4:00 p.m.** |
| Debtor. | ) **Hearing Date: August 29, 2016 at 2:00 p.m.** |

## MOTION FOR ORDER AUTHORIZING ADVANCEMENT BY INSURER OF DEFENSE EXPENSES OF INSURED INDIVIDUALS PURSUANT TO <u>DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY</u>

Darren Davy, Brian Ferdinand, David Francescani, Peter R. Kent, Thomas Ross, Richard Schaeffer, Kenneth D. Shifrin, Victor Simone, Jr., Brian M. Storms, Dennis Suskind, Jay Bernstein, and Allan Zavarro (collectively the "Former Officers and Directors"), by their undersigned counsel, hereby move, pursuant to section 362(d) of title 11 of the United States Bankruptcy Code ("Bankruptcy Code") for entry of an order, substantially in the form attached hereto, granting relief from the automatic stay to the extent necessary to permit their insurer, Axis Insurance Company ("Axis"), to follow the express terms of the Axis Policy (defined below) by advancing Defense Costs (defined below) incurred and to be incurred in the future,  in connection with the DeVito and Deutsch Actions (defined below).  In support of this Motion, the Former Officers and Directors respectfully represent as follows:

### BACKGROUND

1.     On August 18, 2015, a Complaint was filed in the New York Supreme Court, Nassau County, initiating an action captioned *Deutsch v. Liquid Holdings Group, Inc.*, No. 452951/2015 (N.Y. Sup. Ct., N.Y. Cty.) ("Deutsch Action") against debtor Liquid Holdings Group, Inc. ("Liquid Holdings" or "Debtor"), some of the Former Officers and Directors, and other Insured Individuals (defined below) alleging fraud and aiding and abetting fraud.  The Deutsch Action was transferred to New York County on October 26, 2015.

2.      On September 21, 2015, a Complaint was filed in the U.S. District Court for the District of New Jersey, initiating an action captioned *DeVito v. Liquid Holdings Group, Inc.*, No. 2:15-cv-06969 (D.N.J.) (the "DeVito Action" and, jointly with the Deutsch Action, the "DeVito and Deutsch Actions") against Liquid Holdings, the Former Officers and Directors, and other Insured Individuals alleging violations of Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.  An Amended Complaint was filed in the DeVito Action on July 22, 2016.

3.      On January 27, 2016 (the "Petition Date"), Liquid Holdings commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On February 25, 2016, the case was converted from Chapter 11 to Chapter 7 of the Bankruptcy Code.  On March 1, 2016, the Office of the United States Trustee appointed the Trustee Alfred T. Giuliano (the "Trustee") to be the chapter 7 trustee of this case.

### The Axis Policy

4.      Axis issued Management and Corporate Liability Insurance Policy No. MNN775651/01/2013 to Liquid Holdings for the policy period of July 26, 2013 to September 6, 2014 (the "Axis Policy").[1]  A copy of the Axis Policy is attached as Exhibit A.

5.      The Axis Policy has, in relevant part, a $5 million Limit of Liability.[2]  Ex. A, Declarations, Item 3.

6.      Subject to all of the Axis Policy's terms and conditions, Insuring Agreement A affords specified coverage to Insured Individuals for Loss not indemnified by the Insured Organization for which the Insured Individual has become legally obligated to pay on account of

---

[1] Liquid Holdings also purchased a one-year Extended Reporting Period for the Axis Policy.
[2] Capitalized terms not defined herein shall have the meaning set forth in the Axis Policy.

a Claim for a Wrongful Act first made against such Insured Individual during the Policy Period or the Extended Reporting Period. *Id.*, Section I.A.

7.    The Former Officers and Directors are Insured Individuals under the Axis Policy. *Id.*, Section III.G.

8.    The Axis Policy also provides that Axis will advance Defense Costs on a current basis. *Id.*, Section VI.E.  Axis is prepared to advance Defense Costs in connection with the DeVito and Deutsch Actions, subject to the terms, conditions, and exclusions of the Axis Policy and a reservation of rights.

