# EXHIBIT A



**AXIS INSURANCE COMPANY**
Administrative Office—11680 Great Oaks Way, Suite 500
Alpharetta, Georgia 30022
(a stock company hereinafter the "Insurer")

# MANAGEMENT AND CORPORATE LIABILITY INSURANCE POLICY

## DECLARATIONS PAGE – NEW YORK

THIS POLICY IS WRITTEN ON A CLAIMS-MADE BASIS AND COVERS ONLY **CLAIMS** FIRST MADE DURING THE **POLICY PERIOD** OR THE EXTENDED REPORTING PERIOD, AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY AMOUNTS INCURRED AS **DEFENSE COSTS**. PLEASE READ THIS POLICY CAREFULLY.

Policy Number: MNN775651/01/2013            Renewal of Policy Number: N/A

Item 1.  **Policyholder** and Mailing Address:      Liquid Holdings Group, Inc.
800 3rd Avenue, 39th Floor
New York, NY 10022

Item 2.  **Policy Period**:  From: 12:01 a.m. on July 26, 2013 to: 12:01 a.m. on July 26, 2014, local time at the address in Item 1.

Item 3.  Limits of Liability:

    A.  Aggregate Limit of Liability for all **Loss** for the **Policy Period**: $5,000,000.

    B.  Sublimit of Liability under Insuring Agreement D for all **Investigation Costs**: $250,000.

    C.  Employed Lawyers Sublimit of Liability: $1,000,000

Item 4.  Retentions and Coinsurance:

    Retentions

    A.  $1,250,000 for Each **Securities Claim** under Insuring Agreements B and C.

    B.  $1,250,000 for Each **Insured Inquiry** or **Claim** other than a **Securities Claim**, under Insuring Agreement B.

    C.  $5,000 for Each **Insured Individual** for **Non-Indemnifiable Loss**, subject to a maximum aggregate Retention of 50,000 for all **Insured Individuals** for the **Policy Period**.*

    Coinsurance

    D.  0.5% of the first $1,000,000 of **Non-Indemnifiable Loss**.*

    *If applicable. See NY Amendatory Endorsement.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Class: 2-14177 (DO-Large Commercial Insured)

Item 5.  Optional Extended Reporting Period(s):

One (1) Year for an additional premium of 150% of the annualized Premium.


Item 6.  Pending or Prior **Claim** Date:

| | |
|---|---|
| Insuring Agreements A and B: | October 12, 2012 |
| Insuring Agreement C: | July 26, 2013 |
| Insuring Agreement D: | July 26, 2013 |


Item 7.  Forms and Endorsements attached at Policy Inception: See attached Schedule of Forms and Endorsements.

Item 8.  Premium: $144,000 (No additional premium for TRIA).

Item 9.  Notices to Insurer:

| A.   Notice of **Claims** or potential **Claims**: | B.   All other notices: |
|---|---|
| AXIS Insurance Company<br>Professional Lines Claims<br>300 Connell Drive<br>P.O. Box 357<br>Berkeley Heights, NJ 07922-0357<br>Toll Free Fax: (866) 770-5630<br>E-mail: USClaimNoticeBH@axiscapital.com | AXIS Insurance Company<br>Professional Lines<br>300 Connell Drive<br>P.O. Box 357<br>Berkeley Heights, NJ 07922-0357<br>Fax: (908) 508-4301 |

The Insurer has caused this Policy to be signed and attested by its authorized officers:


**Gregory W. Springer, President**                    **Andrew Weissert, Secretary**


POLICY ISSUE DATE: <u>August 15, 2013</u>

# Schedule of Forms and Endorsements

| Notices, Forms and Disclosures: | |
| --- | --- |
| Management and Corporate Liability Insurance Policy | MCL 0001 (02 11) |
| | |
| | |
| | |

| Endorsements: | | |
| --- | --- | --- |
| No. | Endorsement Name | Endorsement Number |
| 1 | New York Amendatory Endorsement | MCL 0005-NY (11 12) |
| 2 | Absolute Professional Services Exclusion Endorsement | MCL 1052 (09 11) |
| 3 | Specific Litigation Exclusion Endorsement | MCL 1109 (02 11) |
| 4 | Employed Lawyers Coverage Endorsement | MCL 1128 (09 12) |
| 5 | UK Shadow Director Endorsement | MCL 1136 (04 12) |
| 6 | Retention Reduced By Other Insurance Payments Endorsement | MCL 1137 (07 11) |
| 7 | Insured Inquiry Amended Endorsement | MCL 1146 (11 11) |
| 8 | Profit Exclusion Amended Endorsement | MCL 1147 (05 12) |
| 9 | Insured Individual Amended Endorsement | MCL 1151 (01 12) |
| 10 | Amend Time To Advance Defense Costs Endorsement | MCL 1154 (02 12) |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |



NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

# TABLE OF CONTENTS

| POLICY SECTION | | | Page |
|---|---|---|---|
| I. | INSURING AGREEMENTS | | 2 |
| | A. | Directors & Officers Liability Coverage | 2 |
| | B. | Indemnification Coverage | 2 |
| | C. | Securities Claims Liability Coverage | 2 |
| | D. | Investigative Costs Coverage | 2 |
| II. | COVERAGE EXTENSIONS | | 2 |
| | A. | Estates, Heirs, Legal Representatives, Assigns, Spouses and Domestic Partners | 2 |
| | B. | Extended Reporting Period | 3 |
| | C. | Outside Positions | 3 |
| | D. | Circumstance Reporting | 3 |
| | E. | New Organizations | 3 |
| III. | DEFINITIONS | | 4 |
| IV. | EXCLUSIONS | | 7 |
| V. | LIMITS OF LIABILITY AND RETENTIONS | | 8 |
| | A. | Limits of Liability | 8 |
| | B. | Retentions | 8 |
| VI. | DEFENSE AND SETTLEMENT | | 8 |
| VII. | REPRESENTATIONS AND SEVERABILITY WITH RESPECT TO THE APPLICATION | | 9 |
| VIII. | POLICY TERMINATION | | 9 |
| | A. | Cancellation | 9 |
| | B. | Nonrenewal | 10 |
| | C. | Notice of Termination | 10 |
| IX. | GENERAL CONDITIONS | | 10 |
| | A. | Allocation | 10 |
| | B. | Changes to Insureds | 10 |
| | C. | Notice | 11 |
| | D. | Payment Obligations and Priority of Payments | 11 |
| | E. | Other Insurance | 10 |
| | F. | Subrogation | 11 |
| | G. | Bankruptcy | 11 |
| | H. | Territory, Valuation and Currency | 12 |
| | I. | Alteration and Assignment of Interest | 12 |
| | J. | Action Against the Insurer | 12 |
| | K. | Authorization | 12 |
| | L. | Headings | 12 |

Class Code: 2-14177

MCL 0001 (02 11)



# MANAGEMENT AND CORPORATE LIABILITY INSURANCE POLICY

In consideration of the payment of the premium, and in reliance on the **Application**, and subject to all the provisions of this Policy and the Declarations, Schedules and Endorsements attached hereto, all of which are made a part of this Policy, the Insurer and the **Policyholder**, on behalf of all **Insureds**, agree as follows:

I.   INSURING AGREEMENTS

   A.   Directors & Officers Liability Coverage

   The Insurer shall pay on behalf of any **Insured Individual** all **Loss** not indemnified by the **Insured Organization** for which the **Insured Individual** has become legally obligated to pay on account of any **Claim** for a **Wrongful Act** first made against, or **Insured Inquiry** first received by, such **Insured Individual** during the **Policy Period** or the Extended Reporting Period, if applicable.

