# **<u>EXHIBIT B</u>**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely as chapter 7 trustee (the "Trustee") for the estates of Liquid Holdings Group, Inc.., *et al.* (the "Debtors"),[1] and not in any individual capacity, on the one hand, ACTIV Financial Systems, Inc. ("Defendant"), on the other hand. Defendant and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on January 27, 2016 (the "Petition Date"), the Debtors each commenced a case (the "Chapter 11 Cases") by filing a voluntary petition for relief in the United States Bankruptcy Court for the District of Delaware (the "Court") under chapter 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, On February 25, 2016, the Bankruptcy Court entered an order (the "Conversion Order") converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code (collectively, these "Chapter 7 Cases") effective as of February 25, 2016 (the "Conversion Date");

WHEREAS, Alfred T. Giuliano was duly appointed as the Trustee in each of the Chapter 7 Cases; and

WHEREAS, the Debtors and Defendant had various business relationships prior to the Petition Date; and

WHEREAS, on January 24, 2018, the Trustee filed in the Court his *Complaint for Avoidance and Recovery of Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550* (the

---

[1] The Debtors, along with the last four digits of each reorganized debtor's tax identification number, as applicable, are: Liquid Holdings Group, Inc. (2142), Liquid Prime Holdings, LLC (2135). The address of the Debtors' corporate headquarters is 111 River Street, Ste. 1204, Hoboken, New Jersey 07030.

"Complaint"), commencing that adversary proceeding assigned Case Number 18-50140 (the

"Adversary Proceeding") asserting, *inter alia,* that the Trustee is entitled to avoid and recover

from Defendant pursuant to Bankruptcy Code sections 547 and 550 alleged preferential transfers

(the "Preferential Transfers") made by Debtors to Defendant in a total amount not less than

$64,994.13 during the 90-day period prior to the Petition Date; and

WHEREAS, rather than proceed with litigation concerning the Preferential Transfers, the

Complaint, and the Adversary Proceeding, the Parties engaged in good faith, arms' length

negotiations to resolve the Preferential Transfers, the Complaint, and the Adversary Proceeding

in their entireties;

NOW THEREFORE, for good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    **Recitals.** The recitals set forth above are incorporated herein by

reference.

2.    **Settlement Amount.** Within ten (10) days after the entry of an Order by

the Court approving this Settlement Agreement Defendant shall pay to the Trustee the

total sum of $2,500.00 US (Two Thousand Five Hundred Dollars) in full and complete

settlement of any and all matters relating in any way to the Preferential Transfers, the

Complaint, and the Adversary Proceeding (the "Settlement Amount"). The Settlement

Amount shall be mailed or wired in accordance with instructions to be provided by the

Trustee.

3.    **Settlement Effective Date.** The effective date of this Settlement

Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) the

date an order approving this Settlement Agreement is entered by the Court, or (iii)

payment of the Settlement Amount (the "Settlement Effective Date").

3. **Dismissal with Prejudice.** Within fourteen (14) days following the

Settlement Effective Date, the Adversary Proceeding shall be dismissed with prejudice.

4. **Claims Waiver.** Effective on the Settlement Effective Date, Defendant waives

any and all claims in the cases of the Debtors, including but not limited to any filed proof of

claim or scheduled claim, and waives the right to file or assert any claim under section 502(h)

of the Bankruptcy Code (the "Waived Claims").

5. **Trustee's Limited Release.** Effective on the Settlement Effective Date, the

Trustee solely in his capacity as Trustee, and not in any individual or other capacity, shall be

deemed to have irrevocably and unconditionally, fully, finally and forever waived, released,

acquitted and discharged Defendant, its attorneys, accountants, financial advisors, directors,

employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them

(collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of

action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings,

bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances,

trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or

nature, whether known or unknown, suspected or unsuspected, in law or equity, which the

Trustee has, had, may have, or may claim to have against the Defendant Releasees solely in

connection with the Preferential Transfers, the Complaint, and the Adversary Proceeding.

6. **Defendant's Limited Release.** Effective on the Settlement Effective Date, the

Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and

forever waived, released, acquitted and discharged the Trustee, the Debtors, their past or present

attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had, may have, or may claim to have against any of the Trustee Releasees solely in connection with the Preferential Transfers, the Complaint, and the Adversary Proceeding.

7.    **No Admissions.** This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the Preferential Transfers, the Complaint, or the Adversary Proceeding.

8.    **Expenses.** The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the Complaint, the Adversary Proceeding, and this Settlement Agreement. In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

9.    **Severability.** The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality,

validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

10.    **Miscellaneous.**

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)    The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with

respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)     If this Settlement Agreement is not approved by the Court, then the Settlement Agreement shall be null and void and of no force or effect, and the Trustee shall return the Settlement Amount to the Defendant within ten (10) days after the Court declines to approve the Settlement Agreement. In such event, each of the Parties shall be returned to the Parties' position *status quo ante,* and the Parties reserve all of their respective rights, claims, and defenses with respect to all of the matters set forth herein.

(h)     Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(i)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

8806602 v1

(j)     In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made .by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(k)     The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(1)     This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(m)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(n)     The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

(o)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:                 JULY 31_____, 2018

ALFRED T. GUILIANO,                        ACTIV FINANCIAL SYSTEMS, INC.
CHAPTER 7 TRUSTEE

By: _____             By: _____
Alfred T. Guiliano, solely in his capacity as
Chapter 7 Trustee of Liquid Holdings, Inc., *et al.*

8806602 v1

# **<u>EXHIBIT C</u>**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely as chapter 7 trustee (the "Trustee") for the estates of Liquid Holdings Group, Inc., *et al.* (the "Debtors"),[1] and not in any individual capacity, on the one hand, and Ballard Spahr LLP ("Defendant"), on the other hand. (Defendant and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party.")

### Background

WHEREAS, on January 27, 2016 (the "Petition Date"), the Debtors each commenced a case (the "Chapter 11 Cases") by filing a voluntary petition for relief in the United States Bankruptcy Court for the District of Delaware (the "Court") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, On February 25, 2016, the Bankruptcy Court entered an order (the "Conversion Order") converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code (collectively, these "Chapter 7 Cases") effective as of February 25, 2016 (the "Conversion Date");

WHEREAS, Alfred T. Giuliano was duly appointed as the Trustee in each of the Chapter 7 Cases; and

WHEREAS, the Debtors and Defendant had various business relationships prior to the Petition Date; and

WHEREAS, the Trustee filed an action against Defendant in the United States Bankruptcy Court for the District of Delaware, Case No. 18-50143 (the "Lawsuit") asserting,

---

[1] The Debtors, along with the last four digits of each reorganized debtor's tax identification number, as applicable, are: Liquid Holdings Group, Inc. (2142), Liquid Prime Holdings, LLC (2135). The address of the Debtors' corporate headquarters is 111 River Street, Ste. 1204, Hoboken, New Jersey 07030.

