## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 16-10202-KG |
| Liquid Holdings Group, Inc., | ) | |
| | ) | **Objection Deadline: 11/21/18 at 4:00 p.m.** |
| Debtor. | ) | **Hearing Date: 11/29/18 at 10:00 a.m.** |

## MOTION FOR ORDER AUTHORIZING ADVANCEMENT BY INSURER OF DEFENSE COSTS OF INSURED INDIVIDUALS PURSUANT TO DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

Darren Davy, Brian Ferdinand, David Francescani, Peter R. Kent, Thomas Ross, Richard Schaeffer, Kenneth D. Shifrin, Victor Simone, Jr., Brian M. Storms, Dennis Suskind, Jay Bernstein, and Allan Zavarro (collectively the "Former Officers and Directors"), by their undersigned counsel, hereby move, pursuant to section 362(d) of title 11 of the United States Bankruptcy Code ("Bankruptcy Code") for entry of an order, substantially in the form attached hereto, granting relief from the automatic stay to the extent necessary to permit their insurer, Starr Indemnity & Liability Company ("Starr"), to follow the express terms of the Starr Policy (defined below) by advancing Defense Costs (defined below), Insured Inquiry Costs (defined below), and/or Settlement Payments (defined below) incurred and to be incurred in the future, in connection with investigations and litigations against the Former Officers and Directors relating to debtor Liquid Holdings Group, Inc. ("Liquid Holdings" or "Debtor"). In support of this Motion, the Former Officers and Directors respectfully represent as follows:

## BACKGROUND

1.      On August 18, 2015, a Complaint was filed in the New York Supreme Court, Nassau County, initiating an action captioned *Deutsch v. Liquid Holdings Group, Inc.*, No. 452951/2015 (N.Y. Sup. Ct., N.Y. Cty.) (the "Deutsch Action") against Liquid Holdings, some of the Former Officers and Directors, and other Insured Individuals (as defined in the Starr

Policy) alleging fraud and aiding and abetting fraud.  The Deutsch Action was transferred to New York County on October 26, 2015 and has since been resolved by settlement.

2.      On September 21, 2015, a Complaint was filed in the U.S. District Court for the District of New Jersey, initiating an action captioned *DeVito v. Liquid Holdings Group, Inc.*, No. 2:15-cv-06969 (D.N.J.) (the "DeVito Action" and, jointly with the Deutsch Action, the "DeVito and Deutsch Actions") against Liquid Holdings, the Former Officers and Directors[1], and other Insured Individuals alleging violations of Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.  A Third Amended Complaint was filed in the DeVito Action on May 11, 2018.

3.      On January 27, 2016 (the "Petition Date"), Liquid Holdings commenced this bankruptcy case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On February 25, 2016, the case was converted from chapter 11 to chapter 7 of the Bankruptcy Code.  On March 1, 2016, the Office of the United States Trustee appointed the Alfred T. Giuliano (the "Trustee") to be the chapter 7 trustee of this case.

4.      On June 30, 2017, the Trustee filed a Complaint in this Court against multiple defendants, including, with the exception of Peter R. Kent, the Former Officers and Directors, initiating Adversary Proceeding No. 17-50662 (the "Adversary Proceeding"), which seeks damages, avoidance of transfers and recovery of transfers.

5.      One or more of the Former Officers and Directors and other Insured Individuals have also incurred, and may continue to incur, legal fees and expenses in connection with

---

[1] The DeVito Action solely as it relates to defendants Peter R. Kent, Darren Davy, David Francescani, Thomas Ross, Victor Simone, Jr., Dennis Suskind, Jay Bernstein, Walter Raquet and Allan Zavarro has been dismissed without prejudice.

inquiries or investigations from governmental authorities ("Governmental Investigations") in connection with their service as directors or officers.

6.    Pursuant to prior orders entered by this Court dated August 30, 2016 [D.I. 124] and September 7, 2017 [D.I. 145], AXIS Insurance Company ("AXIS") advanced, under Management and Corporate Liability Insurance Policy No. MNN775651/01/2013 issued to Liquid Holdings (the "Followed Policy"), Defense Costs, Insured Inquiry Costs, and/or Settlement Payments incurred on behalf of the Former Officers and Directors in connection with the Deutsch and DeVito Actions, the Adversary Proceeding, and the Governmental Investigations.

