**Exhibit A**
**Settlement Agreement**

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into as of September 5, 2019, by and among the following parties (referred to collectively as the "Parties" and each individually as a "Party"): (a) Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of the bankruptcy estates of Liquid Holdings Group, Inc. and Liquid Prime Holdings, LLC (each a "Debtor" and collectively, the "Debtors"); (b) Brian Ferdinand, Ferdinand Holdings LLC, and LT World Limited, LLC (collectively, the "Ferdinand Parties"); (c) Brian Storms; (d) Kenneth Shifrin; (e) Richard Schaeffer, Schaeffer Holdings LLC, and SHAF Holdings LLC (collectively, the "Schaeffer Parties"); (f) Robert Keller and CMK Keller Holdings, LLC (collectively, the "Keller Parties," and together with the Ferdinand Parties, Storms, Shifrin, and the Schaeffer Parties, the "Defendants"); (g) Ferdinand Trading LLC, Ferdinand Trading II LLC, LT World Partners LLC, LT World Management LLC, and QuantX Partners LLC (collectively, the "Ferdinand Entities"); (h) Ferris Ventures LLC and Liquid Trading Holdings LLC (the "Keller Entities"); (i) Jay H. Bernstein; (j) Darren C. Davy; (k) David R. Francescani; (l) Walter F. Raquet; (m) Thomas R. Ross; (n) Victor R. Simone; (o) Dennis A. Suskind; (p) Allan B. Zavarro; and (q) Sandler O'Neill & Partners, L.P. (together with the Ferdinand Entities, the Keller Entities, Bernstein, Davy, Francescani, Raquet, Ross, Simone, Suskind, and Zavarro, the "Additional Parties").

## RECITALS

WHEREAS, on January 27, 2016 (the "Petition Date"), each Debtor commenced with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary case under chapter 11 of the Bankruptcy Code, each of which was converted into a case under chapter 7 of the Bankruptcy Code on February 26, 2016 (each, individually, the "Chapter 7 Case" or collectively, the "Chapter 7 Cases").

WHEREAS, Alfred T. Giuliano was appointed as the Trustee for the bankruptcy estates of each of the Debtors in their Chapter 7 Cases.

WHEREAS, on February 16, 2016, the Debtors filed their schedules of assets and liabilities and statements of financial affairs.

WHEREAS, certain Parties filed claims against the Debtors' estates as detailed in Appendix A to this Agreement (the "Scheduled Claims").

WHEREAS, on June 30, 2017, the Trustee commenced an adversary proceeding in the Bankruptcy Court captioned *Giuliano v. Ferdinand, et al.*, Adv. Pro. No. 17-50662-KG (the "Adversary Proceeding").

WHEREAS, in the Adversary Proceeding, the Trustee asserts, *inter alia*, (a) claims against certain of the Defendants for fraud and breach of fiduciary duty, and (b) claims against certain of the Defendants to avoid and recover alleged fraudulent transfers, and had asserted (c) claims against certain of the Additional Parties for, inter alia, breach of fiduciary duty, which claims were dismissed by the Bankruptcy Court, a decision which the Trustee has the right to appeal at the appropriate time.

WHEREAS, on September 21, 2015, Robert De Vito, on behalf of himself and all others similarly situated (the "Securities Plaintiffs"), initiated class action litigation against certain of the Defendants and the Additional Parties claiming violations of various federal securities laws, which litigation is pending in the United States District Court for the District of New Jersey and captioned *De Vito v. Liquid Holdings Group, Inc., et al.*, Case 2:15-cv-06969-KM-JBC (the "Securities Action").

WHEREAS, the Debtors purchased directors & officers liability insurance policies (the "Policies") from various insurance companies, including the following "Insurers": AXIS Insurance Company (Policy No. MNN775651/01/2013); Starr Indemnity & Liability Company (Policy No. SISIXFL21129513); XL Specialty Insurance Company, Inc. (Policy No. ELU130824-13); Argonaut Insurance Company (Policy No. MLX 7600587-00); QBE Insurance Corporation (Policy No. QPL0062566); Berkley Insurance Company (Policy No. 18010864); and Allied World Assurance Company (U.S.) Inc. (Policy No. 0309-1902).