9.    The Axis Policy provides that if the Loss due and payable under the Axis Policy "exceeds the remaining applicable Limit of Liability, the Insurer shall pay such Loss, subject to such limit, in the following priority:  (i) first, the Insurer shall pay all Loss covered under Insuring Agreement A; and (ii) second, the Insurer shall pay all other Loss." *Id.*, Section IX.D.2 (the "Priority of Payments Provision").

## RELIEF REQEUSTED

10.    By this Motion, the Former Officers and Directors seek entry of an order granting relief from the automatic stay as necessary to allow Axis to advance and reimburse the legal fees, costs, and expenses incurred or to be incurred in the future in defense of the DeVito and Deutsch Actions on behalf of Insured Individuals in accordance with the terms and conditions of, and subject to the coverage limits set forth in, the Axis Policy (collectively, "Defense Costs"). Without limiting the scope of the Defense Costs sought to be authorized, the Former Officers and Directors seek to allow Axis to advance and reimburse the legal fees and costs incurred or to be incurred by counsel in connection with the DeVito and Deutsch Actions, and any service providers or expert consultants, in the ordinary course, pursuant to the normal and customary billing policies and practices of Axis and the counsel, services providers, and consultants.

3

11.    The Former Officers and Directors respectfully submit that the proceeds of the Axis Policy are not an asset or property of the Debtor's estate under 11 U.S.C. § 541 and therefore are not subject to the automatic stay provided in 11 U.S.C. § 362.   Subject to the terms and conditions of the Axis Policy, Axis has agreed to advance Defense Costs for the DeVito and Deutsch Actions, but has requested assurance that such advances will not violate the automatic stay or otherwise be challenged by the Debtor, the Trustee, or other persons.   The Former Officers and Directors therefore seek relief from the Court as necessary to ensure that there will be no violation of the automatic stay by Axis's advancement of the Defense Costs under the Axis Policy.

## BASIS FOR RELIEF REQUESTED

### A.    The Proceeds of the Axis Policy Are Not Property of the Estate

12.    The proceeds of the Axis Policy are not property of the Debtor's estate under 11 U.S.C. § 541, and therefore the automatic stay contained in 11 U.S.C. § 362 does not bar Axis's advancement of Defense Costs in connection with the DeVito and Deutsch Actions.

13.    While insurance policies may generally be considered property of the estate and covered by the automatic stay provisions of the Bankruptcy Code, the ownership of the *policy* does not dictate whether the *proceeds* are part of the estate.  *See*, *In re World Health Alternatives, Inc.*, 369 B.R. 805, 811 (Bankr. D. Del. 2007) (finding that proceeds of the Debtor's D&O insurance policy were not property of the estate); *In re La. World Exposition, Inc.*, 832 F.2d 1391, 1460 (5th Cir. 1987) ("the liability proceeds payable to the directors and officers are not part of the bankruptcy estate."); *In re SN Liquidation, Inc.*, 388 B.R. 579, 584 (Bankr. D. Del. 2008) ("When an insurance policy provides coverage only to directors and officers, courts generally find that the proceeds are not property of the estates.")

14.    In particular, where, as here, an insurance policy provides coverage to indemnify the debtor's directors, officers, and employees, the proceeds are not considered to be property of the estate. *See In re MF Global Holdings Ltd.*, 2012 WL 1191892, at *10 (Bankr. S.D.N.Y. Apr. 10, 2012) (noting the general proposition and citing cases with approval); *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 510 (Bankr. D. Del. 2004) ("when insurance policies provide direct coverage to directors and officers, the proceeds of the insurance policy are not property of the bankruptcy estate because the proceeds are payable to the directors and officers not the estate"); *In re Daisy Sys.*, 132 B.R. at 755 (finding that when a D&O insurance policy only provides direct coverage to the directors and officers the proceeds are not property of the estate).

15.    The Priority of Payments Provision in the Axis Policy also makes clear that, if Loss were to exceed the remaining applicable Limit of Liability, the coverage available to the Insured Individuals, including the Former Directors and Officers, under Insuring Agreement A, takes precedence over the other coverage available under the Axis Policy.