   B.   Indemnification Coverage

   The Insurer shall pay on behalf of the **Insured Organization** all **Loss** that the **Insured Organization** grants indemnification to an **Insured Individual**, as permitted or required by law, for which the **Insured Individual** has become legally obligated to pay on account of any **Claim** for a **Wrongful Act** first made against, or **Insured Inquiry** first received by, such **Insured Individual** during the **Policy Period** or the Extended Reporting Period, if applicable.

   C.   Securities Claims Liability Coverage

   The Insurer shall pay on behalf of the **Insured Organization** all **Loss** for which the **Insured Organization** becomes legally obligated to pay on account of a **Securities Claim** first made against the **Insured Organization** during the **Policy Period** or the Extended Reporting Period, if applicable, for a **Wrongful Act**.

   D.   Investigation Costs Coverage

   The Insurer shall pay on behalf of the **Insured Organization** all **Investigation Costs** arising from any **Securityholder Derivative Demand** first received by the **Insured Organization** during the **Policy Period** or the Extended Reporting Period, if applicable, for a **Wrongful Act**.

As a condition precedent to the coverage afforded by these Insuring Agreements, the **Insureds** shall give to the Insurer written notice of any **Claim** and, if the **Insured** elects to seek coverage for **Insured Inquiry Costs**, any **Insured Inquiry**, as soon as practicable after the **Insured Organization's** risk manager, in-house general counsel or their functional equivalent first becomes aware of such **Claim** or **Insured Inquiry**, but in no event later than sixty (60) days after the expiration of the **Policy Period** or the expiration of the Extended Reporting Period, if applicable.

II.   COVERAGE EXTENSIONS

   A.   Estates, Heirs, Legal Representatives, Assigns, Spouses and Domestic Partners

      1.   The estates, heirs, legal representatives, assigns, spouses and domestic partners of **Insured Individuals** shall be considered **Insured Individuals** under this Policy, but only for **Claims** arising solely out of their status as such, and in the case of a spouse or domestic partner, if the **Claim** seeks damages from marital community property, jointly held property or property transferred from the **Insured Individual** to the spouse or domestic partner.

2. All provisions of this Policy applicable to **Loss** incurred by **Insured Individuals** shall apply to **Loss** incurred by such estates, heirs, legal representatives, assigns, spouses and domestic partners. Coverage afforded by this section does not apply to any **Claim** for any wrongful act or omission by the estates, heirs, legal representatives, assigns, spouses or domestic partners of **Insured Individuals**. The term "domestic partner" as used herein means any natural person recognized as a domestic partner by the law applicable to this Policy, as described in Definition III.M.6.a, or by the **Insured Organization**.

B. Extended Reporting Period

1. If the **Policyholder** cancels this Policy or the **Policyholder** or Insurer nonrenews this Policy, the **Policyholder** or the **Insured Individuals** shall have the right to elect an Extended Reporting Period set forth in Item 5 of the Declarations. This right shall lapse unless the Insurer receives written notice of the period elected together with payment of the additional premium due within sixty (60) days following the effective date of cancellation or nonrenewal.

2. If an event described in Subsection IX.B.1 occurs, the **Policyholder** shall have the right to request an Extended Reporting Period not to exceed six (6) years after the effective date of such event. This right shall lapse unless the Insurer receives written notice of the period requested before the expiration of the **Policy Period**. The Insurer shall then notify the **Policyholder** of the additional premium required for any Extended Reporting Period offered and any additional information the Insurer may require.

3. Any **Claim** first made against the **Insured** or **Insured Inquiry** received by an **Insured Individual** during the Extended Reporting Period shall be considered first received or made, respectively, during the **Policy Period**; provided that with respect to **Claims**, the Extended Reporting Period shall apply only to **Wrongful Acts** that take place prior to the effective date of cancellation, nonrenewal or Subsection IX.B.1 event.

4. The Extended Reporting Period is not cancelable by the Insurer and the additional premium paid for the Extended Reporting Period is deemed fully earned at the inception date thereof.

C. Outside Positions

Subject to this Policy's other terms and conditions, coverage under Insuring Agreements A and B shall include coverage for **Insured Individuals** for their service in **Outside Positions**. Such coverage shall be specifically excess of any indemnification and insurance available from or provided by the **Outside Entity** to the **Insured Individual**. Payment by the Insurer or any affiliate of the Insurer under another policy as a result of a **Claim** against the **Insured Individual** for his or her service in an **Outside Position** shall reduce the Limit of Liability of this Policy by the amount of such payment with respect to such **Claim**.

D. Circumstance Reporting

If during the **Policy Period** or the Extended Reporting Period, if applicable, the **Insured** becomes aware of any circumstance or **Wrongful Act** which could give rise to a **Claim** and the **Insured** gives written notice thereof to the Insurer, then any **Claim** subsequently arising therefrom shall be considered first made during the **Policy Period**. As a condition precedent to exercising their rights hereunder, the **Insureds** shall include with such notice a description of the circumstances or **Wrongful Act**, the nature and extent of the potential damages, the names of the potential claimants, and the manner in which the **Insured** first became aware of such circumstances, and shall give the Insurer such additional information and cooperation as it may reasonably require.

E. New Organizations

1. If before or during the **Policy Period** the **Insured Organization** creates or acquires a new **Subsidiary** or acquires an entity by merger or consolidation, the coverage under this Policy shall apply to the new organization and its **Insureds**, but only for **Wrongful Acts** taking place or **Insured Inquiries** first received after the effective date of such creation or acquisition, subject to paragraph 2 below.

2.  If the assets of any such new organization created or acquired during the **Policy Period** exceed twenty-five percent (25%) of the total consolidated assets of the **Policyholder** as of the effective date of the creation or acquisition, as set forth in the **Policyholder's** most recent audited consolidated financial statements, the automatic coverage provided under paragraph 1 shall not extend beyond the earlier of ninety (90) days after such date or the expiration of the **Policy Period**, unless the Insurer agrees, in its sole discretion and subject to such additional terms and conditions and such additional premium as the Insurer may require, to extend such coverage beyond such ninety (90) days.

## III.  DEFINITIONS

When used in this Policy, whether in the singular or the plural:

A.  **Application** means:

1.  any written application, including any attachments and other materials submitted with or incorporated in such application, and any other documents and information submitted to the Insurer in connection with the underwriting of this Policy;

2.  all written representations or warranties submitted to the Insurer in connection with the underwriting of this Policy or any similar directors and officers or corporate liability policy of which this Policy is a renewal or replacement or succeeds in time; and

3.  any publicly available documents filed by or on behalf of the **Insured Organization** during the twelve (12) months prior to the inception of the **Policy Period** with the U.S. Securities and Exchange Commission and any other federal, state, local or foreign regulatory agency that regulates the **Insured Organization**.

B.  **Claim** means:

1.  a written demand for monetary or non-monetary relief, including a written demand to engage in arbitration or mediation or toll or waive a statute of limitations;

2.  a civil, criminal, administrative or regulatory proceeding commenced by the service of a complaint or similar pleading, the filing of a notice of charges or the return or issuance of an indictment, information, arrest warrant or similar charging document, including a demand for the extradition of an **Insured Individual**;

3.  a civil, criminal, administrative or regulatory investigation of an **Insured Individual** commenced by the service of a subpoena upon or receipt by the **Insured Individual** of a target letter (including a Wells notice) or similar written notice from a government authority identifying such **Insured Individual** as one against whom a proceeding may be commenced;

4.  with respect to Insuring Agreement C, **Claim** means only a **Securities Claim**; or

5.  with respect to Insuring Agreement D, **Claim** means only a **Securityholder Derivative Demand**;

including any appeal therefrom.

C.  **Clawback Costs** means reasonable and necessary fees and expenses consented to by the Insurer (including the premium or origination fee for a bond or loan) and incurred by the executive officers of the **Policyholder** to obtain amounts they are required to repay to the **Policyholder** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002, 15 U.S.C. §7243 or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (Pub L. 111-203; H.R. 4173); provided **Clawback Costs** do not include any amounts required to be repaid thereunder.