*inter alia*, that the Trustee is entitled to avoid and recover, pursuant to Bankruptcy Code sections 547 and 550, alleged preferential transfers (the "Preferential Transfers") made by one or more of the Debtors to Defendant in an amount not less than $37,375.20 during the 90-day period prior to the Petition Date; and

WHEREAS, Defendant denies liability for the Preferential Transfers and asserts various defenses; and

WHEREAS, rather than proceed with litigation concerning the Preferential Transfers, the Parties engaged in good faith, arms' length negotiations to resolve the Preferential Transfers in their entireties.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    **Recitals.** The recitals set forth above are incorporated herein by reference.

2.    **Settlement Amount.** Within ten (10) days after execution of this Settlement Agreement by all parties, Defendant shall pay to the Trustee the total sum of $5,000.00 US (Five Thousand Dollars) in full and complete settlement of the Preferential Transfers, including attorneys' fees and costs associated with the Trustee's demand (the "Settlement Amount"). The Settlement Amount shall be mailed or wired in accordance with instructions. In the event the Settlement Agreement is not approved by the Bankruptcy Court upon motion of the Trustee as referenced in paragraph 11 herein, the Trustee will promptly return the Settlement Amount to the Defendant.

3.    **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the date upon which all of the following have occurred: (i)

entry of an order of the Bankruptcy Court approving this Settlement Agreement; and (ii) the
Trustee has received the Settlement Amount in good funds (the "<u>Settlement Effective Date</u>").

      4.    **Section 502(h) Claim Waiver.**  Defendant hereby waives the right to file
or assert any claim under section 502(h) of the Bankruptcy Code.

      5.    **Trustee's Limited Release.**  Effective on the Settlement Effective Date,
the Trustee solely in his capacity as Trustee, and not in any individual or other capacity, shall be
deemed to have irrevocably and unconditionally, fully, finally and forever waived, released,
acquitted and discharged Defendant, its attorneys, accountants, financial advisors, directors,
employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them
(collectively, the "<u>Defendant Releasees</u>") from any and all claims, manner of actions, causes of
action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings,
bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances,
trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature,
whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has,
have had, may have or may claim to have against the Defendant Releasees solely in connection
with the Preferential Transfers.

      6.    **Defendants' Limited Release.**  Effective on the Settlement Effective
Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully,
finally and forever waived, released, acquitted and discharged the Trustee, the Debtors, their past
or present attorneys, accountants, financial advisors, directors, employees, officers, parents,
agents, subsidiaries, and the successors and assigns of any of them (collectively, the "<u>Trustee
Releasees</u>"), from any and all claims, manner of actions, causes of action, suits, costs, debts,
liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties,

covenants, contracts, controversies, agreements, promises, variances, trespasses, damages,

judgments, executions and demands whatsoever, of whatever kind or nature, whether known or

unknown, suspected or unsuspected, in law or equity, which Defendant has, has had, may have

or may claim to have against any of the Trustee Releasees solely in connection with the

Preferential Transfers.

> 7.    **No Admissions.** This Settlement Agreement is not and shall not in any

way be construed as an admission by the Parties of any allegations made in connection with the

Demand or the Preferential Transfers.

> 8.    **Expenses.** The Parties shall bear their own costs, expenses, and attorneys'

fees incurred to date in connection with the Demand and this Settlement Agreement.  In the

event of any dispute in connection with the enforcement of this Settlement Agreement, the

prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary

disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs,

incurred in connection with such action or proceeding, as determined by the Court.

> 9.    **Severability.** The Parties agree that if any provision of this Settlement

Agreement is determined by a court of competent jurisdiction to be illegal, invalid or

unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality,

validity and enforceability of the remaining provisions shall not be affected by a provision of this

Settlement Agreement that is illegal, invalid, or unenforceable.

> 10.    **Miscellaneous.**

> (a)    Neither this Settlement Agreement, nor any statement made or

action taken in connection with the negotiation of this Settlement Agreement, shall be offered or

received in evidence or in any way referred to in any legal action or administrative proceeding

8856941 v1

among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)    The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)    Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or

extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)     In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)     The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

8856941 v1

(k)    This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)    The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

(n)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

11.    **Bankruptcy Court Approval.**  Promptly following the Parties' execution of this Agreement, the Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019.  Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:                          August 1        , 2018

ALFRED T. GUILIANO,                          BALLARD SPAHR LLP
CHAPTER 7 TRUSTEE


By:_____          By:_____
Alfred T. Guiliano, solely in his capacity as          Tobey M. Daluz, Esq.
Chapter 7 Trustee of Liquid Holdings, Inc., *et al.*

# **<u>EXHIBIT D</u>**

<u>SETTLEMENT AGREEMENT AND MUTUAL RELEASE</u>

This *Settlement Agreement and Mutual Release* (the <u>"Settlement Agreement"</u>) is entered

into by and between Alfred T. Giuliano, solely as chapter 7 trustee (the <u>"Trustee"</u>) for the estates of

Liquid Holdings Group, Inc.., *et al.* (the <u>"Debtors"</u>),[1] and not in any individual capacity, on the

one hand, Bloomberg Finance LP ("Defendant"), on the other hand. Defendant and the Trustee

may be referenced herein collectively as the <u>"Parties"</u> and/or each as a <u>"Party."</u>

<u>Background</u>

WHEREAS, on January 27, 2016 (the <u>"Petition Date"</u>), the Debtors each commenced a

case (the <u>"Chapter 11 Cases"</u>) by filing a voluntary petition for relief in the United States

Bankruptcy Court for the District of Delaware (the <u>"Court"</u>) under chapter 11 of the United

States Code (the <u>"Bankruptcy Code"</u>); and

WHEREAS, On February 25, 2016, the Bankruptcy Court entered an order (the

"Conversion Order") converting the Chapter 11 Cases to cases under Chapter 7 of the

Bankruptcy Code (collectively, these "Chapter 7 Cases") effective as of February 25, 2016 (the

"Conversion Date");

WHEREAS, Alfred T. Giuliano was duly appointed as the Trustee in each of the Chapter

7 Cases; and

WHEREAS, the Debtors and Defendant had various business relationships prior to the

Petition Date; and

WHEREAS, on January 24, 2018, the Trustee filed in the Court his *Complaint for*

*Avoidance and Recovery of Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550* (the

<u>"Complaint"</u>), commencing that adversary proceeding assigned Case Number 18-50142 (the

---

[1] The Debtors, along with the last four digits of each reorganized debtor's tax identification number, as applicable, are: Liquid Holdings Group, Inc. (2142), Liquid Prime Holdings, LLC (2135). The address of the Debtors' corporate headquarters is 111 River Street, Ste. 1204, Hoboken, New Jersey 07030.

"Adversary Proceeding") asserting, *inter alia,* that the Trustee is entitled to avoid and recover

from Defendant pursuant to Bankruptcy Code sections 547 and 550 alleged preferential transfers

(the "Preferential Transfers") made by Debtors to Defendant in a total amount not less than

$6,826.46 during the 90-day period prior to the Petition Date; and

WHEREAS, rather than proceed with litigation concerning the Preferential Transfers, the

Complaint, and the Adversary Proceeding, the Parties engaged in good faith, arms' length

negotiations to resolve the Preferential Transfers, the Complaint, and the Adversary Proceeding

in their entireties;

NOW THEREFORE, for good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    **Recitals.** The recitals set forth above are incorporated herein by

reference.