7.    As of August 2018, the $5 million Limit of Liability provided by the Followed Policy was fully exhausted.

### The Starr Excess Policy

8.    Starr issued Secure Excess Liability Policy No. SISIXFL21129513 to Liquid Holdings for the policy period of July 26, 2013 to September 6, 2014 (the "Starr Policy").[2]

9.    The Starr Policy has, in relevant part, a $5 million Limit of Liability that attaches excess of the $5 million Limit of Liability provided by the Followed Policy.[3]

10.    Subject to all of the Starr Policy's terms, conditions, and endorsements, the Starr Policy follows form to the Followed Policy.

11.    Insuring Agreement A of the Followed Policy, which the Starr Policy follows, affords specified coverage to Insured Individuals for Loss not indemnified by the Insured Organization for which the Insured Individual has become legally obligated to pay on account of

---

[2] Liquid Holdings also purchased a one-year Extended Reporting Period for the Starr Policy.

[3] Capitalized terms not defined herein have the meaning set forth in the Followed Policy.

a Claim for a Wrongful Act first made against such Insured Individual during the Policy Period or the Extended Reporting Period.

12.    The Former Officers and Directors are Insured Individuals under the Followed Policy and, therefore, also under the Starr Policy.

13.    Pursuant to Section VI.E. of the Followed Policy, which therefore also applies to the Starr Policy, Defense Costs and/or Insured Inquiry Costs will be advanced on a current basis.

14.    The Followed Policy defines "Defense Costs" to include "reasonable and necessary legal fees and expenses (other than regular or overtime wages, salaries, fees or benefits or overhead expenses of any Insured or employee of the Insured Organization) incurred by or on behalf of the Insureds in investigating, defending, opposing, settling or appealing Claims, and the premium for appeal, attachment or similar bonds. The Insurer, however, shall have no obligation to apply for or furnish such bonds."

15.    The Followed Policy further defines "Insured Inquiry Costs" to mean "reasonable and necessary fees and expenses incurred by an Insured Individual (other than regular or overtime wages, salaries, fees, benefits or overhead expenses of any Insured) and consented to by the Insurer in connection with an Insured Inquiry."

16.    Starr is prepared to advance Defense Costs and Insured Inquiry Costs under the Starr Policy in connection with the DeVito Action, the Governmental Investigations, and the Adversary Proceeding (collectively, the "Litigations"), subject to the terms, conditions, and exclusions of the Starr Policy and a reservation of rights.

17.    Starr is also prepared to advance payments as reasonable and necessary to settle the Litigations ("Settlement Payments"), to the extent such Settlement Payments are reasonable

and covered under the Starr Policy. Settlement Payments are a Loss under the terms of the Followed Policy, and, therefore, the Starr Policy.

18. The Followed Policy provides that if the Loss due and payable under the Followed Policy "exceeds the remaining applicable Limit of Liability, the Insurer shall pay such Loss, subject to such limit, in the following priority: (i) first, the Insurer shall pay all Loss covered under Insuring Agreement A; and (ii) second, the Insurer shall pay all other Loss" (the "Priority of Payments Provision").

## RELIEF REQEUSTED

19. By this Motion, the Former Officers and Directors seek entry of an order granting relief from the automatic stay to the extent it applies and is necessary to allow Starr to advance and reimburse the Defense Costs, Insured Inquiry Costs, and Settlement Payments incurred and to be incurred in the future by Insured Individuals in connection with the Litigations in accordance with the terms and conditions of, and subject to the coverage limits set forth in, the Starr Policy.

20. Without limiting the scope of the Defense Costs or the Insured Inquiry Costs sought to be authorized, the Former Officers and Directors seek to allow Starr to advance and reimburse the legal fees and costs incurred or to be incurred in connection with the Litigations, including attorneys' fees and any fees of service providers or expert consultants, in the ordinary course, pursuant to the normal and customary billing policies and practices of Starr and such counsel, services providers, and consultants.

21. The Former Officers and Directors also seek to allow Starr to pay, subject to the terms, conditions, exclusions, and limits of the Starr Policy, such Settlement Payments as may be reasonable and necessary to settle any and all aspects of the Litigations.