WHEREAS, on March 5, 2019, the Trustee, the Securities Plaintiffs, and the Defendants participated in a full day private in-person mediation session with Michelle Yoshida of Phillips ADR, which mediation continued until August 2019 via frequent emails and telephone conferences.

WHEREAS, the mediation concluded successfully when the Trustee, the Securities Plaintiffs, and the Defendants accepted Ms. Yoshida's recommendation as to an appropriate global resolution of the Adversary Proceeding and the Securities Action.

WHEREAS, Defendants deny that they have committed any breach of duty or violation of law. Rather than continue costly and protracted litigation, the Parties have reached the following agreement to resolve the claims and litigation matters pending between the Parties on the terms set forth herein.

## AGREEMENT

NOW, THEREFORE, after good faith, arm's length negotiations without collusion, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to the following terms:

1. **Recitals.** Each of the recitals set forth above are hereby incorporated herein, and the Parties acknowledge that each recital is true and correct.

2. **Effective Date.** The term "Effective Date" shall mean the date on which an order approving this Agreement and authorizing the Insurers to fund the Settlement Payment from the Policies (the "Approval Order") becomes a final non-appealable order.

3. **Settlement Payment.** No later than ten (10) business days after the Effective Date, the Defendants shall cause to be paid to the Trustee the total sum of Four Million Sixty Two Thousand Five Hundred U.S. Dollars ($4,062,500.00) in immediately available funds (the "Settlement Payment"), by check or by wire transfer pursuant to the wire instructions to be provided separately by the Trustee.

4. <u>Bankruptcy Court Approval</u>. If he has not done so in advance of the execution of this Agreement, promptly after all Parties have executed this Agreement, the Trustee shall file a motion (the "9019 Motion") with the Bankruptcy Court requesting approval of this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. The 9019 Motion shall request, and shall propose a form of approval order that includes, authorization from the Bankruptcy Court in a form reasonably acceptable to the Insurers and consistent with prior comfort orders entered in this case (D.I. Nos. 124, 145, 236) authorizing the payments necessary to fund the settlement herein and the advancement of any further Defense Costs and Insured Inquiry Costs necessary to conclude this settlement, the settlement of the Securities Action, the SEC Investigation, and payment of any currently outstanding and unpaid Defense Costs and Insured Inquiry Costs.

5. <u>Trustee's / Debtors' Releases</u>. Upon the Effective Date, except for the obligations under this Agreement, the Trustee (but only in his capacity as such) shall, without further action, irrevocably and unconditionally, fully, finally and forever waive, release, acquit and discharge the Defendants, the Additional Parties, or any of their respective spouses, heirs, parents, subsidiaries, affiliates, partners, members, directors, officers, managers, employees, attorneys (but only in their capacities as such), agents (but only in their capacities as such), successors, or assigns, the Insurers, and their professionals and agents (but only in their capacities as such) of and from any claim (as that term is defined in section 101(5) of the Bankruptcy Code), obligation, suit, judgment, damages, demand, debt, right (including without limitation, rights of indemnity, contribution, payment, and reimbursement), liability, or cause of action, whether known or unknown, direct or indirect, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, statute, or otherwise, including without limitation any of the foregoing arising under theories of contract, successor liability, tort, agency, unjust enrichment, alter ego, substantive consolidation, extension, or veil piercing, including any Chapter 5 Actions, that were or could have been asserted in the Adversary Proceeding, or any other action or proceeding. "Chapter 5 Actions" shall mean any and all claims arising under chapter 5 of the Bankruptcy Code and any and all fraudulent conveyance or transfer claims that, in either instance, could be brought by the Trustee or Debtors under state, federal or foreign law.