16.    By virtue of such provisions, a debtor at most has only a "contingent, residual interest in the policy proceeds" under a policy, which is subject to the prior rights and interests of the debtor's officers and directors in the proceeds of the policy. *In re Laminate Kingdom LLC*, 2008 WL 1766637, at *3 (applying policy priority of payments provision and holding that debtor's interest in policy proceeds was subject to payment of loss under Side A, resulting in determination that proceeds of policy were not property of the estate); *In re World Health Alternatives, Inc.*, 369 B.R. at 811 (holding, in the context of a preliminary injunction hearing, that it was likely that the "proceeds of the Debtor's [D&O] insurance policy are not property of the estate" because the policy's priority of payments provision subordinated the debtor's

coverage to the directors' and officers', thereby rendering the debtor's coverage remote); *In re Downey Finan. Corp.*, 428 B.R. at 606-07.

17.    To hold that the proceeds of the Axis Policy are property of the Debtor's estate and, thus subject to the automatic stay, would potentially give the Debtor's estate "greater rights in the [proceeds of the Axis Policy] than the debtor had before filing for bankruptcy." *Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487, 492 (3d Cir. 1997). And it is well-settled that "[a] bankruptcy estate can have no greater claim to the proceeds of the property of the estate than the debtor would have had outside of bankruptcy." *In re Cybermedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002) (determining that, as a matter of contract, the claim the receiver may have for defense costs was subordinate to the coverage afforded the directors and officers, and thus there was no basis for concluding that the policy protects the estate's other assets from diminution). In fact, courts have held that "[s]ection 541(a) of the Bankruptcy Code is not intended to expand the debtor's rights against others beyond what rights existed at the commencement of the case." *In re Downey Financial Corp.*, 428 B.R. 595, 607 (Bankr. D. Del. 2010).

18.    Based on the foregoing, the proceeds payable to the Insured Individuals are not property of the Debtor's estate, and the automatic stay does not apply to prevent the advancement and/or reimbursement of the Insured Individuals' defense costs and other Loss, in accordance with and subject to the terms and conditions of the Axis Policy.

**B.    If the Automatic Stay Is Applicable, It Should Be Modified to Permit Advancement of Defense Costs**

19.    Even if this Court determines that the proceeds of the Axis Policy are property of the estate, sufficient cause exists to modify the automatic stay to permit Axis to advance and reimburse Defense Costs in the DeVito and Deutsch Actions.

20.     Section 362(d) of the Bankruptcy Code provides that the Court may modify, condition, or terminate the automatic stay imposed by section 362 of the Bankruptcy Code for "cause." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define "cause," but "[a] bankruptcy court is granted wide discretion to determine whether to lift an automatic stay for cause." *In re Mid-Atl. Handling Sys., LLC*, 304 B.R. 111, 130 (Bankr. D.N.J. 2003).

21.     Courts have recognized that a need to advance defense costs under a directors and officers insurance policy to fund the legal representation of a debtor's current and former directors and officers constitutes sufficient "cause" to lift or modify the automatic stay. *See, e.g.*, *In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406, 411 (Bankr. D.S.C. 2011) ("Courts faced with similar situations have commonly granted relief from stay to allow directors and officers to receive payment for their defense costs."); *MF Global*, 2012 WL 1191892, at *16 (lifting the automatic stay to permit insurer to advance defense costs to debtors' current and former directors, officers, and employees); *In re Enron Corp.*, 2002 WL 1008240, at *1 (Bankr. S.D.N.Y. May 17, 2002) (lifting the automatic stay to permit insurance company to pay and/or advance defense costs).

22.     Failure to modify the automatic stay as proposed would substantially harm the Insured Individuals by withholding the advancement of Defense Costs that are necessary to presenting a meaningful defense in the DeVito and Deutsch Actions. The Axis Policy is expressly intended to cover such Defense Costs, especially if the Debtor is unable to meet its legal obligation to indemnify the Insured Individuals. *See, e.g., Laminate Kingdom*, 2008 WL 1766637, at *4 ("'D&O policies are obtained for the protection of individual directors and officers … in essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection.'") (quoting *In re First Central Fin. Corp.*,

238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999)); *see also In re La. World Exposition*, 832 F.2d at 1398

(stating that the purchase of a directors and officers liability policy is an inducement and a type

of compensation for the directors and officers) (citation omitted).