D.  **Defense Costs** means reasonable and necessary legal fees and expenses (other than regular or overtime wages, salaries, fees or benefits or overhead expenses of any **Insured** or employee of the **Insured Organization**) incurred by or on behalf of the **Insureds** in investigating, defending,

opposing, settling or appealing **Claims**, and the premium for appeal, attachment or similar bonds. The Insurer, however, shall have no obligation to apply for or furnish such bonds.

E.  **Financial Impairment** means the status of an organization resulting from: (i) the appointment by any state or federal official, agency or court of any receiver, trustee, examiner, conservator, liquidator, rehabilitator or similar official to take control of, supervise, manage or liquidate such organization; or (ii) the organization becoming a debtor in possession.

F.  **Insured** means the **Insured Individuals** and the **Insured Organization**.

G.  **Insured Individual** means one or more natural persons who was, now is or shall become:

   1.  a duly elected or appointed director, officer or trustee of any **Insured Organization** that is a corporation; a manager, managing member or member of the board of managers of any **Insured Organization** that is a limited liability company; a general partner or managing partner of any **Insured Organization** that is a partnership or joint venture; or their functional equivalent in any **Insured Organization** located in the United States or any other jurisdiction;

   2.  the in-house general counsel, comptroller, risk manager, director of investor relations or director of human resources of the **Insured Organization** or their functional equivalent; or

   3.  an employee of any **Insured Organization** not described in paragraph 1 or 2 above, who is named as a defendant in: (i) any **Securities Claim**; or (ii) any other **Claim** while such **Claim** is brought and maintained against both the employee and the **Insured Individual** described in paragraph 1 above.

H.  **Insured Inquiry** means (i) a verifiable request by any governmental authority or securities exchange or similar self-regulatory body ("Authority"); or (ii) with regard to an inquiry or investigation by an Authority, a request by the **Policyholder**, that an **Insured Individual** appear for an interview or meeting with such Authority; in connection with such **Insured Individual's** capacity as such or the **Insured Organization's** business, including a notice pursuant to the UK Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any jurisdiction; provided such request is not related to any **Claim**. **Insured Inquiry** does not include a request in connection with any routine or mandatory inquiry, examination, audit or similar supervisory review by any Authority.

I.  **Insured Inquiry Costs** means reasonable and necessary fees and expenses incurred by an **Insured Individual** (other than regular or overtime wages, salaries, fees, benefits or overhead expenses of any **Insured**) and consented to by the Insurer in connection with an **Insured Inquiry**.

J.  **Insured Organization** means the **Policyholder** and the **Subsidiaries**, including any such organization as a debtor in possession, and any foundation, charitable trust, political action committee or other not-for-profit entity controlled or exclusively sponsored by the **Policyholder** or any **Subsidiary**.

K.  **Interrelated Wrongful Acts** means any and all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes.

L.  **Investigation Costs** means reasonable and necessary legal fees and expenses (other than regular or overtime wages, salaries, fees, benefits or overhead expenses of any **Insured** or employee of the **Insured Organization**) incurred by the **Insured Organization** (including its board of directors or any committee of its board of directors) in connection with the investigation or evaluation on behalf of the **Insured Organization** of any **Securityholder Derivative Demand**.

M.  **Loss** means damages, settlement amounts, judgments, including any award of punitive, exemplary or multiple damages, pre-judgment or post-judgment interest, costs and fees awarded pursuant to judgments, **Defense Costs**, **Clawback Costs**, **Insured Inquiry Costs**, and solely with respect to Insuring Agreement D, **Investigation Costs**.

   **Loss** does not include:

1.  any amount for which the **Insured** is legally or financially absolved from payment;

2.  fines or penalties against any **Insured**, other than civil money penalties assessed against the **Insured** for an unintentional and non-willful violation of any federal, state, local or foreign law (including without limitation any such penalty assessed pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-2(g)(2)(B));

3.  the loss of tax benefits or taxes, other than taxes imposed upon the **Insured Organization** for which an **Insured Individual** is legally liable solely by reason of the **Insured Organization's Financial Impairment**.

4.  any amount incurred to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**;

5.  any amount representing the increase in the consideration paid (or proposed to be paid) by the **Insured Organization** in connection with its purchase of any securities or assets; or

6.  matters uninsurable under the law applicable to this Policy, provided:

    a.  the law of the jurisdiction most favorable to the insurability of such matters shall apply; provided further such jurisdiction is: (i) where such amounts were awarded or imposed; (ii) where any **Wrongful Act** underlying the **Claim** took place; (iii) where either the Insurer or any **Insured** is incorporated, has its principal place of business or resides; or (iv) where this Policy was issued or became effective; and

    b.  the Insurer shall not assert that **Loss** incurred by any **Insured** on account of a **Securities Claim** is uninsurable due to the **Insured's** actual or alleged violation of Section 11, 12 or 15 of the Securities Act of 1933, as amended.

N.  **Outside Entity** means any non-profit entity that is not an **Insured Organization**.

O.  **Outside Position** means the position of director, officer, trustee or other equivalent executive position held by any **Insured Individual** in an **Outside Entity** if service in such position is at the direction or request of, with the knowledge and consent of or part of the duties regularly assigned an **Insured Individual** by the **Insured Organization**.

P.  **Policyholder** means the organization designated in Item 1 of the Declarations.

Q.  **Policy Period** means the period set forth in Item 2 of the Declarations, subject to prior termination of the Policy.

R.  **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipality or locality counterpart thereof. **Pollutants** shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, mold, spores, fungi, germs, viruses, bacteria, microbes, chemicals, waste materials and any other air emission, odor, waste water, oil or oil product, infectious or medical waste, asbestos or asbestos product, lead or lead product, noise, and electric, magnetic or electromagnetic field.

S.  **Securities Claim** means any **Claim**: (i) brought by one or more securityholders of the **Insured Organization**, in their capacity as such, alleging a violation of any common or statutory law; or (ii) based upon, arising out of or attributable to the purchase or sale of or offer to purchase or sell any securities issued by the **Insured Organization**.

T.  **Securityholder Derivative Demand** means:

1.  a written demand by one or more securityholders of the **Insured Organization** upon the board of directors or equivalent governing body of the **Insured Organization** to bring a lawsuit against any **Insured Individual** for a **Wrongful Act**; or

2. a lawsuit by a securityholder of the **Insured Organization** brought derivatively on behalf of the **Insured Organization** against any **Insured Individual** for a **Wrongful Act** without first making a demand as described in paragraph 1 above.

U. **Subsidiary** means any entity in which the **Insured Organization**: (i) owns more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of directors or equivalent executives of such entity; or (ii) has the right, pursuant to a written contract with or the by-laws, charter, operating agreement or similar governance document of such entity, to elect or appoint a majority of the directors or equivalent executives of such entity.

V. **Wrongful Act** means (i) any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty by any **Insured Individual** in his or her capacity as such or in an **Outside Position** or, with respect to Insuring Agreement C, by the **Insured Organization**; or (ii) any matter claimed against an **Insured Individual** solely by reason of his or her serving in such capacity or in an **Outside Position**, provided this section (ii) shall not apply with respect to **Insured Individuals** of an **Insured Organization** that is a partnership.