2.    **Settlement Amount.** Within fourteen (14) business days after both (i)

execution of this Settlement Agreement by all parties and (ii) return to Defendant of a

completed Bloomberg Domestic Payment Requisition Request (form attached hereto

as Exhibit 1), Defendant shall pay to the Trustee the total sum of $4,000.00 US (Four

Thousand Dollars) in full and complete settlement of the Preferential Transfers, the

Complaint, and the Adversary Proceeding, including all attorneys' fees and costs

associated with the Complaint (the "Settlement Amount"). The Settlement Amount

shall be mailed or wired in accordance with instructions to be provided by the Trustee

in the Bloomberg Domestic Payment Requisition Request.

3.    **Settlement Effective Date.** The effective date of this Settlement

Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) the

date an order approving this Settlement Agreement is entered by the Court, or (iii) payment of the Settlement Amount (the "Settlement Effective Date").

     3.      **Dismissal with Prejudice.** Within fourteen (14) days following the Settlement Effective Date, the Adversary Proceeding shall be dismissed with prejudice.

     4.      **Claims Waiver.** Effective on the Settlement Effective Date, Defendant waives any and all claims that were or could have been raised in the cases of the Debtors, including but not limited to any filed proof of claim or scheduled claim, and waives the right to file or assert any claim under section 502(h) of the Bankruptcy Code (the "Waived Claims").

     5.      **Trustee's Limited Release.** Effective on the Settlement Effective Date, the Trustee solely in his capacity as Trustee, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Defendant, its attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Defendant Releasees solely in connection with the Preferential Transfers, the Complaint, and the Adversary Proceeding.

     6.      **Defendant's Limited Release.** Effective on the Settlement Effective Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors, their past or present

attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had, may have, or may claim to have against any of the Trustee Releasees solely in connection with the Preferential Transfers, the Complaint, and the Adversary Proceeding. For the avoidance of doubt, nothing in this paragraph releases any claim the Defendant Releasees may have against the Trustee Releasees with respect to the use or misuse by the Trustee Releasees of the Bloomberg Terminal or of any other service or product provided by Bloomberg to the Trustee Releasees.

      7.      **No Admissions.** This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the Preferential Transfers, the Complaint, or the Adversary Proceeding.

      8.      **Expenses.** The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the Complaint, the Adversary Proceeding, and this Settlement Agreement. In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

9.    **Severability**. The Parties agree that if any provision of this Settlement Agreement (other than Paragraphs 3, 4, 5, and/or 6) is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

10.    **Miscellaneous**.

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)        This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)        The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)        If this Settlement Agreement is not approved by the Court, then the Settlement Agreement shall be null and void and of no force or effect, and the Trustee shall return the Settlement Amount to the Defendant within ten (10) business days after the Court declines to approve the Settlement Agreement. In such event, each of the Parties shall be returned to the Parties' position *status quo ante,* and the Parties reserve all of their respective rights, claims, and defenses with respect to all of the matters set forth herein.

(h)        Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(i)        Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind

such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(j)      In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made .by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(k)      The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(1)      This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(m)      This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(n)      The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

(o)   The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

*Aug. 23*, 2018

ALFRED T. GUILIANO,
CHAPTER 7 TRUSTEE

BLOOMBERG FINANCE LP

By: _____

By: _____

Alfred T. Guiliano, solely in his capacity as
Chapter 7 Trustee of Liquid Holdings, Inc., *et al.*

# **<u>EXHIBIT E</u>**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely as chapter 7 trustee (the "Trustee") for the estates of Liquid Holdings Group, Inc.., *et al.* (the "Debtors"),[1] and not in any individual capacity, on the one hand, DataArt Solutions, Inc. ("Defendant"), on the other hand. Defendant and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on January 27, 2016 (the "Petition Date"), the Debtors each commenced a case (the "Chapter 11 Cases") by filing a voluntary petition for relief in the United States Bankruptcy Court for the District of Delaware (the "Court") under chapter 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, On February 25, 2016, the Bankruptcy Court entered an order (the "Conversion Order") converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code (collectively, these "Chapter 7 Cases") effective as of February 25, 2016 (the "Conversion Date");

WHEREAS, Alfred T. Giuliano was duly appointed as the Trustee in each of the Chapter 7 Cases; and

WHEREAS, the Debtors and Defendant had various business relationships prior to the Petition Date; and

WHEREAS, on January 24, 2018, the Trustee filed in the Court his *Complaint for Avoidance and Recovery of Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550* (the

---

[1] The Debtors, along with the last four digits of each reorganized debtor's tax identification number, as applicable, are: Liquid Holdings Group, Inc. (2142), Liquid Prime Holdings, LLC (2135). The address of the Debtors' corporate headquarters is 111 River Street, Ste. 1204, Hoboken, New Jersey 07030.

"Complaint"), commencing that adversary proceeding assigned case number 18-50146 (the

"Adversary Proceeding") asserting, *inter alia,* that the Trustee is entitled to avoid and recover

from Defendant pursuant to Bankruptcy Code sections 547 and 550 alleged preferential transfers

(the "Preferential Transfers") made by Debtors to Defendant in a total amount not less than

$25,200.00 during the 90-day period prior to the Petition Date; and

  WHEREAS, rather than proceed with litigation concerning the Preferential Transfers, the

Complaint, and the Adversary Proceeding, the Parties engaged in good faith, arms' length

negotiations to resolve the Preferential Transfers, the Complaint, and the Adversary Proceeding

in their entireties;

  NOW THEREFORE, for good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, the Parties hereby agree that:

  1. **Recitals.** The recitals set forth above are incorporated herein by

reference.

  2. **Settlement Amount.** Within ten (10) days after execution of this

Settlement Agreement by all parties,, Defendant shall pay to the Trustee the total sum

of $15,000.00 US (Fifteen Thousand Dollars) in full and complete settlement of the

Preferential Transfers, the Complaint, and the Adversary Proceeding, including

attorneys' fees and costs associated with the Complaint (the "Settlement Amount").

The Settlement Amount shall be mailed or wired in accordance with instructions to be

provided by the Trustee.

  3. **Settlement Effective Date.** The effective date of this Settlement

Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) the

date an order approving this Settlement Agreement is entered by the Court, or (iii) payment of the Settlement Amount (the "Settlement Effective Date").

3.    **Dismissal with Prejudice.** Within fourteen (14) days following the Settlement Effective Date, the Adversary Proceeding shall be dismissed with prejudice.

4.    **Claims Waiver.** Effective on the Settlement Effective Date, Defendant waives any and all claims in the cases of the Debtors, including but not limited to any filed proof of claim or scheduled claim, and waives the right to file or assert any claim under section 502(h) of the Bankruptcy Code (the "Waived Claims").

5.    **Trustee's Limited Release.** Effective on the Settlement Effective Date, the Trustee solely in his capacity as Trustee, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Defendant, its attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Defendant Releasees solely in connection with the Preferential Transfers, the Complaint, and the Adversary Proceeding.