22.    Finally, the Former Officers and Directors seek to allow Starr to advance Defense Costs and Insured Inquiry Costs and to make Settlement Payments up to the Limit of Liability of the Starr Policy.

23.    Starr proposes to provide the chapter 7 Trustee ("Trustee"), on a quarterly basis, a report showing the aggregate amount of Defense Cost Advancements made during the previous quarter, and the aggregate amount of "total to date" Defense Cost Advancements made by Starr. Starr further proposes that, prior to making any Settlement Payments, written notice of such Settlement Payments ("Payment Notice") shall be provided to the chapter 7 Trustee, along with a summary of the terms of any settlement for which a Settlement Payments is to be made, and if, within fifteen (15) days of receipt of a Payment Notice, the chapter 7 Trustee files an objection to a proposed Settlement Payment, such Settlement Payment will not be made until further order of this Court.

24.    The Former Officers and Directors respectfully submit that the proceeds of the Starr Policy are not an asset or property of the Debtor's estate under 11 U.S.C. § 541 and therefore are not subject to the automatic stay provided in 11 U.S.C. § 362.   Subject to the terms and conditions of the Starr Policy, including a full reservation of rights, Starr has agreed to advance Defense Costs and Insured Inquiry Costs and to make Settlement Payments as reasonable and necessary to defend and resolve the Litigations, but has requested assurance that such advances will not violate the automatic stay or otherwise be challenged by the Debtor, the Trustee, or other persons.   The Former Officers and Directors therefore seek relief from the Court as necessary to ensure that there will be no violation of the automatic stay by Starr's advancement of the Defense Costs, Insured Inquiry Costs, and Settlement Payments under the

6

Starr Policy, up to the Limit of Liability.  This relief is fully consistent with the Court's prior

Orders with respect to the Followed Policy.

### BASIS FOR RELIEF REQUESTED

**A.**    **The Proceeds of the Starr Policy Are Not Property of the Estate**

25.    The proceeds of the Starr Policy are not property of the Debtor's estate under 11

U.S.C. § 541, and therefore the automatic stay contained in 11 U.S.C. § 362 does not bar Starr's

advancement of Defense Costs, Insured Inquiry Costs, or Settlement Payments in connection

with the Litigations.

26.    While insurance policies may generally be considered property of the estate and

covered by the automatic stay provisions of the Bankruptcy Code, the ownership of the *policy*

does not dictate whether the *proceeds* are part of the estate.  *See In re World Health Alternatives,*

*Inc.*, 369 B.R. 805, 811 (Bankr. D. Del. 2007) (finding that proceeds of the Debtor's D&O

insurance policy were not property of the estate); *In re La. World Exposition, Inc.*, 832 F.2d

1391, 1400 (5th Cir. 1987) ("the liability proceeds payable to the directors and officers are not

part of the bankruptcy estate."); *In re SN Liquidation, Inc.*, 388 B.R. 579, 584 (Bankr. D. Del.

2008) ("When an insurance policy provides coverage only to directors and officers, courts

generally find that the proceeds are not property of the estates.")

27.    In particular, where, as here, an insurance policy provides coverage to indemnify

the debtor's directors, officers, and employees, the proceeds are not considered to be property of

the estate.  *See In re MF Global Holdings Ltd.*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012)

(noting the general proposition and citing cases with approval); *In re Allied Digital Techs. Corp.*,

306 B.R. 505, 510 (Bankr. D. Del. 2004) ("when insurance policies provide direct coverage to

directors and officers, the proceeds of the insurance policy are not property of the bankruptcy

estate because the proceeds are payable to the directors and officers not the estate"); *In re Daisy*

*Sys.*, 132 B.R. 752, 755 (N.D. Cal. 1991) (finding that when a D&O insurance policy only provides direct coverage to the directors and officers the proceeds are not property of the estate).

28.    The Priority of Payments Provision in the Followed Policy, which the Starr Policy follows, also makes clear that, if Loss were to exceed the remaining applicable Limit of Liability, the coverage available to the Insured Individuals, including the Former Directors and Officers, under Insuring Agreement A, takes precedence over the other coverage available under the Starr Policy.