6. <u>Defendants' and Additional Parties' Releases</u>. Upon the Effective Date, except for the obligations under this Agreement, each of the Defendants and the Additional Parties shall, without further action, irrevocably and unconditionally, fully, finally and forever waive, release, acquit and discharge the Trustee (solely in his capacity as such), the Trustee's professionals and agents (but only in their capacities as such), the Debtors, and the Debtors' estates of and from any claim (as that term is defined in section 101(5) of the Bankruptcy Code), obligation, suit, judgment, damages, demand, debt, right (including without limitation, rights of indemnity, contribution, payment, and reimbursement), liability, or cause of action, whether known or unknown, direct or indirect, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, including without limitation any of the foregoing arising under theories of contract, successor liability, tort, agency, unjust enrichment, alter ego, substantive consolidation, extension, or veil piercing, that were or could have been asserted in the Adversary Proceeding, or any other action or proceeding. Upon the Effective Date, the Defendants and the Additional Parties shall have relinquished any claim to any right, title or interest in or to the property of the Debtors.

7. <u>Release of Unknown Claims</u>. The releases provided by the Trustee, Debtors, Defendants, and Additional Parties in this Agreement include the release of unknown claims, which include claims which, if known by such person, might have affected its decision with respect to the settlement or the releases provided as part of the settlement. Each of those persons voluntarily and knowingly waives and relinquishes any and all rights and benefits which they have or may have under the laws of any jurisdiction, including California Civil Code Section 1542 (or any similar statute), which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Trustee, Debtors, Defendants, and Additional Parties are aware that they may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of this Agreement, but except as expressly provided in the releases, it is their intention fully, finally, and forever to settle and release any and all of the claims, demands, and causes of action falling within the scope of the releases provided for in this Agreement upon the Effective Date.

8. <u>Claim / Objection Waivers</u>.

    8.1 On the Effective Date, the Defendants and the Additional Parties shall waive any and all claims they have or might have had against the Debtors' estates in the Chapter 7 Cases, including without limitation any filed proof of claim or scheduled claim, and waive the right to file or assert any claim in the Chapter 7 Cases, including, but not limited to, the Scheduled Claims. For the avoidance of doubt, nothing contained herein shall waive any right of the Defendants or the Additional Parties to coverage for any matter insured under the Policies.

    8.2 Upon the Effective Date, the Defendants and the Additional Parties shall irrevocably, unconditionally, fully, finally and forever waive and release any and all rights to object to the fees and expenses of the Trustee and the Trustee's professionals incurred in the Chapter 7 Cases, and to the Trustee's administration of the Chapter 7 Cases.

    8.3 The Trustee consents to the Insurers paying under the Policies all defense and other permissible costs and settlement payments insured under the Policies, including without limitation, any such costs or settlement payments in the Adversary Proceeding, any applicable regulatory investigations, or in any other matters, including without limitation the Securities Action, involving the Defendants, the Additional Parties, or any other insured individuals.

    8.4 Neither the Trustee nor any of the Defendants nor any of the Additional Parties shall make any application for sanctions pursuant to Federal Rule of Civil Procedure 11 or any other court rule or statute with respect to any claims or defenses in the Adversary Proceeding.

9. <u>Dismissal of Pending Litigation</u>. No later than five (5) business days after the Trustee's receipt of the Settlement Payment, the Parties will execute, and the Trustee will file in

the Adversary Proceeding, a stipulation dismissing the Adversary Proceeding with prejudice, with each Party to bear its own fees and costs (the "Dismissal Stipulation").