23.    For this reason, even when courts find that insurance proceeds under directors and

officers policies are property of the estate, they consistently lift the stay to allow payment of

individual co-insureds' defense costs because "[w]ithout funding, the Individual Defendants will

be prevented from conducting a meaningful defense … and may suffer substantial and

irreparable harm" and because "[t]he directors and officers bargained for this coverage." *Allied*

*Digital*, 306 B.R. at 514 (recognizing that the harm to the directors and officers from not lifting

the stay was real—the directors and officers had incurred $200,000 in defense costs for which

they were entitled to coverage—whereas the harm to the estate was purely hypothetical); *see In*

*re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406, 411 (Bankr. D. S.C. 2011) (finding cause to

lift automatic stay to allow corporate chapter 7 debtor's officers and directors to access policy

proceeds even though debtor was covered by same policy); *In re Laminate Kingdom, LLC*, 2008

WL 1766637, at *4 ("[N]umerous courts have granted relief from the automatic stay to permit

the advancement of Defense Costs to a debtor's directors and officers – even though the

insurance policies also provided direct coverage to debtor.").[3]

---

[3] *See also In re GB Holdings, Inc.*, 2006 WL 4457350, *4 (Bankr. D. N.J. Sept. 21, 2006) ("While it is recognized that amounts incurred in defense costs will reduce the limit of liability available to pay the debtor's potential claims under the D&O Policy, that fact alone cannot elevate the debtor's interest in the policy proceeds above the interest of the other insureds, the debtor's directors and officers."); *In re Arter & Hadden, L.L.P.*, 335 B.R. 666, 674 (Bankr. N.D. Ohio 2005) ("The Court finds that there is cause to lift the automatic stay because [the individual defendants] may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments to fund their defense"); *In re CyberMedica, Inc.*, 280 B.R. 12, 17 (Bankr. D. Mass. 2002) ("This Court further finds that there is cause to lift the automatic stay because [defendants] may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments. [Defendants] are in need now of their contractual right to payment of defense costs and may be harmed if disbursements are not presently made to fund their defense of the Trustee's Complaint.").

24.    It is not relevant whether any of the claims asserted against the Insured

Individuals in the DeVito and Deutsch Actions may ultimately be excluded from coverage under

the Axis Policy.  Although Axis has reserved its rights with respect to the DeVito and Deutsch

Actions under the Axis Policy and at law, Axis has not sought a declaration of non-coverage, and

thus the subsequent application of any policy exclusions is not relevant.  *See In re CyberMedica,*

*Inc.*, 280 B.R. 12, 19 (Bankr. D. Mass. 2002) (application of policy exclusions not relevant to

whether automatic stay should be lifted to the extent that D&O policy covered directors' and

officers' defense costs); *see also S.E.C. v. Morriss*, No. 4:12-CV-80 CEJ, 2012 WL 1605225, at

*5 (E.D. Mo. May 8, 2012) (application of policy exclusions not relevant to question of lifting

stay where insurer had not sought declaration of non-coverage).  For example, courts routinely

lift the automatic stay in cases involving allegations of allegations of fraud, which claims might

later be barred by policy exclusions.  *See, e.g., Enron*, 2002 WL 1008240; *Adelphia*, 298 B.R. at

51.

25.    In light of the foregoing, to the extent the automatic stay applies, cause exists to

grant relief from the stay for the limited purpose of allowing the Insurers to pay the Defense

Costs for the Insured Individuals as requested herein.

## CONCLUSION

WHEREFORE, the Former Officers and Directors respectfully request that the Court

grant this motion, enter an order in substantially the form attached hereto authorizing Axis to

advance Defense Costs incurred by the Insured Individuals in defense of the DeVito and Deutsch

Actions in accordance with the Axis Policy, and grant such other and further relief as may be just

and equitable.

Respectfully submitted,

Dated: August 8, 2016

CONNOLLY GALLAGHER LLP

Jeffrey C. Wisler (# 2795)
Kelly M. Conlan (#4786)
1000 N. West Street, Suite 1400
Wilmington, DE 19801
Telephone:     (302) 757-7300
Facsimile:     (302) 658-0380
Email:         jwisler@connollygallagher.com

*Attorneys for Former Officers and Directors*

#05257976