## IV. EXCLUSIONS

The Insurer shall not be liable for **Loss** on account of any **Claim**:

A. based upon, arising out of or attributable to any circumstance or **Wrongful Act** which was the subject of any written notice given before the inception of the **Policy Period** under any directors and officers or corporate liability policy;

B. based upon, arising out of or attributable to any **Claim** made against any **Insured** on or prior to the respective Pending or Prior Claim Date set forth in Item 6 of the Declarations, or any **Wrongful Act** underlying or alleged therein;

C. based upon, arising out of or attributable to:

1. any profit, remuneration or advantage to which the **Insured** was not legally entitled; or

2. any willful violation of any statute or regulation or any deliberately criminal or fraudulent act, error or omission by the **Insured**;

if established by a final and non-appealable adjudication adverse to such **Insured** in the underlying action;

D. for any actual or alleged bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof; provided this Exclusion shall not apply to any employment related **Claim** against an **Insured Individual** for mental anguish or emotional distress or any **Securities Claim**;

E. brought or maintained by or on behalf of the **Insured Organization** or brought or maintained by or on behalf of the **Outside Entity** for a **Wrongful Act** by an **Insured Individual** while serving in an **Outside Position** for such **Outside Entity**; provided this Exclusion shall not apply to **Defense Costs** under Insuring Agreement A or any **Claim** against an **Insured Individual**:

1. that is a derivative lawsuit brought and maintained on behalf of the **Insured Organization** or the **Outside Entity** without the active assistance or participation of any director, officer or equivalent executive of the **Insured Organization** or **Outside Entity** unless such assistance or participation is (i) solely pursuant to, or in compliance with, a subpoena or similar legal process or, (ii) protected pursuant to Section 806 of the Sarbanes-Oxley Act of 2002 or any similar whistleblower statute;

2. brought or maintained by or on behalf of a bankruptcy or insolvency receiver, trustee, examiner, conservator, liquidator, rehabilitator or creditors' committee of the **Insured Organization** or the **Outside Entity**, or any assignee thereof; or

3.   brought and maintained outside the United States or any other common law jurisdiction; or

F.   for any actual or alleged violation of the Employee Retirement Income Security Act of 1974, as amended, or any other federal, state, local or foreign statutory or common law that governs the same topic or subject, and any rules, regulations or amendments thereto, provided this Exclusion shall only apply with respect to plans, programs and trusts established or maintained in whole or in part for the benefit of employees of the **Insured Organization**.

For purposes of determining the applicability of these Exclusions, the **Wrongful Act** of one **Insured Individual** shall not be imputed to any other **Insured Individual**, and only the **Wrongful Acts** of the **Insured Organization's** chief executive officer, chief financial officer, in-house general counsel or their functional equivalent shall be imputed to the **Insured Organization**.

V.   LIMITS OF LIABILITY AND RETENTIONS

A.   Limits of Liability

1.   The Insurer's maximum aggregate liability for all **Loss** under this Policy shall be the Limit of Liability set forth in Item 3.A of the Declarations. **Defense Costs** and **Insured Inquiry Costs** are part of, and not in addition to such Limit and the payment by the Insurer of **Defense Costs** and **Insured Inquiry Costs** reduces and may totally exhaust such Limit.

2.   The Insurer's maximum aggregate liability for all **Investigation Costs** under Insuring Agreement D shall be the Sublimit of Liability set forth in Item 3.B of the Declarations, which is part of, and not in addition to, the Limit of Liability set forth in Item 3.A of the Declarations.

3.   The Limits of Liability applicable to the Extended Reporting Period, if purchased, shall be part of, and not in addition to, the Limits of Liability set forth in Item 3 of the Declarations.

4.   All **Claims** arising from the same **Wrongful Act**, all **Interrelated Wrongful Acts** and all **Insured Inquiries** concerning the same facts or circumstances shall be deemed one **Claim** or **Insured Inquiry**. All such **Claims** and **Insured Inquiries** shall be deemed to be first made on the date the earliest of such **Claims** is first made against any **Insured** or such **Insured Inquiries** is received by any **Insured Individual**, respectively, whether before or during the **Policy Period**.

B.   Retentions

1.   No Retention shall apply to Insuring Agreements A and D.

2.   The Insurer's liability for **Loss** under Insuring Agreements B and C shall apply only to that part of **Loss** in excess of the applicable Retention set forth in Item 4 of the Declarations. Such Retention shall be borne by the **Insured Organization** uninsured and at its own risk.

3.   If a single **Claim** is subject to more than one Retention, the applicable Retentions shall apply separately to each part of such **Claim**, but the maximum total Retention applicable to such **Claim** shall not exceed the largest applicable Retention.

4.   If the **Insured Organization** is permitted or required by law to indemnify the **Insured Individuals** for any covered **Loss** or to advance covered **Defense Costs** or **Insured Inquiry Costs** on their behalf but either refuses in writing, or fails within ninety (90) days of the **Insured Individual's** request, to do so for any reason other than its **Financial Impairment**, the Insurer shall, subject to Subsections IX.A and IX.D, pay such **Loss** or advance such **Defense Costs** or **Insured Inquiry Costs** on behalf of the **Insured Individuals**.

VI.   DEFENSE AND SETTLEMENT

A.   It shall be the **Insureds'** duty and not the Insurer's duty to defend all **Claims**, respond to all **Insured Inquiries** and investigate all **Securityholder Derivative Demands**.

B. The **Insureds** shall not incur any **Defense Costs**, **Investigation Costs** or **Insured Inquiry Costs**, admit or assume any liability, settle, offer to settle, stipulate to any judgment or otherwise assume any contractual obligation with regard to any **Claim** or **Insured Inquiry** without the Insurer's prior written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for any settlement, **Defense Costs**, **Investigation Costs**, **Insured Inquiry Costs**, assumed obligation, admission or stipulated judgment to which it has not consented. However, if all **Insureds** are able to fully and finally dispose of, with prejudice, all **Claims** subject to one Retention for an amount, including **Defense Costs**, not exceeding the applicable Retention, then the Insurer's consent shall not be required.

C. The **Insureds** shall provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and shall do nothing that may prejudice the Insurer's potential or actual rights of recovery with respect to **Loss** paid; provided the failure of one **Insured Individual** to comply with this provision shall not impair the rights of any other **Insured Individual** under this Policy.

D. The Insurer shall have the right and shall be given the opportunity to effectively associate with the **Insureds** in the investigation, defense and settlement, including but not limited to the negotiation of a settlement, of any **Claim** or **Insured Inquiry** that is or appears reasonably likely to be covered under this Policy.

E. Subject to Subsection IX.A, the Insurer shall advance **Defense Costs** or **Insured Inquiry Costs** on a current basis; provided that to the extent it is finally established that any such **Defense Costs** or **Insured Inquiry Costs** are not covered under this Policy, the **Insureds**, severally according to their interests, shall repay such **Defense Costs** or **Insured Inquiry Costs** to the Insurer.

## VII. REPRESENTATIONS AND SEVERABILITY WITH RESPECT TO THE APPLICATION

A. The **Insureds** represent and acknowledge that statements made and information in the **Application** are accurate and complete, are the basis of this Policy and are incorporated in and constitute part of this Policy. If any statement in the **Application** was not accurate and complete and either was made with the intent to deceive or materially affected the acceptance of the risk or hazard assumed by the Insurer under this Policy, then this Policy shall be void *ab initio* as to:

   1. the **Insured Organization** under Insuring Agreement B, with respect to the indemnification of any **Insured Individual** who knew, prior to the **Policy Period**, the facts that were not accurately and completely disclosed in the **Application**; and

   2. the **Insured Organization** under Insuring Agreement C, if the chief executive officer, chief financial officer or in-house general counsel of the **Insured Organization** or their functional equivalent knew, prior to the **Policy Period**, the facts that were not accurately and completely disclosed in the **Application**;

   whether or not such **Insured Individual** or official knew the **Application** contained such inaccurate or incomplete statement.

B. For purposes of this Section VII, the knowledge of one **Insured Individual** shall not be imputed to any other **Insured Individual**.

C. The Insurer shall not have the right to, and shall not seek to, rescind or void, in whole or in part, the coverage provided under Insuring Agreement A.