6.    **Defendant's Limited Release**. Effective on the Settlement Effective Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors, their past or present

attorneys, accountants, financial advisors, directors, employees, officers, parents, agents,

subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee

Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts,

liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties,

covenants, contracts, controversies, agreements, promises, variances, trespasses, damages,

judgments, executions and demands whatsoever, of whatever kind or nature, whether known or

unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had,

may have, or may claim to have against any of the Trustee Releasees solely in connection with

the Preferential Transfers, the Complaint, and the Adversary Proceeding.

      7.     **No Admissions**. This Settlement Agreement is not and shall not in any way be

construed as an admission by the Parties of any allegations made in connection with the

Preferential Transfers, the Complaint, or the Adversary Proceeding.

      8.     **Expenses**. The Parties shall bear their own costs, expenses, and attorneys' fees

incurred to date in connection with the Complaint, the Adversary Proceeding, and this

Settlement Agreement. In the event of any dispute in connection with the enforcement of this

Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees,

costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved

or non-approved costs, incurred in connection with such action or proceeding, as determined by

the Court.

      9.     **Severability**. The Parties agree that if any provision of this Settlement

Agreement is determined by a court of competent jurisdiction to be illegal, invalid or

unenforceable, that provision shall not be a part of this Settlement Agreement. The legality,

validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

    **10.**    **Miscellaneous**.

    (a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

    (b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

    (c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

    (d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

    (e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

    (f)    The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with

respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)  If this Settlement Agreement is not approved by the Court, then the Settlement Agreement shall be null and void and of no force or effect, and the Trustee shall return the Settlement Amount to the Defendant within ten (10) days after the Court declines to approve the Settlement Agreement. In such event, each of the Parties shall be returned to the Parties' position *status quo ante,* and the Parties reserve all of their respective rights, claims, and defenses with respect to all of the matters set forth herein.

(h)  Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(i)  Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(j)     In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made .by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(k)     The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(l)     This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(m)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(n)     The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

(o)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the

date(s) set forth below:

ACCEPTED AND AGREED TO BY:                    May 22, 2018

ALFRED T. GUILIANO,                    DATAART SOLUTIONS, INC.
CHAPTER 7 TRUSTEE


By:_____          By:_____
Alfred T. Guiliano, solely in his capacity as         Eugene Goland
Chapter 7 Trustee of Liquid Holdings, Inc., *et al.*        President

8764722 v1

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the

date(s) set forth below:


ACCEPTED AND AGREED TO BY:                    May 22, 2018

ALFRED T. GUILIANO,                      DATAART SOLUTIONS, INC.
CHAPTER 7 TRUSTEE


By: _Alfred Guiliano_                    By: _E. Eland_
Alfred T. Guiliano, solely in his capacity as     Eugene Eland
Chapter 7 Trustee of Liquid Holdings, Inc., *et al.*   President


8764722 v1

# **EXHIBIT F**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely as chapter 7 trustee (the "Trustee") for the estates of Liquid Holdings Group, Inc.., *et al.* (the "Debtors"),[1] and not in any individual capacity, on the one hand, IPREO Data Inc. ("Defendant"), on the other hand. Defendant and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on January 27, 2016 (the "Petition Date"), the Debtors each commenced a case (the "Chapter 11 Cases") by filing a voluntary petition for relief in the United States Bankruptcy Court for the District of Delaware (the "Court") under chapter 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, On February 25, 2016, the Bankruptcy Court entered an order (the "Conversion Order") converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code (collectively, these "Chapter 7 Cases") effective as of February 25, 2016 (the "Conversion Date");

WHEREAS, Alfred T. Giuliano was duly appointed as the Trustee in each of the Chapter 7 Cases; and

WHEREAS, the Debtors and Defendant had various business relationships prior to the Petition Date; and

WHEREAS, on January 24, 2018, the Trustee filed in the Court his *Complaint for Avoidance and Recovery of Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550* (the

---

[1] The Debtors, along with the last four digits of each reorganized debtor's tax identification number, as applicable, are: Liquid Holdings Group, Inc. (2142), Liquid Prime Holdings, LLC (2135). The address of the Debtors' corporate headquarters is 111 River Street, Ste. 1204, Hoboken, New Jersey 07030.

"Complaint"), commencing that adversary proceeding assigned case number 18-50153 (the "Adversary Proceeding") asserting, *inter alia,* that the Trustee is entitled to avoid and recover from Defendant pursuant to Bankruptcy Code sections 547 and 550 alleged preferential transfers (the "Preferential Transfers") made by Debtors to Defendant in a total amount not less than $15,000.00 during the 90-day period prior to the Petition Date; and

WHEREAS, rather than proceed with litigation concerning the Preferential Transfers, the Complaint, and the Adversary Proceeding, the Parties engaged in good faith, arms' length negotiations to resolve the Preferential Transfers, the Complaint, and the Adversary Proceeding in their entireties;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    **Recitals.** The recitals set forth above are incorporated herein by reference.

2.    **Settlement Amount.** Within ten (10) days after execution of this Settlement Agreement by all parties, Defendant shall pay to the Trustee the total sum of $9,000.00 US (Nine Thousand Dollars) in full and complete settlement of the Preferential Transfers, the Complaint, and the Adversary Proceeding, including attorneys' fees and costs associated with the Complaint (the "Settlement Amount"). The Settlement Amount shall be mailed or wired in accordance with instructions to be provided by the Trustee.

3.    **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) the

date an order approving this Settlement Agreement is entered by the Court, or (iii)

payment of the Settlement Amount (the "Settlement Effective Date").

   **3.**      **Dismissal with Prejudice.** Within fourteen (14) days following the

Settlement Effective Date, the Adversary Proceeding shall be dismissed with prejudice

and with the parties to bear their own costs.

   **4.**      **Claims Waiver.** Effective on the Settlement Effective Date, Defendant waives

any and all claims in the cases of the Debtors, including but not limited to any filed proof of

claim or scheduled claim, and waives the right to file or assert any claim under section 502(h)

of the Bankruptcy Code (the "Waived Claims").

   **5.**      **Trustee's Limited Release.** The Trustee represents that he is authorized to settle

and release any avoidance claims that the Debtors or their estates may have, had, or obtain in

the future.  Effective on the Settlement Effective Date, the Trustee solely in his capacity as

Trustee, and not in any individual or other capacity, shall be deemed to have, on behalf of

himself as Trustee and on behalf of Debtors and Debtors' estates, irrevocably and

unconditionally, fully, finally and forever waived, released, acquitted and discharged

Defendant, its attorneys, accountants, financial advisors, directors, employees, officers, parents,

agents, subsidiaries, affiliates, and the successors and assigns of any of them (collectively, the

"Defendant Releasees") from any and all claims, manner of actions, causes of action, suits,

costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills,

specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses,

damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether

known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had,

may have, or may claim to have against the Defendant Releasees solely in connection with the Preferential Transfers, the Complaint, and the Adversary Proceeding.

6.    **Defendant's Limited Release.** Effective on the Settlement Effective Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had, may have, or may claim to have against any of the Trustee Releasees solely in connection with the Preferential Transfers, the Complaint, and the Adversary Proceeding.

7.    **No Admissions.** This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the Preferential Transfers, the Complaint, or the Adversary Proceeding.

8.    **Expenses.** The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the Complaint, the Adversary Proceeding, and this Settlement Agreement.