29.    By virtue of such provisions, a debtor at most has only a "contingent, residual interest in the policy proceeds," which is subject to the prior rights and interests of the debtor's officers and directors in the proceeds of the policy. *In re Laminate Kingdom LLC*, No. 07-10279-BKC-AJC, 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008) (applying policy priority of payments provision and holding that debtor's interest in policy proceeds was subject to payment of loss under Side A, resulting in determination that proceeds of policy were not property of the estate); *In re World Health Alternatives, Inc.*, 369 B.R. at 811 (holding, in the context of a preliminary injunction hearing, that it was likely that the "proceeds of the Debtor's [D&O] insurance policy are not property of the estate" because the policy's priority of payments provision subordinated the debtor's coverage to the directors' and officers', thereby rendering the debtor's coverage remote); *In re Downey Financial Corp.*, 428 B.R. 595, 606-7 (Bankr. D. Del. 2010).

30.    To hold that the proceeds of the Starr Policy are property of the Debtor's estate and, thus subject to the automatic stay, would potentially give the Debtor's estate "greater rights in the [proceeds of the Starr Policy] than the debtor had before filing for bankruptcy." *Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 493 (3rd Cir. 1997). And it is

well-settled that "[a] bankruptcy estate can have no greater claim to the proceeds of the property of the estate than the debtor would have had outside of bankruptcy." *In re Cybermedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002) (determining that, as a matter of contract, the claim the receiver may have for defense costs was subordinate to the coverage afforded the directors and officers, and thus there was no basis for concluding that the policy protects the estate's other assets from diminution). In fact, courts have held that "[s]ection 541(a) of the Bankruptcy Code is not intended to expand the debtor's rights against others beyond what rights existed at the commencement of the case." *In re Downey Finan. Corp.*, 428 B.R. at 607.

31.     Based on the foregoing, the proceeds of the Starr Policy are not property of the Debtor's estate, and the automatic stay does not apply to prevent the advancement and/or reimbursement of the Insured Individuals' Defense Costs, Insured Inquiry Costs, and other Loss, in accordance with and subject to the terms and conditions of the Starr Policy.

**B.**     **If the Automatic Stay Is Applicable, It Should Be Modified to Permit Advancement of Defense Costs and Settlement Costs**

32.     Even if this Court determines that the proceeds of the Starr Policy are property of the estate, sufficient cause exists to modify the automatic stay to permit Starr to advance Defense Costs, Insured Inquiry Costs, and Settlement Payments related to the Litigations.

33.     Section 362(d) of the Bankruptcy Code provides that the Court may modify, condition, or terminate the automatic stay imposed by section 362 of the Bankruptcy Code for "cause." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define "cause," but "[a] bankruptcy court is granted wide discretion to determine whether to lift an automatic stay for cause." *In re Mid-Atl. Handling Sys., LLC*, 304 B.R. 111, 130 (Bankr. D.N.J. 2003).

34.     Courts have recognized that a need to advance defense costs under a directors and officers insurance policy to fund the legal representation of a debtor's current and former

directors and officers constitutes sufficient "cause" to lift or modify the automatic stay. *See, e.g.,* *In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406, 410 (Bankr. D.S.C. 2011) ("Courts faced with similar situations have commonly granted relief from stay to allow directors and officers to receive payment for their defense costs."); *MF Global*, 469 B.R. at 197 (lifting the automatic stay to permit insurer to advance defense costs to debtors' current and former directors, officers, and employees); *In re Enron Corp.*, No. 01-16034 (AJG), 2002 WL 1008240, at *1 (Bankr. S.D.N.Y. May 17, 2002) (lifting the automatic stay to permit insurance company to pay and/or advance defense costs).

35.    Failure to modify the automatic stay as proposed would substantially harm the Insured Individuals by withholding the advancement of Defense Costs and Settlement Payments that are reasonable and necessary to defend and resolve the Litigation. The Starr Policy is expressly intended to cover Defense Costs and Settlement Payments, especially if the Debtor is unable to meet its legal obligation to indemnify the Insured Individuals. *See, e.g., Laminate Kingdom*, 2008 WL 1766637, at *4 ("'D&O policies are obtained for the protection of individual directors and officers … in essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection.'") (quoting *In re First Central Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999)); *see also In re La. World Exposition*, 832 F.2d at 1398 (stating that the purchase of a directors and officers liability policy is an inducement and a type of compensation for the directors and officers) (citation omitted).