10. Party Representations. Each Party hereby represents and warrants that: (a) such Party and the signatory hereto has the power and authority to execute, deliver and perform this Agreement; (b) such Party has taken all necessary actions to authorize the execution, delivery and performance of this Agreement; (c) this Agreement has been duly executed and delivered by such Party and constitutes the legal, valid, and binding obligations of such Party, enforceable against it in accordance with their respective terms; (d) such Party's execution, delivery, and performance of this Agreement does not and will not conflict with, or constitute a violation or breach of, or constitute a default under any obligation of such Party and will not violate any applicable law, or any order or decree of any court or government instrumentality applicable to such Party; and (e) such Party has entered into this Agreement in reliance on its own independent investigation and analysis of the facts underlying the subject matter of this Agreement, and no representations, warranties, or promises of any kind have been made directly or indirectly to induce it to execute this Agreement other than those that are expressly set forth in this Agreement.

11. Cancellation of Agreement. If the Effective Date does not occur, unless the Parties otherwise agree in writing, this Agreement will be null and void as of the date that an order denying the 9019 Motion becomes a final, non-appealable order, and each of the Parties will revert to their respective positions that existed on the date immediately prior to execution of this Agreement.

12. No Assignment. Each of the Parties represents and warrants that it has not assigned or transferred any released matter or any right to consideration provided pursuant to this Agreement.

13. No Admission of Liability. This Agreement constitutes a compromise of the Parties' disputes. Nothing contained herein shall constitute or be deemed to be an admission or concession by any Party as to any matter, including with respect to the truth of any fact alleged by any Party against the other or the validity of any claim or cause of action that has been or could be asserted in any of the claims that are settled herein. Except in a dispute seeking enforcement of this Agreement, nothing in this Agreement or any of its terms, or any negotiations or proceedings connected with this Agreement, or any documents or statements referred to therein, shall be admissible in evidence against any Party in any litigation, matter, or proceeding between any of the Parties.

14. Continuing Bankruptcy Court Jurisdiction. The Parties agree that their entry into this Settlement Agreement shall not constitute or reflect their consent to the jurisdiction of the Bankruptcy Court or to any other forum in the United States except with respect to any action to enforce the provisions of this Settlement Agreement, which action shall be brought exclusively in the Bankruptcy Court and the Parties consent to the jurisdiction of the Bankruptcy Court over the enforcement of the provisions of this Settlement Agreement. This limited consent to jurisdiction (i) shall be construed narrowly; (ii) shall be strictly limited to claims to enforce the provisions of this Settlement Agreement; and (iii) shall not extend to any other claims between the Parties, regardless of whether such claims may be related to the actions being settled under this Settlement Agreement.

15. <u>Voluntary Agreement</u>. Each Party acknowledges that it has read all of the terms of this Agreement, has had an opportunity to consult with counsel of its own choosing or voluntarily waived such right, and enters into this Agreement voluntarily and without duress.

16. <u>Joint Drafting</u>. This Agreement shall be deemed to have been jointly drafted by the Parties, and in construing or interpreting this Agreement, no provision shall be construed or interpreted for or against any Party because such provision or any other provision of the Agreement was purportedly prepared or requested by such Party.

17. <u>Applicable Law</u>. The validity, interpretation and performance of this Agreement shall be construed and interpreted according to the laws of the State of Delaware, except to the extent inconsistent with federal law.

18. <u>Attorneys' Fees, Costs and Expenses</u>. Each of the Parties agrees to bear its own costs and expenses, including attorneys' fees, arising out of the matters raised in the Debtors' cases, the Adversary Proceedings and/or this Agreement.

19. <u>Successors and Assigns</u>. This Agreement shall be binding on and inure to the benefit of the Parties and their respective agents, employees, affiliates, successors and assigns.

20. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Agreement. Delivery of a signature page to this Agreement by facsimile or other electronic means shall be effective as delivery of the original signature page to this Agreement.

21. <u>Entire Agreement</u>. This document contains the entire Agreement between the Parties, and may only be modified in writing signed by the Parties or their duly appointed agents. All prior agreements and understandings between the Parties concerning the subject matter hereof are superseded by the terms of this document.

WHEREFORE, the Parties have executed this Agreement as of the date first set forth above.