## VIII. POLICY TERMINATION

   A. Cancellation

   1. The **Policyholder** may cancel the Policy by giving the Insurer advance written notice of cancellation stating when thereafter such cancellation will be effective. In such event, the Insurer shall refund any unearned premium calculated on a pro rata basis.

    2.   The Insurer may cancel this Policy only for nonpayment of premium by delivering or mailing to the **Policyholder** written notice of cancellation for nonpayment of premium stating the effective date thereof, which shall not be less than twenty (20) days after such notice is delivered or mailed.

B.  Nonrenewal

If the Insurer decides not to renew this Policy, the Insurer shall deliver or mail written notice of nonrenewal, stating the reason(s) therefore, to the **Policyholder** at least sixty (60) days prior to the expiration of the **Policy Period**. The offer of renewal terms, conditions, premiums or limits different from those in effect prior to renewal by the Insurer or any affiliate of the Insurer shall not constitute a nonrenewal.

C.  Notice of Termination

If the Insurer mails any notice required under this section, the Insurer shall do so by registered or certified mail or by mail evidenced by a United States Post Office certificate of mailing to the **Policyholder** at the address in Item 1 of the Declarations. The Insurer also shall send such notice by mail or electronic mail to the producer of record, if any. The delivery or mailing of such notice shall be sufficient proof thereof and the **Policy Period** shall end at the date and hour specified in the notice.

IX.  GENERAL CONDITIONS

A.  Allocation

If in any **Claim**, the **Insureds** who are afforded coverage for such **Claim** incur **Loss** jointly with others (including other **Insureds**) who are not afforded coverage under this Policy for such **Claim**, or incur an amount consisting of both **Loss** covered by this Policy and loss not covered by this Policy because such **Claim** includes both covered and uncovered matters, then the **Insureds** and the Insurer agree to use their best efforts to determine a fair and proper allocation of covered **Loss**. The Insurer's obligation shall relate only to those amounts allocated to matters and **Insureds** that are afforded coverage. In making such determination, the parties shall take into account the relative legal and financial exposures of the **Insureds** in connection with the defense and settlement of such **Claim**.

If the **Insureds** and the Insurer cannot agree on an allocation of **Defense Costs** or **Insured Inquiry Costs**, the Insurer shall advance **Defense Costs** or **Insured Inquiry Costs** that the Insurer believes to be covered under this Policy until a different allocation is negotiated, arbitrated or judicially determined. In such event, such allocation shall be applied retroactively to all **Defense Costs** or **Insured Inquiry Costs** but shall not apply to or create any presumption with respect to the allocation of any other amounts.

B.  Changes to Insureds

    1.   Acquisition of Policyholder

If during the **Policy Period** any of the following events occur:

    a.   the **Policyholder**: (i) sells all or substantially all of its assets to any other person or entity or affiliated groups of persons or entities; (ii) merges or consolidates with another entity such that the **Policyholder** is not the surviving entity; or (iii) becomes subject to **Financial Impairment** as defined in Definition III.E.(i); or

    b.   any person, entity or affiliated group of persons or entities acquires securities or voting rights which result in ownership or voting control by the other person(s) or entity(ies) of more than fifty percent (50%) of the voting, appointment or designation power for the selection of directors or equivalent executives of the **Policyholder**;

then coverage under this Policy shall continue until expiration of the **Policy Period** or the Extended Reporting Period, if applicable; provided that with respect to **Claims**, coverage applies only for **Wrongful Acts** taking place prior to the effective date of such event.

2.   Cessation of a Subsidiary

If before or during the **Policy Period** an organization ceases to be a **Subsidiary**, coverage for such **Subsidiary** and its **Insureds** shall continue until the expiration of the **Policy Period** or the Extended Reporting Period, if applicable; provided that with respect to **Claims**, coverage shall apply only for **Wrongful Acts** taking place prior to the effective date of such cessation.

C.   Notice

Except as otherwise provided in this Policy, all notices under this Policy shall be in writing and given by prepaid express courier, certified mail, email or fax properly addressed to the appropriate party. Notices to the **Insureds** may be given to the **Policyholder** at the address in Item 1 of the Declarations. Notices to the Insurer shall be given to the respective address set forth in Item 9 in the Declarations. Such notice shall be deemed to be received on the earlier of actual receipt thereof by the addressee or one day following the date such notice is sent.

D.   Payment Obligations and Priority of Payments

1.   The **Insured Organization** agrees to indemnify the **Insured Individuals** for covered **Loss** and advance covered **Defense Costs** and **Insured Inquiry Costs** on behalf of the **Insured Individuals** to the fullest extent permitted by law. If the **Insured Organization** fails to do so for any reason other than its **Financial Impairment**, the **Insured Organization** shall have a direct and immediate obligation to pay to the Insurer the amount of such **Loss** paid, and the amount of such **Defense Costs** and **Insured Inquiry Costs** advanced, by the Insurer up to the applicable Insuring Agreement B Retention.

2.   The Insurer shall be entitled to pay **Loss** as it becomes due and payable under this Policy without consideration of other future payment obligations. However, if such **Loss** exceeds the remaining applicable Limit of Liability, the Insurer shall pay such **Loss**, subject to such limit, in the following priority: (i) first, the Insurer shall pay all **Loss** covered under Insuring Agreement A; and (ii) second, the Insurer shall pay all other **Loss**. Subject to the foregoing, the Insurer shall, upon receipt of a written request from the **Policyholder's** chairperson or chief executive officer, delay any payment of **Loss** due the **Insured Organization** until such time as such individual designates, provided the Insurer's liability with respect to any such payment shall not be increased, and shall not include any interest on account of such delay.

E.   Other Insurance

If any **Loss** covered under this Policy is also insured by any other valid and collectible insurance, prior or current, then this Policy shall apply only in excess of the amount of any deductible, retention, and limits of liability under such other insurance whether such insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such insurance is written to be specifically excess of the Limit of Liability of this Policy; provided this Policy shall apply on a primary basis with respect to any personal umbrella excess liability insurance purchased by any **Insured Individual**.

F.   Subrogation

In the event of any payment under this Policy, the Insurer shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery, including without limitation any right of recovery from the **Insured Organization** for **Loss** within the Insuring Agreement B Retention that the **Insured Organization** fails or refuses to indemnify. The **Insureds** shall execute all papers required and do everything necessary to secure and preserve such rights and to enable the Insurer effectively to bring suit in the name of the **Insureds**. The Insurer will not exercise its right of subrogation against any **Insured Individual** under this Policy unless Exclusion IV.C applies to such **Insured Individual**.

G.   Bankruptcy

Bankruptcy or insolvency of the **Insureds** shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this Policy. In such event, the **Insureds** shall waive and release any automatic stay or injunction in such proceeding that may apply to this Policy or its

proceeds and agree not to oppose or object to any efforts by the Insurer or any **Insured** to obtain relief from any such stay or injunction.

H.  Territory, Valuation and Currency

This Policy shall apply to **Claims** made against the **Insureds** anywhere in the world where legally permissible. All monetary amounts under this Policy are expressed and payable in the currency of the United States. If judgment is rendered, settlement is denominated or any other element of **Loss** under this Policy is stated in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in the *Wall Street Journal* on the date the judgment becomes final or payment of the settlement or other element of **Loss** is due.

I.  Alteration and Assignment of Interest

No change in, modification of or assignment of interest under this Policy shall be effective except when made by a written endorsement to this Policy which is signed by an authorized representative of the Insurer.

J.  Action Against Insurer

No action shall lie against the Insurer unless, as a condition precedent to any such action, there has been full compliance with all terms of this Policy. No person or organization shall have any right under this Policy to join the Insurer as a party to any action against the **Insureds** to determine the **Insureds'** liability, nor shall the Insurer be impleaded by the **Insureds** or their legal representatives.