9.    **Severability.** The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality,

validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

10.    **Miscellaneous.**

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)    The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with

respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)    If this Settlement Agreement is not approved by the Court, then the Settlement Agreement shall be null and void and of no force or effect, and the Trustee shall return the Settlement Amount to the Defendant within ten (10) days after the Court declines to approve the Settlement Agreement. In such event, each of the Parties shall be returned to the Parties' position *status quo ante*, and the Parties reserve all of their respective rights, claims, and defenses with respect to all of the matters set forth herein.

(h)    Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(i)    Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(j)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made .by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(k)    The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(1)    This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(m)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(n)    The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

(o)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[1937-31/5683530/1]                    7

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:                                      July 23, 2018

ALFRED T. GUILIANO,                                    IPREO DATA INC.
CHAPTER 7 TRUSTEE


By: _____                            By: _____
Alfred T. Guiliano, solely in his capacity as
Chapter 7 Trustee of Liquid Holdings, Inc., *et al.*

[1937-31/5683530/1]                         8

# EXHIBIT G

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely as chapter 7 trustee (the "Trustee") for the estates of Liquid Holdings Group, Inc., *et al.* (the "Debtors"),[1] and not in any individual capacity, on the one hand, and Lyons, Benenson & Company, Inc. ("Defendant"), on the other hand. Defendant and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on January 27, 2016 (the "Petition Date"), the Debtors each commenced a case (the "Chapter 11 Cases") by filing a voluntary petition for relief in the United States Bankruptcy Court for the District of Delaware (the "Court") under chapter 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, On February 25, 2016, the Bankruptcy Court entered an order (the "Conversion Order") converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code (collectively, these "Chapter 7 Cases") effective as of February 25, 2016 (the "Conversion Date");

WHEREAS, Alfred T. Giuliano was duly appointed as the Trustee in each of the Chapter 7 Cases; and

WHEREAS, the Debtors and Defendant had various business relationships prior to the Petition Date; and

WHEREAS, on January 24, 2018, the Trustee filed in the Court his *Complaint for Avoidance and Recovery of Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550* (the "Complaint"),

---

[1] The Debtors, along with the last four digits of each reorganized debtor's tax identification number, as applicable, are: Liquid Holdings Group, Inc. (2142), Liquid Prime Holdings, LLC (2135). The address of the Debtors' corporate headquarters is 111 River Street, Ste. 1204, Hoboken, New Jersey 07030.

8764744 v1

commencing that adversary proceeding assigned case number 18-50155 (the "Adversary Proceeding") asserting, *inter alia,* that the Trustee is entitled to avoid and recover from Defendant pursuant to Bankruptcy Code sections 547 and 550 alleged preferential transfers (the "Preferential Transfers") made by Debtors to Defendant in a total amount not less than $10,500.00 during the 90-day period prior to the Petition Date; and

WHEREAS, rather than proceed with litigation concerning the Preferential Transfers, the Complaint, and the Adversary Proceeding, the Parties engaged in good faith, arms' length negotiations to resolve the Preferential Transfers, the Complaint, and the Adversary Proceeding in their entireties;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.      **Recitals.** The recitals set forth above are incorporated herein by reference.

2.      **Settlement Amount.** Within ten (10) days after execution of this Settlement Agreement by all parties,, Defendant shall pay to the Trustee the total sum of $2,000.00 US (Two Thousand Dollars) in full and complete settlement of the Preferential Transfers, the Complaint, and the Adversary Proceeding, including attorneys' fees and costs associated with the Complaint (the "Settlement Amount"). The Settlement Amount shall be mailed or wired in accordance with instructions to be provided by the Trustee.

3.      **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) the

date an order approving this Settlement Agreement is entered by the Court, or (iii) payment of the Settlement Amount (the "Settlement Effective Date").

3.    **Dismissal with Prejudice.** Within fourteen (14) days following the Settlement Effective Date, the Adversary Proceeding shall be dismissed with prejudice.

4.    **Section 502(h) Claim Waiver.** Defendant hereby waives the right to file or assert any future claim under section 502(h) of the Bankruptcy Code ("Waived Claims"). This waiver does not affect Defendant's pending claim in the amount of $15,750 designated as Claim No. 14-1, which is expressly preserved.

5.    **Trustee's Limited Release.** Effective on the Settlement Effective Date, the Trustee solely in his capacity as Trustee, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Defendant, its attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Defendant Releasees solely in connection with the Preferential Transfers, the Complaint, and the Adversary Proceeding.

6.    **Defendant's Limited Release.** Effective on the Settlement Effective Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors, their past or present

8764744 v1

attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had, may have, or may claim to have against any of the Trustee Releasees solely in connection with the Preferential Transfers, the Complaint, and the Adversary Proceeding.

7.    **No Admissions.** This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the Preferential Transfers, the Complaint, or the Adversary Proceeding.

8.    **Expenses.** The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the Complaint, the Adversary Proceeding, and this Settlement Agreement. In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

9.    **Severability.** The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and

enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

**10.    Miscellaneous.**

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)    The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect

8764744 v1

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:                July 12, 2018

ALFRED T. GUILIANO,                       LYONS, BENENSON & COMPANY,
CHAPTER 7 TRUSTEE                         INC.

By: _____            By: _____
Alfred T. Guiliano, solely in his capacity as      Harvey L. Benenson, Managing Director
Chapter 7 Trustee of Liquid Holdings, Inc., *et al.*    and Chief Executive Officer

8764744 v1

# **<u>EXHIBIT H</u>**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely as chapter 7 trustee (the "Trustee") for the estates of Liquid Holdings Group, Inc.., *et al.* (the "Debtors"),[1] and not in any individual capacity, on the one hand, and The Blueshirt Group LLC ("Defendant"), on the other hand. (Defendant and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party.")

### Background

WHEREAS, on January 27, 2016 (the "Petition Date"), the Debtors each commenced a case (the "Chapter 11 Cases") by filing a voluntary petition for relief in the United States Bankruptcy Court for the District of Delaware (the "Court") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, On February 25, 2016, the Bankruptcy Court entered an order (the "Conversion Order") converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code (collectively, these "Chapter 7 Cases") effective as of February 25, 2016 (the "Conversion Date");

WHEREAS, Alfred T. Giuliano was duly appointed as the Trustee in each of the Chapter 7 Cases; and

WHEREAS, the Debtors and Defendant had various business relationships prior to the Petition Date; and

---

[1] The Debtors, along with the last four digits of each reorganized debtor's tax identification number, as applicable, are: Liquid Holdings Group, Inc. (2142), Liquid Prime Holdings, LLC (2135). The address of the Debtors' corporate headquarters is 111 River Street, Ste. 1204, Hoboken, New Jersey 07030.

WHEREAS, the Trustee filed an action against Defendant in the United States Bankruptcy Court for the District of Delaware, Case No. 18-50145 (the "Lawsuit") asserting, *inter alia*, that the Trustee is entitled to avoid and recover, pursuant to Bankruptcy Code sections 547 and 550, alleged preferential transfers (the "Preferential Transfers") made by one or more of the Debtors to Defendant in an amount not less than $37,743.99 during the 90-day period prior to the Petition Date; and

WHEREAS, rather than proceed with litigation concerning the Preferential Transfers, the Parties engaged in good faith, arms' length negotiations to resolve the Preferential Transfers in their entireties.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.      **Recitals.** The recitals set forth above are incorporated herein by reference.