36.    For this reason, even when courts find that insurance proceeds under directors and officers insurance policies are property of the estate, they consistently lift the stay to allow payment of individual co-insureds' defense costs because "[w]ithout funding, the Individual Defendants will be prevented from conducting a meaningful defense … and may suffer

substantial and irreparable harm" and because "[t]he directors and officers bargained for this coverage." *Allied Digital*, 306 B.R. at 514 (recognizing that the harm to the directors and officers from not lifting the stay was real—the directors and officers had incurred $200,000 in defense costs for which they were entitled to coverage—whereas the harm to the estate was purely hypothetical); *see In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. at 411 (finding cause to lift automatic stay to allow corporate chapter 7 debtor's officers and directors to access policy proceeds even though debtor was covered by same policy); *In re Laminate Kingdom, LLC*, 2008 WL 1766637, at *4 ("[N]umerous courts have granted relief from the automatic stay to permit the advancement of Defense Costs to a debtor's directors and officers – even though the insurance policies also provided direct coverage to debtor.").[4]

37.     It is not relevant whether any of the claims asserted against the Insured Individuals in the Litigations may ultimately be excluded from coverage under the Starr Policy. Although Starr has reserved its rights with respect to the Litigations under the Starr Policy and at law, Starr has not sought a declaration of non-coverage, and thus the subsequent application of any policy exclusions is not relevant. *See In re CyberMedica, Inc.*, 280 B.R. at 19 (application of policy exclusions not relevant to whether automatic stay should be lifted to the extent that D&O policy covered directors' and officers' defense costs); *see also S.E.C. v. Morriss*, No. 4:12-CV-80 (CEJ), 2012 WL 1605225, at *5 (E.D. Mo. May 8, 2012) (application of policy

---

[4] *See also In re GB Holdings, Inc.*, No. 05-42736/JHW, 2006 WL 4457350, *4 (Bankr. D.N.J. Sept. 21, 2006) ("While it is recognized that amounts incurred in defense costs will reduce the limit of liability available to pay the debtor's potential claims under the D&O Policy, that fact alone cannot elevate the debtor's interest in the policy proceeds above the interest of the other insureds, the debtor's directors and officers."); *In re Arter & Hadden, L.L.P.*, 335 B.R. 666, 674 (Bankr. N.D. Ohio 2005) ("The Court finds that there is cause to lift the automatic stay because [the individual defendants] may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments to fund their defense"); *In re CyberMedica, Inc.*, 280 B.R. at 18 ("This Court further finds that there is cause to lift the automatic stay because [defendants] may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments. [Defendants] are in need now of their contractual right to payment of defense costs and may be harmed if disbursements are not presently made to fund their defense of the Trustee's Complaint.").

exclusions not relevant to question of lifting stay where insurer had not sought declaration of non-coverage).    For example, courts routinely lift the automatic stay in cases involving allegations of fraud, which claims might later be barred by policy exclusions. *See, e.g., Enron*, 2002 WL 1008240, at *1-2; *In re Adelphia Comm. Corp.*, 298 B.R. 49, 51 (S.D.N.Y. 2003).

       38.    In light of the foregoing, to the extent the automatic stay applies, cause exists to grant relief from the stay for the limited purpose of allowing Starr to pay advance Defense Costs and Insured Inquiry Costs and to make Settlement Payments for Insured Individuals as requested herein.

## CONCLUSION

      WHEREFORE, the Former Officers and Directors respectfully request that the Court grant this motion, enter an order in substantially the form attached hereto authorizing Starr to advance Defense Costs, Insured Inquiry Costs, and Settlement Payments up to the Limit of Liability of the Starr Policy, as reasonable and necessary to defend and resolve the Litigations in accordance with the Starr Policy, and grant such other and further relief to the Former Officers and Directors as may be just and equitable.

Respectfully submitted,

Dated: November 8, 2018

CONNOLLY GALLAGHER LLP

_____
Jeffrey C. Wisler (# 2795)
Kelly M. Conlan (#4786)
1000 N. West Street, Suite 1400
Wilmington, DE 19801
Telephone:    (302) 757-7300
Facsimile:    (302) 658-0380
Email:    jwisler@connollygallagher.com
    kconlan@connollygallagher.com

*Attorneys for Former Officers and Directors*

#05422632v2