_____  
Alfred T. Giuliano,  
In His Capacity As Chapter 7 Trustee Of  
LIQUID HOLDINGS GROUP, INC. AND  
LIQUID PRIME HOLDINGS, LLC

_____  
Brian Ferdinand

_____  
Brian Storms

_____  
Kenneth Shifrin


_____  
Richard Schaeffer

_____  
Robert Keller

_____  
Jay H. Bernstein

_____  
Darren C. Davy

_____  
David R. Francescani

_____  
Walter F. Racquet

_____  
Thomas R. Ross

_____  
Victor R. Simone, Jr.

_____  
Dennis A. Suskind

_____  
Allan B. Zavarro

FERDINAND HOLDINGS LLC

LT WORLD LIMITED, LLC

By: _____  
Name: _____  
Title: _____

By: _____  
Name: _____  
Title: _____

SCHAEFFER HOLDINGS LLC

SHAF HOLDINGS LLC

By: _____  
Name: _____  
Title: _____

By: _____  
Name: _____  
Title: _____

| CMK KELLER HOLDINGS, LLC | FERDINAND TRADING LLC |
|---|---|
| By: _____ <br> Name: _____ <br> Title: _____ | By: _____ <br> Name: _____ <br> Title: _____ |
| FERDINAND TRADING II LLC | LT WORLD PARTNERS LLC |
| By: _____ <br> Name: _____ <br> Title: _____ | By: _____ <br> Name: _____ <br> Title: _____ |
| LT WORLD MANAGEMENT LLC | QUANTX PARTNERS LLC |
| By: _____ <br> Name: _____ <br> Title: _____ | By: _____ <br> Name: _____ <br> Title: _____ |
| SANDLER O'NEILL & PARTNERS, L.P. | FERRIS VENTURES LLC |
| By: _____ <br>     Sandler O'Neill Partners Corp. <br>     its sole general partner | By: _____ <br> Name: _____ <br> Title: _____ |
| LIQUID TRADING HOLDINGS LLC | |
| By: _____ <br> Name: _____ <br> Title: _____ | |

# APPENDIX A

| Creditor | Debtor | Claim Nos. |
|---|---|---|
| Allan Zavarro | Liquid Holdings Group, Inc. ("Liquid Holdings") | 32-1, 33-1 |
| Brian Ferdinand | Liquid Holdings | 35-1, 35-2 |
| Jay H. Bernstein | Liquid Holdings | 37-1 |
| Brian Storms | Liquid Holdings | 38-1 |
| Ferdinand Trading LLC | Liquid Holdings | 40-1 |
| Ferdinand Holdings, LLC | Liquid Holdings | 41-1 |
| Ferdinand Trading II LLC | Liquid Holdings | 42-1 |
| LT World Limited LLC | Liquid Holdings | 43-1 |
| LT World Partners LLC | Liquid Holdings | 44-1 |
| LT World Management LLC | Liquid Holdings | 45-1 |
| QuantX Partners LLC | Liquid Holdings | 46-1 |
| Kenneth Shifrin | Liquid Holdings | 47-1 |
| David Francescani | Liquid Holdings | 49-1 |
| Darren Davy | Liquid Holdings | 51-1 |
| Dennis Suskind | Liquid Holdings | 52-1 |
| Thomas Ross | Liquid Holdings | 53-1 |
| Victor R. Simone, Jr. | Liquid Holdings | 54-1 |
| Ferdinand Trading LLC | Liquid Prime Holdings, LLC ("Liquid Prime") | 1-1 |
| Brian Ferdinand | Liquid Prime | 2-1 |
| Ferdinand Holdings, LLC | Liquid Prime | 3-1 |
| Ferdinand Trading II LLC | Liquid Prime | 4-1 |
| LT World Limited LLC | Liquid Prime | 5-1 |
| LT World Partners LLC | Liquid Prime | 6-1 |
| LT World Management LLC | Liquid Prime | 7-1 |
| QuantX Partners LLC | Liquid Prime | 8-1 |