K.  Authorization

By acceptance of this Policy, the **Policyholder** agrees to act on behalf of all **Insureds** with respect to giving and receiving notices provided for in this Policy (except notice to apply for any Extended Reporting Period), paying premiums and receiving any return premiums that may become due under this Policy, and agreeing to and accepting endorsements, and the **Insureds** agree that the **Policyholder** shall act on their behalf.

L.  Headings

The descriptions in the headings and subheadings of this Policy are solely for convenience and form no part of the terms and conditions of coverage.



| Endorsement No. | Effective Date | Policy Number | Additional Premium |
|---|---|---|---|
| 1 | 12:01 a.m. on July 26, 2013 | MNN775651/01/2013 | N/A |

# NEW YORK AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

## Management And Corporate Liability Insurance Policy

It is agreed that:

I.  Notwithstanding anything in the Policy to the contrary, in the state of New York, to the extent this Policy provides liability coverage for discrimination or harassment, such coverage may only be provided on a vicarious basis or for disparate impact and an award of punitive or exemplary damages on account of an **Insured's** intentional wrongdoing is not insurable.

II.  The last paragraph in Section I. INSURING AGREEMENTS is replaced with the following:

As a condition precedent to the coverage afforded under these Insuring Agreements, the **Insureds** shall give to the Insurer written notice of any **Claim** and, if the **Insured** elects to seek coverage for **Insured Inquiry Costs**, any **Insured Inquiry**, as soon as practicable after the **Insured Organization's** risk manager, in-house general counsel or their functional equivalent first becomes aware of such **Claim** or **Insured Inquiry**, but in no event after the expiration of the **Policy Period** or any applicable Extended Reporting Period.

A **Claim** shall be deemed first made when any licensed agent of the Insurer in this state receives written notice thereof from the **Insured** or a third party. The failure to report a **Claim** to the Insurer within the time prescribed shall not invalidate such **Claim** for late notice if it shall be shown not to have been reasonably possible to give such notice within such time and that notice was given as soon as was reasonably possible thereafter.

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Class: 2-14177 (DO-Large Commercial Insured)

III.  Subsection II.B. Extended Reporting Period is deleted and replaced with the following:

B.  Extended Reporting Periods

1.  Automatic Extended Reporting Period

In the event of **Termination of Coverage**, the **Insureds** shall have an automatic sixty (60) day Extended Reporting Period, which shall be part of the optional Extended Reported Period, if purchased. If **Termination of Coverage** is the result of an increase in premium, a decrease in limits, a change in the type of coverage, a reduction of coverage, an increase in the self-insured retention or the addition of an exclusion, then this Automatic Extended Reporting Period shall apply only in regard to that coverage terminated.

2.  Optional Extended Reporting Period

In the event of **Termination of Coverage** solely by reason of cancellation or nonrenewal of the Policy, the **Policyholder** or the **Insured Individuals** shall have the right to elect an optional Extended Reporting Period set forth in Item 5 of the Declarations. This right shall lapse unless the Insurer receives written notice of the period elected together with payment of the additional premium due no later than sixty (60) days following the effective date of such **Termination of Coverage**. The premium for this optional Extended Reporting Period shall be based on the rates in effect on the date the Policy was issued or last renewed.

Notwithstanding the above, if the Insurer cancels this Policy and the claims-made relationship is less than one (1) year, then the Insurer shall not offer an optional Extended Reporting Period, or if the Insurer cancels this Policy and the claims-made relationship is greater than one (1) year, then the Insurer shall not offer an optional Extended Reporting Period unless requested by the **Insured**.

3.  If an event described in Subsection IX.B.1 occurs, the **Policyholder** shall have the right to request an Extended Reporting Period of up to six (6) years after the effective date of such event. This right shall lapse unless the Insurer receives written notice of period requested before the expiration of the **Policy Period**. The Insurer shall then notify the **Policyholder** of the additional premium and any additional information the Insurer may require for any Extended Reporting Period offered.

4.  If premium is due to the Insurer for coverage during the **Policy Period**, any monies received by the Insurer for the Extended Reporting Period shall first be applied to such premium. The Optional Extended Reporting Period shall not take effect until any premium due for the Policy is paid, and unless the premium for the Optional Extended Reporting Period is paid promptly when due.

5.  A person employed or otherwise affiliated with the **Insured** and covered by this Policy during such affiliation shall continue to be covered under the Policy and any Extended Reporting Period after such affiliation has ceased for such person's covered acts or omissions during such affiliation.

6.  Any **Insured Inquiry** received by the **Insured Individual** or **Claim** first made during the Extended Reporting Period shall be considered first received or made, respectively, during the **Policy Period**; provided that with respect to **Claims**, the Extended Reporting Period shall apply only to **Wrongful Acts** that take place prior to the effective date of **Termination of Coverage** or Subsection IX.B.1 event.

7.  If similar insurance to that provided by this Policy is in force during the Extended Reporting Period, the coverage afforded during the Extended Reporting Period shall be excess over any such valid and collectible insurance.

IV. Section III. DEFINITIONS is amended as follows:

    A.  Definition R. **Pollutants** is replaced with the following:

        **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipality or locality counterpart thereof. **Pollutants** shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, spores, fungi, germs, viruses, bacteria, microbes, chemicals, waste materials and any other air emission, odor, waste water, oil or oil product or infectious or medical waste.

    B.  The following Definitions are added:

        W.  **Non-Indemnifiable Loss** means Loss for which the **Insured Organization** is not is not permitted by the New York Business Corporations Law (hereinafter "BCL") or Banking Law (hereinafter "BL") to indemnify the **Insured Individuals**.

        X.  **Termination of Coverage** means, whether by the Insurer or the **Policyholder**, the earlier of the cancellation or nonrenewal of this Policy or an increase in premium, a decrease in limits, a change in the type of coverage, a reduction of coverage, an increase in the self-insured retention or the addition of an exclusion.

V.  The following is added to Subsection V.B. Retentions:

    Retention and Coinsurance for Non-Indemnifiable Loss

    Section 727(a)(3) of the BCL and section 7024(a)(3) of the BL require retention and coinsurance amounts for **Non-Indemnifiable Loss**. The minimum retention amounts and coinsurance required by 11 NYCRR 72.4 are set forth below:

| Corporations with assets (in millions): | Insured Individual Retention | Aggregate Retention all Insured Individuals | Coinsurance |
|---|---|---|---|
| (1) > $20m | $5,000 | $50,000 | 0.5% |
| (2) > $10m up to $20m | $4,000 | $40,000 | 0.4% |
| (3) > $5m up to $10m | $3,000 | $30,000 | 0.3% |
| (4) $5m or less | $2,000 | $20,000 | 0.2% |

    Accordingly, if applicable:

    (i)  the Insurer's liability for **Non-Indemnifiable Loss** shall apply only in excess of the Retention set forth in Item 4 of the Declarations, which is the minimum retention amount required for this Policy. This Retention shall apply separately to each **Insured Individual**, subject to the maximum Retention for all Loss set forth therein. In the event that the maximum Retention applies, it shall be prorated among the **Insured Individuals** in proportion to their respective **Loss**, but in no event shall the Retention per **Insured Individual** be reduced below seventy-five percent (75%) of the per **Insured Individual** Retention set forth in Item 4 of the Declarations; and

    (ii)  the **Insured Individuals** shall bear uninsured at their own risk the Coinsurance set forth in Item 4 of the Declarations, which is the minimum coinsurance amount required for this Policy.