2.      **Settlement Amount.** Within ten (10) days after execution of this Settlement Agreement by all parties, Defendant shall pay to the Trustee the total sum of $7,500.00 US (Seven Thousand Five Hundred Dollars) in full and complete settlement of the Preferential Transfers, including attorneys' fees and costs associated with the Trustee's demand (the "Settlement Amount"). The Settlement Amount shall be mailed or wired in accordance with instructions. In the event the Settlement Agreement is not approved by the Bankruptcy Court upon motion of the Trustee as referenced in paragraph 11 herein, the Trustee will promptly return the Settlement Amount to the Defendant.

3.      **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the date upon which all of the following have occurred: (i)

entry of an order of the Bankruptcy Court approving this Settlement Agreement; and (ii) the Trustee has received the Settlement Amount in good funds (the "Settlement Effective Date").

4.    **Section 502(h) Claim Waiver.**  Defendant hereby waives the right to file or assert any claim under section 502(h) of the Bankruptcy Code.

5.    **Trustee's Limited Release.**  Effective on the Settlement Effective Date, the Trustee solely in his capacity as Trustee, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Defendant, its attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, have had, may have or may claim to have against the Defendant Releasees solely in connection with the Preferential Transfers.

6.    **Defendants' Limited Release.**  Effective on the Settlement Effective Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties,

covenants, contracts, controversies, agreements, promises, variances, trespasses, damages,

judgments, executions and demands whatsoever, of whatever kind or nature, whether known or

unknown, suspected or unsuspected, in law or equity, which Defendant has, has had, may have

or may claim to have against any of the Trustee Releasees solely in connection with the

Preferential Transfers.

7.      **No Admissions.**  This Settlement Agreement is not and shall not in any

way be construed as an admission by the Parties of any allegations made in connection with the

Demand or the Preferential Transfers.

8.      **Expenses.**  The Parties shall bear their own costs, expenses, and attorneys'

fees incurred to date in connection with the Demand and this Settlement Agreement.  In the

event of any dispute in connection with the enforcement of this Settlement Agreement, the

prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary

disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs,

incurred in connection with such action or proceeding, as determined by the Court.

9.      **Severability.**  The Parties agree that if any provision of this Settlement

Agreement is determined by a court of competent jurisdiction to be illegal, invalid or

unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality,

validity and enforceability of the remaining provisions shall not be affected by a provision of this

Settlement Agreement that is illegal, invalid, or unenforceable.

10.     **Miscellaneous.**

(a)      Neither this Settlement Agreement, nor any statement made or

action taken in connection with the negotiation of this Settlement Agreement, shall be offered or

received in evidence or in any way referred to in any legal action or administrative proceeding

among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)    The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)    Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or

extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)     In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)     The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)    This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)    The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

(n)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

11.    **Bankruptcy Court Approval.**  Promptly following the Parties' execution of this Agreement, the Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019.  Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:                                    JUNE  18  , 2018

ALFRED T. GUILIANO,                          THE BLUESHIRT GROUP LLC
CHAPTER 7 TRUSTEE

By: _____          By: _____
Alfred T. Guiliano, solely in his capacity as          SECRETARY, GENERAL COUNSEL
Chapter 7 Trustee of Liquid Holdings, Inc., *et al.*

8797361 v1

# **EXHIBIT I**

SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely as chapter 7 trustee (the "Trustee") for the estates of Liquid Holdings Group, Inc.., *et al.* (the "Debtors"),[1] and not in any individual capacity, on the one hand, and TriNet Group, Inc. ("Defendant"), on the other hand. Defendant and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

Background

WHEREAS, on January 27, 2016 (the "Petition Date"), the Debtors each commenced a case (the "Chapter 11 Cases") by filing a voluntary petition for relief in the United States Bankruptcy Court for the District of Delaware (the "Court") under chapter 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, On February 25, 2016, the Bankruptcy Court entered an order (the "Conversion Order") converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code (collectively, these "Chapter 7 Cases") effective as of February 25, 2016 (the "Conversion Date");

WHEREAS, Alfred T. Giuliano was duly appointed as the Trustee in each of the Chapter 7 Cases; and

WHEREAS, the Debtors and Defendant had various business relationships prior to the Petition Date; and

WHEREAS, on January 24, 2018, the Trustee filed in the Court his *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547, 548 and 550 And to Disallow Claims Pursuant to 11 U.S.C.§ 502* (the "Complaint"), commencing that adversary proceeding assigned

---

[1] The Debtors, along with the last four digits of each reorganized debtor's tax identification number, as applicable, are: Liquid Holdings Group, Inc. (2142), Liquid Prime Holdings, LLC (2135). The address of the Debtors' corporate headquarters is 111 River Street, Ste. 1204, Hoboken, New Jersey 07030.

case number 18-50158 (the "Adversary Proceeding") asserting, *inter alia,* that the Trustee is entitled to avoid and recover from Defendant pursuant to Bankruptcy Code sections 547, 548 and 550 alleged transfers including preferential transfers (the "Preferential Transfers") made by Debtors to Defendant in a total amount not less than $347,317.83 during the 90-day period prior to the Petition Date; and

WHEREAS, rather than proceed with litigation concerning the Preferential Transfers, the Complaint, and the Adversary Proceeding, the Parties engaged in good faith, arms' length negotiations to resolve the Preferential Transfers, the Complaint, and the Adversary Proceeding in their entireties;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.   **Recitals.** The recitals set forth above are incorporated herein by reference.

2.   **Settlement Amount.** Within ten (10) days after execution of this Settlement Agreement by all parties,, Defendant shall pay to the Trustee the total sum of $3,000.00 US (Three Thousand Dollars) in full and complete settlement of the Preferential Transfers, the Complaint, and the Adversary Proceeding, including attorneys' fees and costs associated with the Complaint (the "Settlement Amount"). The Settlement Amount shall be mailed or wired in accordance with instructions to be provided by the Trustee.

3.   **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) the

date an order approving this Settlement Agreement is entered by the Court, or (iii) payment of the Settlement Amount (the "Settlement Effective Date").

3.     **Dismissal with Prejudice.** Within fourteen (14) days following the Settlement Effective Date, the Adversary Proceeding shall be dismissed with prejudice.

4.     **Claims Waiver.** Effective on the Settlement Effective Date, Defendant waives any and all claims in the cases of the Debtors, including but not limited to any filed proof of claim or scheduled claim, and waives the right to file or assert any claim under section 502(h) of the Bankruptcy Code (the "Waived Claims").

5.     **Trustee's Limited Release.** Effective on the Settlement Effective Date, the Trustee solely in his capacity as Trustee, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Defendant, its attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Defendant Releasees solely in connection with the Preferential Transfers, the Complaint, and the Adversary Proceeding.

6.     **Defendant's Limited Release.** Effective on the Settlement Effective Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors, their past or present

attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had, may have, or may claim to have against any of the Trustee Releasees solely in connection with the Preferential Transfers, the Complaint, and the Adversary Proceeding.