VI. Paragraph A in Section VII. REPRESENTATIONS AND SEVERABILITY WITH RESPECT TO THE APPLICATION is replaced with the following:

    A.  The **Insureds** represent and acknowledge that statements made and information in the **Application** are accurate and complete, are the basis of this Policy and are incorporated in and constitute part of this Policy. If the **Application** contains any misrepresentation and the Insurer would have refused to issue the Policy had the true facts been known, then this Policy shall be void *ab initio* as to:

1.  the **Insured Organization** under Insuring Agreement B, with respect to the indemnification of any **Insured Individual** who knew, prior to the **Policy Period**, the facts that were misrepresented in the **Application**; and

2.  the **Insured Organization** if its chief executive officer, chief financial officer, in-house general counsel or their functional equivalent knew, prior to the **Policy Period**, the facts that were misrepresented;

whether or not such **Insured Individual** or official knew the Application contained such misrepresentation.

VII.  Section VIII. POLICY TERMINATION is amended as follows:

A.  The following is added to paragraph 2 in Subsection A. Cancellation.

Notice of cancellation shall also state the amount of premium due.

B.  Subsections B. Nonrenewal and C. Notice of Termination are deleted and replaced with the following:

B.  Nonrenewal and Conditional Renewal

1.  If the Insurer decides not to renew this Policy or conditions renewal upon a decrease in limits, a change in the type of coverage, a reduction of coverage, an increase in the self-insured retention, the addition of an exclusion or an increase in premium of more than ten percent (10%) exclusive of any premium increase generated as a result of increased exposure limits or as a result of experience rating, loss rating, retrospective rating or audit, the Insurer shall deliver or mail written notice of nonrenewal or of such conditions to the **Policyholder** at least sixty (60) days but not more than one hundred twenty (120) days before the expiration of the **Policy Period**. Such notice shall state the reason(s) for nonrenewal or conditional renewal and a reasonable estimate of any proposed premium increase.

2.  If the Insurer fails to provide such notice at least sixty (60) days before the expiration of the **Policy Period**, but provides the required notice before expiration of the **Policy Period**, then coverage shall remain in effect at the same terms and conditions at the lower of the new rates or the expiring rates until sixty (60) days after such notice is provided, unless the **Insured** has replaced the coverage or elects to cancel. If the Insurer fails to provide such notice at least sixty (60) days before the expiration of the **Policy Period**, and the **Insured** elects to cancel before the end of the **Policy Period**, the return premium shall be calculated on a pro-rata basis.

3.  In the event of an extension of the **Policy Period** due to the failure to provide timely notice as described in the preceding paragraph, then the aggregate Limit of Liability of this Policy shall be reinstated in proportion to the extension of the **Policy Period**.

4.  If the Insurer provides a conditional nonrenewal notice at least thirty (30) days before the expiration of the **Policy Period**, and the **Insured** accepts the terms of the conditional renewal, then the new conditions shall take effect on the renewal date. If the Insurer provides notice of nonrenewal or of conditional nonrenewal on or after the expiration of the **Policy Period**, then coverage shall remain in effect at the same terms and conditions for another policy period, at the lower of the current rates or the expiring rates, unless the **Insured** has replaced coverage or elects to cancel. The return premium, if any, shall be calculated pro-rata.

5.  The Insurer shall not send notice of nonrenewal or conditional renewal if the **Policyholder**, the producer of record, if any, or another insurer of the **Insureds** mails or delivers notice that the Policy has been replaced or is no longer desired.

C.  Notice of Policy Termination and Loss Information

    1.  If the Insurer mails any notice required under this section, the Insurer shall do so by registered or certified mail or by mail evidenced by a United States Post Office certificate of mailing to the **Policyholder** at the address in Item 1 of the Declarations. The Insurer also shall send such notice by mail or electronic mail to the producer of record, if any. The delivery or mailing of such notice shall be sufficient proof thereof and the **Policy Period** shall end at the date and hour specified in the notice. Such notice shall advice the **Policyholder** of the availability of loss information consistent with paragraph 2 below.

    2.  Within ten (10) days of receipt of a written request of the **Policyholder** or producer of record, the Insurer shall mail or deliver to the **Policyholder** information on all open and closed claims and circumstances which could lead to a claim, including all dates, descriptions and payments, if any, for the time the Policy was in effect.

VIII.  Section IX. GENERAL CONDITIONS is amended as follows:

A.  Subsection C. Notice is replaced with the following:

Except as otherwise provided in this Policy, all notices under this Policy shall be in writing and given by prepaid express courier, certified mail, email or fax properly addressed to the appropriate party. Notices to the **Insureds** may be given to the **Policyholder** at the address in Item 1 of the Declarations. Notices to the Insurer shall be given to the respective address set forth in Item 8 in the Declarations or to any licensed agent of the Insurer in the state of New York. Such notice shall be deemed to be received on the earlier of actual receipt thereof by the addressee or one day following the date such notice is sent.

B.  The following is added to Subsection E. Other Insurance

This Policy will be excess over such other insurance in order to avoid duplication of payment.

C.  Subsection G. Bankruptcy is replaced with the following:

Bankruptcy or insolvency of the **Insureds** or the estate of any **Insured Individual** shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this Policy. In such event, the Insureds shall waive and release any automatic stay or injunction in such proceeding that may apply to this Policy or its proceeds and agree not to oppose or object to any efforts by the Insurer or any Insured to obtain relief from any such stay or injunction.

D.  The following is added to Subsection J. Action Against Insurer.

However, if the Insurer does not pay any judgment covered by this Policy within thirty (30) days from the service of notice of the judgment upon the **Insured** or its attorney and the Insurer, then an action may be brought against the Insurer under the terms of the Policy for the amount of judgment not exceeding the amount of the applicable Limit of Liability under the Policy, except during a stay or limited stay of execution against the **Insured** on such judgment.

With respect to a **Claim** for personal injury or wrongful death, if the Insurer denies coverage based on late notice, the claimant may maintain an action directly against the Insurer on the sole question of late notice, unless the **Insureds** or the Insurer, within sixty (60) days of the denial, initiates an action to declare the rights of the parties under the Policy and names the claimant as a party to the action.

All other provisions of the Policy remain unchanged.

_____
Authorized Representative

August 15, 2013
Date



NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS; HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.



| Endorsement No. | Effective Date | Policy Number | Additional Premium |
|---|---|---|---|
| 2 | 12:01 a.m. on July 26, 2013 | MNN775651/01/2013 | N/A |

## ABSOLUTE PROFESSIONAL SERVICES EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

## Management and Corporate Liability Insurance Policy

It is agreed that the Insurer shall not be liable for **Loss** arising from any **Claim** based upon, arising out of or attributable to the **Insured Organization's** performance of or failure to perform professional services for others, whether or not on a compensated basis.

All other provisions of the Policy remain unchanged.

Authorized Representative

August 15, 2013
Date

Class Code:  2-14177

MCL 1052 (09 11)

Page 1 of 1



| Endorsement No. | Effective Date | Policy Number | Additional Premium |
|---|---|---|---|
| 3 | 12:01 a.m. on July 26, 2013 | MNN775651/01/2013 | N/A |

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## SPECIFIC EVENT EXCLUSION ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

## Management And Corporate Liability Insurance Policy

It is agreed that:

The Insurer shall not be liable for **Loss** on account of any **Claim** based upon, arising out of or attributable to any litigation scheduled below, or any circumstance or **Wrongful Act** underlying or alleged therein:

Schedule of Event(s)

The alleged misrepresentations, breaches of contracts, fraudulent inducement and other wrongful acts of the Insureds described in a letter dated July 2, 2013, by Michael C. Deutsch of the law firm of Singer Deutsch LLP on behalf of Thomas Ryan and John Lugano.

All other provisions of the Policy remain unchanged.