7.    **No Admissions**. This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the Preferential Transfers, the Complaint, or the Adversary Proceeding.

8.    **Expenses**. The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the Complaint, the Adversary Proceeding, and this Settlement Agreement. In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

9.    **Severability**. The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality,

validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

    **10.**    **Miscellaneous.**

    (a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

    (b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

    (c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

    (d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

    (e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

    (f)    The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with

respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

      (g)     If this Settlement Agreement is not approved by the Court, then the Settlement Agreement shall be null and void and of no force or effect, and the Trustee shall return the Settlement Amount to the Defendant within ten (10) days after the Court declines to approve the Settlement Agreement. In such event, each of the Parties shall be returned to the Parties' position *status quo ante,* and the Parties reserve all of their respective rights, claims, and defenses with respect to all of the matters set forth herein.

      (h)     Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

      (i)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

8809149 v1

(j)     In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made .by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(k)     The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(l)     This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(m)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(n)     The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

(o)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the

date(s) set forth below:


ACCEPTED AND AGREED TO BY:                          *June 22*, 2018

ALFRED T. GUILIANO,                    TRINET
CHAPTER 7 TRUSTEE


By: _____            By: _____
Alfred T. Guiliano, solely in his capacity as    Clay Campbell
Chapter 7 Trustee of Liquid Holdings, Inc., *et al.*   Title: *Mng. Counsel*

## **<u>EXHIBIT J</u>**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely as chapter 7 trustee (the "Trustee") for the estates of Liquid Holdings Group, Inc.., *et al.* (the "Debtors"),[1] and not in any individual capacity, on the one hand, and Actuate Corporation ("Defendant"), on the other hand. Defendant and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on January 27, 2016 (the "Petition Date"), the Debtors each commenced a case (the "Chapter 11 Cases") by filing a voluntary petition for relief in the United States Bankruptcy Court for the District of Delaware (the "Court") under chapter 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, On February 25, 2016, the Bankruptcy Court entered an order (the "Conversion Order") converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code (collectively, these "Chapter 7 Cases") effective as of February 25, 2016 (the "Conversion Date");

WHEREAS, Alfred T. Giuliano was duly appointed as the Trustee in each of the Chapter 7 Cases; and

WHEREAS, the Debtors and Defendant had various business relationships prior to the Petition Date; and

WHEREAS, on January 24, 2018, the Trustee filed in the Court his *Complaint for Avoidance and Recovery of Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550* (the

---

[1] The Debtors, along with the last four digits of each reorganized debtor's tax identification number, as applicable, are: Liquid Holdings Group, Inc. (2142), Liquid Prime Holdings, LLC (2135). The address of the Debtors' corporate headquarters is 111 River Street, Ste. 1204, Hoboken, New Jersey 07030.

"Complaint"), commencing that adversary proceeding assigned case number 18-50141 (the

"Adversary Proceeding") asserting, *inter alia,* that the Trustee is entitled to avoid and recover

from Defendant pursuant to Bankruptcy Code sections 547 and 550 alleged preferential transfers

(the "Preferential Transfers") made by Debtors to Defendant in a total amount not less than

$111,334.51 during the 90-day period prior to the Petition Date; and

WHEREAS, Defendant denies the allegations of the Complaint; and

WHEREAS, rather than proceed with litigation concerning the Preferential Transfers, the

Complaint, and the Adversary Proceeding, the Parties engaged in good faith, arms' length

negotiations to resolve the Preferential Transfers, the Complaint, and the Adversary Proceeding

in their entireties;

NOW THEREFORE, for good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.      **Recitals.** The recitals set forth above are incorporated herein by

reference.

2.      **Settlement Amount.** Within five (5) days after the Settlement Effective

Date (defined below).  Defendant shall pay to the Trustee the total sum of $27,000.00

US (Twenty Seven Thousand Dollars) in full and complete settlement of the

Preferential Transfers, the Complaint, and the Adversary Proceeding, including

attorneys' fees and costs associated with the Complaint (the "Settlement Amount").

The Settlement Amount shall be mailed or wired in accordance with instructions to be

provided by the Trustee.

3.      **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties or (ii) the date an order approving this Settlement Agreement is entered by the Court.

3.      **Dismissal with Prejudice.** Within fourteen (14) days following the Trustee's receipt of the Settlement Amount, the Adversary Proceeding shall be dismissed with prejudice.

4.      **Claims Waiver.** Effective on the Settlement Effective Date, Defendant waives any and all claims in the Chapter 7 Cases of the Debtors, including but not limited to any filed proof of claim or scheduled claim, and waives the right to file or assert any claim under section 502(h) of the Bankruptcy Code (the "Waived Claims").

5.      **Trustee's Limited Release.** Effective on the Settlement Effective Date, the Trustee solely in his capacity as Trustee, and not in any individual or other capacity, and on behalf of the Debtors and its estates, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Defendant, its attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee, the Debtors and/or its estates have, had, may have, or may claim to have against the Defendant Releasees solely in connection with the Preferential Transfers, the Complaint, and the Adversary Proceeding.

6.      **Defendant's Limited Release**. Effective on the Settlement Effective Date, the

Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and

forever waived, released, acquitted and discharged the Trustee, the Debtors, their past or present

attorneys, accountants, financial advisors, directors, employees, officers, parents, agents,

subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee

Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts,

liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties,

covenants, contracts, controversies, agreements, promises, variances, trespasses, damages,

judgments, executions and demands whatsoever, of whatever kind or nature, whether known or

unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had,

may have, or may claim to have against any of the Trustee Releasees solely in connection with

the Preferential Transfers, the Complaint, and the Adversary Proceeding.

7.      **No Admissions**. This Settlement Agreement is not and shall not in any way be

construed as an admission by the Parties of any allegations made in connection with the

Preferential Transfers, the Complaint, or the Adversary Proceeding.

8.      **Expenses**. The Parties shall bear their own costs, expenses, and attorneys' fees

incurred to date in connection with the Complaint, the Adversary Proceeding, and this

Settlement Agreement. In the event of any dispute in connection with the enforcement of this

Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees,

costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved

or non-approved costs, incurred in connection with such action or proceeding, as determined by

the Court.

9.      **Severability**. The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

10.      **Miscellaneous**.

(a)      Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)      Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)      No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)      This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)      This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)        The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)        If this Settlement Agreement is not approved by the Court, then the Settlement Agreement shall be null and void and of no force or effect, and the Trustee shall return the Settlement Amount (if previously paid) to the Defendant within ten (10) days after the Court declines to approve the Settlement Agreement. In such event, each of the Parties shall be returned to the Parties' position *status quo ante,* and the Parties reserve all of their respective rights, claims, and defenses with respect to all of the matters set forth herein.