_____
Authorized Representative

<u>August 15, 2013</u>
Date

Class Code:  2-14177

MCL 1109  (02 11)

Page 1 of 1



| Endorsement No. | Effective Date | Policy Number | Additional Premium |
|---|---|---|---|
| 4 | 12:01 a.m. on July 26, 2013 | MNN775651/01/2013 | N/A |

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

# EMPLOYED LAWYERS COVERAGE ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

## Management And Corporate Liability Insurance Policy

It is agreed that:

I.   Section III. DEFINITIONS is amended as follows:

    A.   The following is added to Definition G. **Insured Individual**:

        4.   any natural person not defined in paragraph 1, 2 or 3 above who is an **Employed Lawyer**, but only in his or her capacity as such.

    B.   The following Definition is added:

        **Employed Lawyer** means any licensed attorney employed by the **Insured Organization** and compensated by wages or salary paid by the **Insured Organization** to render professional legal services for or on behalf of the **Insured Organization**.

II.   The following is added to Subsection V.A. Limits of Liability:

    The Insurer's maximum aggregate liability for all **Loss** under Insuring Agreements A and B for each **Claim** and all **Claims** against all **Employed Lawyers** shall be the Sublimit of Liability set forth in Item 3.C of the Declarations, which is part of, and not in addition to, the Aggregate Limit of Liability set forth in Item 3.A of the Declarations.

All other provisions of the Policy remain unchanged.

_____
Authorized Representative

<u>August 15, 2013</u>
Date



NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

| Endorsement No. | Effective Date | Policy Number | Additional Premium |
|---|---|---|---|
| 5 | 12:01 a.m. on July 26, 2013 | MNN775651/01/2013 | N/A |

## UK SHADOW DIRECTOR ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

## Management And Corporate Liability Insurance Policy

It is agreed that the following is added to Definition III.G. **Insured Individual**:

4.   any director, officer or employee of the **Insured Organization** acting as a "shadow director" of the **Insured Organization**, as that term is defined in Section 251 of the UK Companies Act of 2006.

All other provisions of the Policy remain unchanged.

Authorized Representative

August 15, 2013
Date

Class Code:  2-14177

MCL 1136  (04 12)                                                                                                    Page 1 of 1



| Endorsement No. | Effective Date | Policy Number | Additional Premium |
|:---:|:---:|:---:|:---:|
| 6 | 12:01 a.m. on July 26, 2013 | MNN775651/01/2013 | N/A |

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

# RETENTION REDUCED BY OTHER INSURANCE PAYMENTS ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

## Management And Corporate Liability Insurance Policy

It is agreed that:

The following is added to paragraph 2 in Subsection V.B. Retentions:

> However, if the **Insured Individual's** difference in conditions insurance carrier pays **Loss** on his or her behalf on account of a **Claim** which is also covered under this Policy, then the Insurer shall recognize such payment as reducing the Retention under Insuring Agreement B with respect to such **Claim** up to the amount of such payment.

All other provisions of the Policy remain unchanged.

_____
Authorized Representative

<u>August 16, 2013</u>
Date



| Endorsement No. | Effective Date | Policy Number | Additional Premium |
|---|---|---|---|
| 7 | 12:01 a.m. on July 26, 2013 | MNN775651/01/2013 | N/A |

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## INSURED INQUIRY AMENDED ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

## Management And Corporate Liability Insurance Policy

It is agreed that:

Definition III.H **Insured Inquiry** is replaced with the following:

**Insured Inquiry** means:

1. a verifiable request by any governmental authority or securities exchange or similar self-regulatory body ("Authority"); or

2. with regard to an inquiry or investigation by an Authority, a request by the **Policyholder** or **Outside Entity**;

that the **Insured Individual** produce documents to or appear for an interview or meeting with such Authority in connection with such **Insured Individual's** capacity as such or the **Policyholder's** or **Outside Entity's** business, including a notice pursuant to the UK Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any jurisdiction.

All other provisions of the Policy remain unchanged.

_____
Authorized Representative

August 15, 2013
_____
Date



NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.



| Endorsement No. | Effective Date | Policy Number | Additional Premium |
|---|---|---|---|
| 8 | 12:01 a.m. on July 26, 2013 | MNN775651/01/2013 | N/A |

## PROFIT EXCLUSION AMENDED ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

## Management And Corporate Liability Insurance Policy

It is agreed that Paragraph C.1 in Section IV. EXCLUSIONS is replaced with the following:

1. any personal profit, remuneration or financial advantage to which the **Insured** was not legally entitled; or

All other provisions of the Policy remain unchanged.

_____
Authorized Representative

August 15, 2013
_____
Date

Class Code:  2-14177

MCL 1147  (05 12)

Page 1 of 1



| Endorsement No. | Effective Date | Policy Number | Additional Premium |
|---|---|---|---|
| 9 | 12:01 a.m. on July 26, 2013 | MNN775651/01/2013 | N/A |

# INSURED INDIVIDUAL AMENDED ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

## Management And Corporate Liability Insurance Policy

It is agreed that:

Paragraph 2 of Definition G. **Insured Individual** is replaced with the following:

2.  the in-house general counsel, comptroller, risk manager, director of investor relations, director of human resources or advisory board members of the **Insured Organization** or their functional equivalent; or

All other provisions of the Policy remain unchanged.

_____
Authorized Representative

<u>August 15, 2013</u>
Date

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS, HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Class Code:  2-14177

MCL 1151  (01 12)



| Endorsement No. | Effective Date | Policy Number | Additional Premium |
|---|---|---|---|
| 10 | 12:01 a.m. on July 26, 2013 | MNN775651/01/2013 | N/A |

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## AMEND TIME TO ADVANCE DEFENSE COSTS ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

## Management And Corporate Liability Insurance Policy

It is agreed that:

Paragraph 4 of Subsection V.B. Retentions is replaced with the following:

4.  If the **Insured Organization** is permitted or required by law to indemnify the **Insured Individuals** for any covered **Loss** or to advance covered **Defense Costs** or **Insured Inquiry Costs** on their behalf but either refuses in writing or fails within sixty (60) days of the **Insured Individual's** request, to do so for any reason other than its **Financial Impairment**, the Insurer shall, subject to Subsections IX.A and IX.D, pay such **Loss** or advance such **Defense Costs** or **Insured Inquiry Costs** on behalf of the **Insured Individuals**.

All other provisions of the Policy remain unchanged.

_____
Authorized Representative

<u>August 15, 2013</u>
Date



| Endorsement No. | Effective Date | Policy Number | Additional Premium |
|---|---|---|---|
| 11 | 12:01 a.m. on July 26, 2014 | MNN775651/01/2013 | $16,560 |

# EXTEND POLICY PERIOD ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

## Management And Corporate Liability Insurance Policy

It is agreed that Item 2. **Policy Period** of the Declarations is replaced with the following:

From: 12:01 a.m. on July 26, 2013 To: 12:01 a.m. on September 6, 2014, at the address in Item 1.

All other provisions of the Policy remain unchanged.

*Ben M. Lee*
_____
Authorized Representative

<u>July 30, 2014</u>
Date



| Endorsement No. | Effective Date | Policy Number | Additional Premium |
|---|---|---|---|
| 12 | 12:01 a.m. on September 6, 2014 | MNN775651/01/2013 | $216,000 |

# EXTENDED REPORTING PERIOD ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

## Management And Corporate Liability Insurance Policy

In exchange for the premium set forth above and pursuant to Subsection II.B. Extended Reporting Period, it is agreed that:

A.  Item 2. **Policy Period** of the Declarations is replaced with the following:

   From: 12:01 a.m.on July 26, 2013 to: 12:01 a.m.on September 6, 2014, at the address in Item 1.

B.  The **Policyholder** has purchased an Extended Reporting Period of one (1) year from the effective date of the termination of the **Policy Period**.

All other provisions of the Policy remain unchanged.

_Ben W. Lee_
_____
Authorized Representative

<u>November 3, 2014</u>
Date

---

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.    HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Class Code: 2–14177