(h)        Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(i)        Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this

Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(j)     In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(k)     The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(1)     This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(m)     (m)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto. The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

8915728 v1

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the

date(s) set forth below:


ACCEPTED AND AGREED TO BY:                    September 14 , 2018

    ALFRED T. GUILIANO,                    ACTUATE CORPORATION
    CHAPTER 7 TRUSTEE


By: _____          By: _____
Alfred T. Guiliano, solely in his capacity as              Gordon A. Davies
Chapter 7 Trustee of Liquid Holdings, Inc., *et al.*

8915728 v1

# **<u>EXHIBIT K</u>**

<u>SETTLEMENT AGREEMENT AND MUTUAL RELEASE</u>

This *Settlement Agreement and Mutual Release* (the <u>"Settlement Agreement"</u>) is entered into by and between Alfred T. Giuliano, solely as chapter 7 trustee (the <u>"Trustee"</u>) for the estates of Liquid Holdings Group, Inc.., *et al.* (the "<u>Debtors</u>"),[1] and not in any individual capacity, on the one hand, American Express Travel Related Services Company, Inc. ("Defendant"), on the other hand. Defendant and the Trustee may be referenced herein collectively as the <u>"Parties"</u> and/or each as a <u>"Party."</u>

<u>Background</u>

WHEREAS, on January 27, 2016 (the <u>"Petition Date"</u>), the Debtors each commenced a case (the <u>"Chapter 11 Cases"</u>) by filing a voluntary petition for relief in the United States Bankruptcy Court for the District of Delaware (the <u>"Court"</u>) under chapter 11 of the United States Code (the <u>"Bankruptcy Code"</u>); and

WHEREAS, On February 25, 2016, the Bankruptcy Court entered an order (the "<u>Conversion Order</u>") converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code (collectively, these "<u>Chapter 7 Cases</u>") effective as of February 25, 2016 (the "<u>Conversion Date</u>");

WHEREAS, Alfred T. Giuliano was duly appointed as the Trustee in each of the Chapter 7 Cases; and

WHEREAS, the Debtors and Defendant had various business relationships prior to the Petition Date; and

WHEREAS, on January 25, 2018, the Trustee filed in the Court his *Complaint for Avoidance and Recovery of Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550* (the

---

[1] The Debtors, along with the last four digits of each reorganized debtor's tax identification number, as applicable, are: Liquid Holdings Group, Inc. (2142), Liquid Prime Holdings, LLC (2135). The address of the Debtors' corporate headquarters is 111 River Street, Ste. 1204, Hoboken, New Jersey 07030.

"Complaint"), commencing that adversary proceeding assigned case number 18-50163 (KG) (the

"Adversary Proceeding") asserting, *inter alia,* that the Trustee is entitled to avoid and recover

from Defendant pursuant to Bankruptcy Code sections 547 and 550 alleged preferential transfers

(the "Preferential Transfers") made by Debtors to Defendant in a total amount not less than

$26,568.10,  during the 90-day period prior to the Petition Date; and

      WHEREAS, rather than proceed with litigation concerning the Preferential Transfers, the

Complaint, and the Adversary Proceeding, the Parties engaged in good faith, arms' length

negotiations to resolve the Preferential Transfers, the Complaint, and the Adversary Proceeding

in their entireties;

      NOW THEREFORE, for good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, the Parties hereby agree that:

      1.    **Recitals.** The recitals set forth above are incorporated herein by

reference.

      2.    **Settlement Amount.** Within thirty (30) days after execution of this

Settlement Agreement by all parties, Defendant shall pay to the Trustee the total sum

of $6,000.00 US (Six Thousand Dollars) in full and complete settlement of the

Preferential Transfers, the Complaint, and the Adversary Proceeding, including

attorneys' fees and costs associated with the Complaint (the "Settlement Amount").

The Settlement Amount shall be mailed or wired in accordance with instructions to be

provided by the Trustee.

      3.    **Settlement Effective Date.** The effective date of this Settlement

Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) the

date an order approving this Settlement Agreement is entered by the Court, or (iii)

payment of the Settlement Amount (the "Settlement Effective Date").

3.      **Dismissal with Prejudice.** Within fourteen (14) days following the

Settlement Effective Date, the Adversary Proceeding shall be dismissed with prejudice.

4.      **Claim Waiver.** Effective on the Settlement Effective Date, Defendant waives the

right to file or assert any claim under section 502(h) of the Bankruptcy Code (the "Waived

Claims"). For avoidance of doubt, this agreement does not constitute a waiver of the

Defendant's proof of claim, if any, and the Trustee reserves all rights with respect to any proof

of claim of Defendant.

5.      **Trustee's Limited Release.** Effective on the Settlement Effective Date, the

Trustee solely in his capacity as Trustee, and not in any individual or other capacity, shall be

deemed to have irrevocably and unconditionally, fully, finally and forever waived, released,

acquitted and discharged Defendant, its attorneys, accountants, financial advisors, directors,

employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them

(collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of

action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings,

bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances,

trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or

nature, whether known or unknown, suspected or unsuspected, in law or equity, which the

Trustee has, had, may have, or may claim to have against the Defendant Releasees solely in

connection with the Preferential Transfers, the Complaint, and the Adversary Proceeding.

6.      **Defendant's Limited Release.** Effective on the Settlement Effective Date, the

Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and

forever waived, released, acquitted and discharged the Trustee, the Debtors, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had, may have, or may claim to have against any of the Trustee Releasees solely in connection with the Preferential Transfers, the Complaint, and the Adversary Proceeding.

7.      **No Admissions**. This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the Preferential Transfers, the Complaint, or the Adversary Proceeding.

8.      **Expenses**. The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the Complaint, the Adversary Proceeding, and this Settlement Agreement. In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

9.      **Severability**. The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality,

validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

10.    **Miscellaneous**.

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)    The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with

respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)    If this Settlement Agreement is not approved by the Court, then the Settlement Agreement shall be null and void and of no force or effect, and the Trustee shall return the Settlement Amount to the Defendant within ten (10) days after the Court declines to approve the Settlement Agreement. In such event, each of the Parties shall be returned to the Parties' position *status quo ante,* and the Parties reserve all of their respective rights, claims, and defenses with respect to all of the matters set forth herein.

(h)    Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(i)    Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(j)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made .by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(k)    The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(1)    This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(m)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(n)    The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

(o)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the

date(s) set forth below:

ACCEPTED AND AGREED TO BY:                              _____, 2018

ALFRED T. GUILIANO,                          AMERICAN EXPRESS TRAVEL
CHAPTER 7 TRUSTEE                            RELATED SERVICES COMPANY, INC.


By:_____        By:_____
Alfred T. Guiliano, solely in his capacity as        BECKET & LEE LLP, Attorneys for
Chapter 7 Trustee of Liquid Holdings, Inc., *et al.*        American Express Travel Related
                                             Services Company, Inc.
                                             By: Kenneth W. Kleppinger

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the

date(s) set forth below:

ACCEPTED AND AGREED TO BY:                                    _____, 2018

ALFRED T. GUILIANO,                          AMERICAN EXPRESS TRAVEL
CHAPTER 7 TRUSTEE                             RELATED SERVICES COMPANY, INC.

By:_____                 By:_____
Alfred T. Guiliano, solely in his capacity as      BECKET & LEE LLP, Attorneys for
Chapter 7 Trustee of Liquid Holdings, Inc., *et al.*    American Express Travel Related
                                                   Services Company, Inc.
                                             By: Kenneth W. Kleppinger

8764607 v1